# EXHIBIT A

**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.    CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>ELEVENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>   COUNTY, FLORIDA

<u>THE DONALD J. TRUMP REVOCABLE TRUST, DJT HOLDINGS MANAGING MEMBER,</u>
<u>LLC, DTTM OPERATIONS,</u>
<u>LLC, Eric Trump, DJT</u>
<u>HOLDINGS, LLC</u>

Plaintiff                                            Case # _____
                                                     Judge  _____

vs.
<u>CAPITAL ONE, N.A.</u>
 Defendant

### II.    AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐  $30,001- $50,000
☐  $50,001- $75,000
☐  $75,001 - $100,000
☒  over $100,000.00

### III.    TYPE OF CASE    (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☒ Negligence—other
    ☐ Business governance
    ☒ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☐ Negligent security
    ☐ Nursing home negligence
    ☐ Premises liability—commercial
    ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure
    ☐ Homestead residential foreclosure
    ☐ Non-homestead residential foreclosure
    ☐ Other real property actions

☐ Professional malpractice
    ☐ Malpractice—business
    ☐ Malpractice—medical
    ☐ Malpractice—other professional
☐ Other
    ☐ Antitrust/Trade regulation
    ☐ Business transactions
    ☐ Constitutional challenge—statute or ordinance
    ☐ Constitutional challenge—proposed amendment
    ☐ Corporate trusts
    ☐ Discrimination—employment or other
    ☐ Insurance claims
    ☐ Intellectual property
    ☐ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☒ No ☐

    **IV.**    **REMEDIES SOUGHT** (check all that apply):
    ☒ Monetary;
    ☒ Nonmonetary declaratory or injunctive relief;
    ☐ Punitive

    **V.**    **NUMBER OF CAUSES OF ACTION:** [  ]
    (Specify)

    <u>5</u>

    **VI.**    **IS THIS CASE A CLASS ACTION LAWSUIT?**
        ☐ yes
        ☒ no

    **VII.**    **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
        ☒ no
        ☐ yes If "yes," list all related cases by name, case number, and court.

    **VIII.**    **IS JURY TRIAL DEMANDED IN COMPLAINT?**
        ☒ yes
        ☐ no

    **IX.**    **DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
        ☐ yes
        ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Alejandro Brito</u>        Fla. Bar # <u>98442</u>
        Attorney or party            (Bar # if attorney)

<u>Alejandro Brito</u>        <u>03/07/2025</u>
 (type or print name)        Date

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

THE DONALD J. TRUMP REVOCABLE TRUST, DJT HOLDINGS, LLC, a Delaware limited liability company, DJT HOLDINGS MANAGING MEMBER, LLC, a Delaware limited liability company, DTTM OPERATIONS, LLC, a Delaware limited liability company, and ERIC TRUMP, an individual,

        Plaintiffs,

vs.

CAPITAL ONE, N.A., a Virginia Corporation,

        Defendant.

_____/

CASE NO.: _____

COMPLEX BUSINESS LITIGATION DIVISION

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs THE DONALD J. TRUMP REVOCABLE TRUST, DJT HOLDINGS, LLC, DJT HOLDINGS MANAGING MEMBER, LLC, DTTM OPERATIONS, LLC, and ERIC TRUMP (collectively, "Plaintiffs") by and through undersigned counsel, sue Defendant Capital One, N.A. In support, Plaintiffs allege as follows:

### NATURE OF THE ACTION

"To be known as one of the most successful and trusted financial services companies in the world, we must continue to conduct ourselves – both as an organization and as individuals – according to the highest standards of *honesty and fairness*. Our core Values and Excellence and Do the Right Thing embody our commitment to ethical business practices and inspire our culture and the decisions we make each day. Our commitment to living our Values and living up to exacting standards for integrity and professionalism is essential to building an enduring great

company. All of our stakeholders – our customers, communities, regulators and shareholders – expect nothing less." These principles were proclaimed by Capital One's founder, Chairman, and Chief Executive Officer Richard D. Fairbank in 2020. And yet, Capital One's unlawful, deceptive, and reckless conduct that gives rise to this action is the antithesis of what it claims to be the foundation of its business practices.

For decades, Plaintiffs, individually and through numerous entities, have been customers of Capital One. During that timeframe, Plaintiffs and their affiliated entities have transacted tens of millions of dollars through Capital One. Over those years, President Donald J. Trump has maintained a highly public persona while Capital One and Plaintiffs' affiliated entities - all of which contain President Trump's name or are otherwise affiliated with him - have maintained a mutually beneficial relationship. However, on March 8, 2021, Capital One forever altered the dynamic of the parties' relationship.

That day, without warning or provocation, Capital One notified Plaintiffs that hundreds of bank accounts that they controlled, were beneficiaries of, and actively used to transact ("Plaintiffs' Accounts") would be closed on June 7, 2021. Capital One did not provide Plaintiffs any recourse, remedy, or alternative—its decision was final. Collectively, Plaintiffs' Accounts held millions of dollars belonging to them and their affiliated entities. Because Capital One did not provide Plaintiffs and their affiliated entities with any advance notice and unilaterally terminated Plaintiffs' Accounts, Plaintiffs suffered considerable financial harm and losses caused not only by the interruption to their access to Capital One's banking services, but also by the devastating impact on Plaintiffs' ability to transact and access their monies.

Plaintiffs have reason to believe that Capital One's unilateral decision came about as a result of political and social motivations and Capital One's unsubstantiated, "woke" beliefs that it

needed to distance itself from President Trump and his conservative political views. In essence, Capital One "de-banked" Plaintiffs' Accounts because Capital One believed that the political tide at the moment favored doing so. In addition to the considerable financial harm that Plaintiffs and their affiliated entities suffered, Capital One's reckless decision is part of a growing trend by financial institutions in the United States of America to cut off a consumer's access to banking services if their political views contradict with those of the financial institution. Capital One's conduct is but one example of a systemic, subversive industry practice that aims to coerce the public to shift and re-align their political views. Plaintiffs file this action to redress the harm they and their affiliated entities have suffered and shed light on a matter of great public interest and importance.

## PARTIES

1.     Plaintiff THE DONALD J. TRUMP REVOCABLE TRUST is a revocable trust created in Palm Beach County, Florida.

2.     Plaintiff DJT HOLDINGS, LLC is a Delaware limited liability company with its principal place of business in Palm Beach County, Florida.

3.     Plaintiff DJT HOLDINGS MANAGING MEMBER, LLC is a Delaware limited liability company with its principal place of business in Palm Beach County, Florida.

4.     Plaintiff DTTM OPERATIONS, LLC is a Delaware limited liability company with its principal place of business in Palm Beach County, Florida.

5.     Plaintiff ERIC TRUMP is *sui juris* and is a resident of Palm Beach County, Florida.

6.     Defendant CAPITAL ONE, N.A. is Virginia corporation with its principal place of business in Virginia and authorized to do business in the State of Florida.

## JURISDICTION AND VENUE

7.     This Court possesses subject matter jurisdiction over this action because the amount in controversy exceeds the sum or value of $750,000.00, exclusive of interest, costs, and attorneys' fees.

8.     The Court possesses personal jurisdiction over Capital One pursuant to Florida Statute §§ 48.193(1)(a)(1), (1)(a)(2), and (1)(a)(6).

9.     Florida Statute § 48.193(1)(a)(1) confers personal jurisdiction over Capital One because, during the operative period alleged in the Complaint, Capital One operated, conducted, engaged in, or carried on a business or business venture, and maintained offices in, Florida.

10.     Florida Statute § 48.193(1)(a)(2) confers personal jurisdiction over Capital One because, during the operative period alleged in the Complaint, Capital One committed tortious conduct against Plaintiffs that caused them and their affiliated entities to suffer significant financial harm.

11.     Florida Statute § 48.193(1)(a)(6) confers personal jurisdiction over Capital One because, during the operative period alleged in the Complaint, Capital One injured Plaintiffs and their affiliated entities while it was engaged in the sale of banking services in Florida.

12.     Venue is proper in this Court and in Miami-Dade County, Florida under Florida Statute §§ 47.011 and 47.051 because Plaintiffs' causes of action accrued in Miami-Dade County, Defendant maintains an office for transaction and its customary business in Miami-Dade County, Florida, and Defendant has several agents and representatives acting on its behalf in Miami-Dade County, Florida, Florida.

13.     Plaintiffs have retained Brito, PLLC to prosecute this action and have agreed to pay it a reasonable attorney's fee.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

14.     All conditions precedent to this action have been performed, excused, or waived.

## FACTUAL BACKGROUND

**A.  Plaintiffs' longstanding, mutually beneficial relationship with Capital One**.

15.     For the past several decades, Plaintiffs and their affiliated entities have held hundreds of bank accounts with Capital One.

16.     Plaintiffs' businesses, and the title on Plaintiffs' Accounts maintained with Capital One, either used President Donald J. Trump's name or were affiliated with him.

17.     Plaintiffs have operated many businesses across various industries including, but not limited to, real estate, hospitality, entertainment, tourism, media, and sports.

18.     Throughout their mutually beneficial banking relationship, Plaintiffs have deposited, transacted, and leveraged hundreds of millions of dollars with Capital One to grow and scale these businesses.

19.     In exchange, Capital One has profited from Plaintiffs' substantial deposits, impeccable creditworthiness, and the prestige associated with having a business relationship with President Trump.

**B.  The beginning of de-banking in America**.

20.     In 2009, President Barack Obama launched the Financial Fraud Enforcement Task Force ("Task Force").[1]

21.     Initially, the Task Force's mission was to assist the Department of Justice with the "investigation and prosecution of cases of bank, mortgage, loan, and lending fraud; securities and

---

[1]     Executive Order 13519 - Establishment of the Financial Fraud Enforcement Task Force, OBAMA WHITE HOUSE ARCHIVES (November 17, 2009) (https://obamawhitehouse.archives.gov/the-press-office/executive-order-financial-fraud-enforcement-task-force).

commodities fraud; retirement plan fraud; mail and wire fraud; tax crimes; money laundering; False Claims Act violations; unfair competition; discrimination; and other financial crimes and violations[.]"[2]

22.     Four years later, the Task Force's scope was expanded to "protect the American public from the often-devastating effects of financial fraud, whether it be mortgage fraud or investment fraud, grant or procurement fraud, consumer fraud or fraud in lending."[3]

23.     A central principle guided the Task Force:

 If we can eliminate the mass-marketing fraudsters' access to the U.S. financial system -- that is, if we can stop the scammers from accessing consumers' bank accounts -- then we can protect the consumers and starve the scammers. This will significantly reduce the frequency of and harm caused by this type of fraud. We hope to close the access to the banking system that mass marketing fraudsters enjoy -- effectively putting a chokehold on it -- and put a stop to this billion dollar problem that has harmed so many American consumers, including many of our senior citizens.[4]

24.     Thus, the Task Force's efforts became unofficially known and publicly referred to as "Operation Choke Point."

25.     Although the Task Force's mission was to curb and eliminate sweeping examples of financial fraud, the Task Force had an ulterior motive.

26.     "Officials at both the Comptroller of the Currency (OCC) and the Federal Deposit Insurance Corporation (FDIC) threatened banks with regulatory pressure if they did not bend to

---

[2]     *Id.*

[3]     Financial Fraud Enforcement Task Force Executive Director Michael J. Bresnick at the Exchequer Club of Washington, D.C., UNITED STATES DEPARTMENT OF JUSTICE ARCHIVES, (March 20, 2013) (https://www.justice.gov/archives/opa/speech/financial-fraud-enforcement-task-force-executive-director-michael-j-bresnick-exchequer).

[4]     *Id.*

their will. Gun and ammunition dealers, payday lenders and other businesses operating legally suddenly found banks terminating their accounts with little explanation aside from 'regulatory pressure.' "[5]

27.     "In this unprecedented initiative, unelected bureaucrats at the Department of Justice, the FDIC and other agencies set out to kill legal businesses by starving them of access to financial institutions."[6]

28.     Indeed, many lawful businesses, most of which did not present any significant legal, financial, or reputation risk, had their banking relationships terminated without warning or recourse.

29.     Operation Choke Point was not a siloed operation led by rogue employees. Instead, many high-ranking FDIC officials led the government's efforts.

30.     For example, former FDIC Regional Director Anthony Lowe instructed his staff to use all "available means, including verbal recommendations, to strongly encourage [supervised banks] to refrain from any activities that provide assistance to the business activities of [payday] lenders[.]"

31.     Operation Choke Point persisted for years under the Obama administration, and it led to countless legal businesses losing access to banking services.

---

[5]     Operation Choke Point reveals true injustices of Obama's Justice Department, THE HILL (November 7, 2018) (https://thehill.com/blogs/congress-blog/politics/415478-operation-choke-point-reveals-true-injustices-of-obamas-justice/).

[6]     Evidence is now clear: Operation Choke Point hurt lawful businesses, AMERICAN BANKER (November 25, 2018) (https://www.americanbanker.com/opinion/evidence-is-now-clear-operation-choke-point-hurt-lawful-businesses)

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

32.      "Former Federal Deposit Insurance Corp. Chairman William Isaac went as far as to call it 'one of the most dangerous programs I have experienced in my 45 years of service as a bank regulator, bank attorney and consultant, and bank board member.' "[7]

33.      As a result, in 2017, President Trump's first administration ended Operation Choke Point because "law abiding businesses should not be targeted simply for operating in an industry that a particular administration might disfavor."[8]

34.      Days before President Trump's first term ended, the Office of the Comptroller of the Currency promulgated a final rule to ensure that consumers and businesses, independent of their political viewpoints, would have "fair access to banking services provided by large national banks, federal savings associations, and federal branches and agencies of foreign bank organizations."[9]

35.      Then, in 2021, President Joe Biden took office.

36.      Not long after, the unlawful practices similar to Operation Choke Point began to resurface.

37.      This time, however, it was not the government that took the lead in foreclosing banking services to legal businesses.

---

[7]      *Id.*

[8]      Correspondence from Office of Assistant Attorney General to Hon. Bob Goodlatte, UNITED STATES        DEPARTMENT        OF        JUSTICE,        (August        16,        2017) (https://www.consumerfinancemonitor.com/wp-content/uploads/sites/14/2017/08/2017-8-16-Operation-Chokepoint-Goodlatte.pdf)

[9]      OCC Finalizes Rule Requiring Large Banks to Provide Fair Access to Bank Services, Capital, and Credit, OFFICE OF THE COMPTROLLER OF THE CURRENCY, (January 14, 2021) (https://www.occ.gov/news-issuances/news-releases/2021/nr-occ-2021-8.html)

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

38.     Instead, there were several national financial institutions themselves, including Capital One, that were de-banking countless private businesses.

**C.  Capital One de-banks Plaintiffs**.

39.     On March 8, 2021, Plaintiffs received correspondence from Capital One communicating that hundreds of their bank accounts were being closed and their account relationships with Capital One would be terminated by June 7, 2021.

40.     Neither Plaintiffs nor their affiliated entities received any prior warning nor any explanation for Capital One's unilateral and arbitrary decision.

41.     Although Capital One extended the closure of several of Plaintiffs Accounts, Plaintiffs were left to scramble to advise their business partners, customers, vendors, and creditors that Capital One had terminated their banking relationships and hindered Plaintiffs' ability to use its funds therein to transact. *See id*.

42.     Capital One's unilateral, unprovoked, and sudden decision caused the businesses operated by Plaintiffs and their affiliated entities to suffer considerable financial harm.

43.     Although Capital One failed to provide a reason for terminating Plaintiffs' Accounts, Plaintiffs have learned that they were de-banked because of President Trump's political views.

**D.  The growing trend of de-banking in America today**.

44.     Capital One's decision is wrongful, and it is representative of a systemic and widespread practice that is employed by many financial institutions in the United States of America today.

45.     The banking industry's practices are so rampant that at least sixteen Attorneys General have pleaded that Bank of America take note of its history of de-banking consumers and legal businesses for their political views and reform its banking practices.[10]

46.     Congress has also been advised that de-banking is a glaring issue that must be addressed.[11]

47.     Given the timeliness of this kitchen-table issue, other politicians, including United States Senator Elizabeth Warren (D-MA), have taken notice that de-banking is a problem impacting consumers and businesses in the United States of America.[12]

48.     In addition, United States Senator Kevin Cramer (R-ND) has reintroduced the Fair Access to Banking Act, which seeks to protect "fair access to financial services and ensures banks operate in a safe and sound manner" and eliminate de-banking.[13]

---

[10]     15 AGs put BofA on notice for 'de-banking' conservatives, BANKING DIVE (April 18, 2024) (https://www.bankingdive.com/news/15-attorneys-general-put-bofa-notice-debanking-conservatives-christians/713618/); *see also* Correspondence from Attorney General Kris W. Kobach to Brian T. Moynihan, STATE OF KANSAS OFFICE OF THE ATTORNEY GENERAL (April 15, 2024) (https://adfmedialegalfiles.blob.core.windows.net/files/2024-04-16BankOfAmericaLetter.pdf); *see also* Attorney General Miyares Demands Bank of America Cease Practice of Debanking Conservatives, OFFICE OF THE ATTORNEY GENERAL COMMONWEALTH OF VIRGINIA (April 16, 2024) (https://www.oag.state.va.us/media-center/news-releases/2718-april-16-2024-attorney-general-miyares-demands-bank-of-america-cease-practice-of-debanking-conservatives).

[11]     De-Banking/De-Risking: Issues for the 119th Congress, CONGRESSIONAL RESEARCH SERVICE (January 29, 2025) (https://crsreports.congress.gov/product/pdf/IF/IF12886)

[12]     Warren says Trump was 'on to a real problem' when he blasted BofA for debanking customers, YAHOO FINANCE (February 5, 2025) (https://finance.yahoo.com/news/warren-says-trump-was-on-to-a-real-problem-when-he-blasted-bofa-for-debanking-customers-162323188.html)

[13]     Cramer Reintroduces Fair Access to Banking Act to Protect Legal Industries from Debanking, KEVIN CRAMER U.S. SENATOR *FOR* NORTH DAKOTA (February 5, 2025) (https://www.cramer.senate.gov/news/press-releases/cramer-reintroduces-fair-access-to-banking-

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

49.     In response, Bank of America and JP Morgan Chase CEOs have not only denied that their companies engage in de-banking,[14] but they are lobbying to shape the narrative and favorably regulate de-banking practices going forward.[15]

50.     Plainly, de-banking is a matter of public interest and significant importance to all consumers and businesses in the United States of America.

51.     It bears noting that Florida has prohibited financial institutions from terminating their banking relationship with an individual or a business based on their political opinions, speech, or affiliations. *Compare* Fla. Stat. § 655.0323(2)(a) ("It is an unsafe and unsound practice for a financial institution to deny or cancel its services to a person, or to otherwise discriminate against a person in making available such services or in the terms or conditions of such services, on the basis of: (a) The person's political opinions, speech, or affiliations[.]"); *with* Fla. Stat. § 655.0323(5) ("Notwithstanding ss. 501.211 and 501.212, a failure to comply with subsection (1) or engaging in a practice described in subsection (2) constitutes a violation of the Florida Deceptive and Unfair Trade Practices Act under part II of chapter 501. Violations must be enforced only by the enforcing authority, as defined in s. 501.203(2)[.]").

---

act-to-protect-legal-industries-from-debanking#:~:text=The%20Fair%20Access%20to%20Banking,against%20legal%20industries%20and%20individuals.%E2%80%9D)

[14] *Id*.

[15] BofA, JPMorgan to lobby White House, Congress after conservative criticism, REUTERS (January 24, 2025) (https://www.reuters.com/business/finance/bofa-plans-engage-with-white-house-congress-debanking-spokesperson-2025-01-24/)

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

## CAUSES OF ACTION

## COUNT I – DECLARATORY RELIEF

52.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 51 as if set forth herein.

53.    This is an action under Florida Statute § 86.011, *et. seq.*

54.    There is an actual and present controversy between Plaintiffs and Capital One over the basis and propriety of Capital One's unilateral termination of Plaintiffs' Accounts.

55.    Due to the irreconcilable differences between Plaintiffs and Capital One, Plaintiffs are in doubt as to their legal rights, status, powers, privileges, and/or immunities with respect to Plaintiffs' Accounts.

56.    There is a bona fide, actual, present need for a declaration of the legal rights, powers, privileges, status, and immunities of the parties with respect to Plaintiffs' Accounts and Plaintiffs are not seeking an advisory opinion by this Court.

57.    Plaintiffs and their affiliated entities, in good faith, and at all times material to this action, believe that they are entitled to possess all rights and obligations as account holders of Plaintiffs' Accounts.

58.    Thus, Plaintiffs are entitled to have the doubt surrounding their rights and obligations as account holders of Plaintiffs' Accounts resolved by way of declaratory relief from this Court.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter a judgment declaring that: (a) Capital One improperly terminated Plaintiffs' Accounts, (b) Plaintiffs are entitled to an award of costs, and (c) Plaintiffs are entitled to any other relief as this Court deems just and proper.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

## COUNT II - VIOLATION OF
## NORTH CAROLINA'S CONSUMER PROTECTION ACT

59.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 51 as if set forth herein.

60.     This is an action arising from Capital One's violations of North Carolina's Unfair and Deceptive Trade Practices Act. *See* N.C. Gen. Stat. § 75-1.1.

61.     N.C. Gen. Stat. § 75-1.1(a) defines unfair and deceptive trade practices as any "unfair or deceptive acts or practices in or affecting commerce, [which] are declared unlawful."

62.     N.C. Gen. Stat. § 75-1.1(b) defines "commerce" as "all business activities, however denominated[.]"

63.     Over the course of decades, Plaintiffs and their affiliated entities have opened and maintained several bank accounts with Capital One.

64.     During this timeframe, Plaintiffs and their affiliated entities have deposited, transacted, and leveraged hundreds of millions of dollars with Capital One.

65.     In exchange, Capital One has profited from Plaintiffs' deposits, transactions, and the prestige of being associated with President Trump.

66.     By engaging in banking activity, Capital One has engaged in trade or commerce.

67.     Because Capital One and Plaintiffs and their affiliated entities maintained mutual banking relationships, the parties have been and remain market participants under N.C. Gen. Stat. § 75-1.1.

68.     On March 8, 2021, Capital One notified Plaintiffs that it was closing all of Plaintiffs' Accounts and terminating Plaintiffs' account relationships with Capital One by June 7, 2021.

69.     On June 7, 2021, Capital One terminated Plaintiffs' Accounts.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

70.     Capital One did not provide any justification for why Plaintiffs' Accounts were being closed.

71.     Instead, upon information and belief, Capital One leveraged unlawful and deceptive tactics and means to close Plaintiffs' Accounts based on President Trump's political views.

72.     Simply stated, Capital One de-banked Plaintiffs Accounts.

73.     Capital One's unlawful and deceptive de-banking practices were employed in the trade or commerce of providing banking services to Plaintiffs and their affiliated entities, which falls under the definitions of N.C. Gen. Stat. § 75-1.1(a)-(b).

74.     Capital One's unlawful and deceptive de-banking practices, which terminate banking relationships based on a consumer or business' political views that are contradictory to those held by Capital One, are a matter of significant public interest to the residents of North Carolina.

75.     Capital One's unlawful and deceptive practices to de-bank other consumers and businesses based on their political views directly affect North Carolina residents when their banking relationships are terminated.

76.     Capital One's unlawful and deceptive practices to de-bank other consumers and businesses based on their political views directly and indirectly affect North Carolina residents because it chills their exercise of political speech by the threat of having their banking relationships terminated.

77.     Capital One's unlawful and deceptive de-banking practices injured Plaintiffs and their affiliated entities because it prevented them from using their bank accounts or accessing the funds therein.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

78.     As a direct and proximate result of Capital One's conduct, Plaintiffs and their affiliated entities have suffered significant damages.

79.     Under N.C. Gen. Stat. §§ 75-16 and 75-16.1, Plaintiffs seek recovery of treble damages and attorneys' fees and costs for prosecuting this action.

80.     Because Capital One's conduct against Plaintiffs was willful, Plaintiffs intend to seek recovery of punitive damages against Capital One at the appropriate time.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter Final Judgment in their favor and against Defendant Capital One, N.A. for all available damages under North Carolina law, an award of attorneys' fees and costs, and any other relief this Court deems proper.

## COUNT III - VIOLATION OF NEBRASKA'S CONSUMER PROTECTION ACT

81.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 51 as if set forth herein.

82.     This is an action arising from Capital One's violations of Nebraska's Consumer Protection Act Neb. Rev. Stat. § 59-1602.

83.     Neb. Rev. Stat. § 59-1602 prohibits "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

84.     Neb. Rev. Stat. § 59-1601(1) defines a "Person" as "natural persons, corporations, trusts, unincorporated associations, partnerships, and limited liability companies[.]" Thus, Capital One is a Person under Neb. Rev. Stat. § 59-1601(1).

85.     Over the course of decades, Plaintiffs and their affiliated entities have opened and maintained several bank accounts with Capital One.

86.     During this timeframe, Plaintiffs and their affiliated entities have deposited, transacted, and leveraged millions of dollars with Capital One.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

87.    In exchange, Capital One has profited from Plaintiffs' deposits, transactions, and the prestige of being associated with President Trump.

88.    By engaging in banking activity, Capital One has engaged in trade or commerce.

89.    On March 8, 2021, Capital One notified Plaintiffs that it was closing all of Plaintiffs' Accounts and terminating Plaintiffs' account relationships with Capital One by June 7, 2021.

90.    On June 7, 2021, Capital One terminated Plaintiffs' Accounts.

91.    Capital One did not provide any justification for why Plaintiffs' Accounts were being closed.

92.    Instead, upon information and belief, Capital One leveraged unlawful and deceptive tactics and means to close Plaintiffs' Accounts based on President Trump and his political views.

93.    Essentially, Capital One de-banked Plaintiffs' Accounts.

94.    Capital One's unlawful and deceptive de-banking practices were employed in the trade or commerce of providing banking services to Plaintiffs, which falls under the definition of Neb. Rev. Stat. § 59-1601(2).

95.    Capital One's unlawful and deceptive de-banking practices, which terminate banking relationships based on a consumer or business' political views that are contradictory to those held by Capital One, are a matter of significant public interest to the residents of Nebraska.

96.    Capital One's unlawful and deceptive practices to de-bank other consumers and businesses based on their political views directly affect Nebraska residents when their banking relationships are terminated.

97.    Capital One's unlawful and deceptive practices to de-bank other consumers and businesses based on their political views directly and indirectly affect Nebraska residents because

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

it chills their exercise of political speech by the threat of having their banking relationships terminated.

98.     Capital One's unlawful and deceptive de-banking practices injured Plaintiffs and their affiliated entities because it prevented them from using their bank accounts.

99.     As a direct and proximate result of Capital One's conduct, Plaintiffs and their affiliated entities have suffered significant damages.

100.    Because Capital One's conduct against Plaintiffs was willful, Plaintiffs intend to seek recovery of punitive damages against Capital One at the appropriate time.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter Final Judgment in their favor and against Defendant Capital One, N.A. for all available damages under Nebraska law, an award of attorneys' fees and costs, and any other relief this Court deems proper.

## COUNT IV - VIOLATION OF NEW JERSEY'S CONSUMER FRAUD ACT

101.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 51 as if set forth herein.

102.    This is an action arising from Capital One's violations of New Jersey's Consumer Fraud Act. N.J.S.A. § 56:8-2.

103.    N.J.S.A. § 56:8-2 prohibits "The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate."

104.    N.J.S.A. § 56:8-1(c) defines "merchandise" as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale[.]"

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

105.    Over the course of decades, Plaintiffs and their affiliated entities have opened and maintained several bank accounts with Capital One.

106.    During this timeframe, Plaintiffs and their affiliated entities have deposited, transacted, and leveraged millions of dollars with Capital One.

107.    In exchange, Capital One has profited from Plaintiffs' deposits, transactions, and the prestige of being associated with President Trump.

108.    By engaging in banking activity and providing banking services to Plaintiffs, Capital One has directly offered merchandise to Plaintiffs under N.J.S.A. § 56:8-1(c).

109.    On March 8, 2021, Capital One committed the affirmative act of notifying Plaintiffs that it was closing all of Plaintiffs' Accounts and terminating Plaintiffs' account relationships with Capital One by June 7, 2021.

110.    The closing of Plaintiffs' Accounts on June 7, 2021, was an ascertainable loss under N.J.S.A. § 56:8-2.

111.    Capital One did not provide any justification for why Plaintiffs' Accounts were being closed.

112.    Instead, upon information and belief, Capital One leveraged unlawful and deceptive tactics and means to close Plaintiffs' Accounts based on President Trump and his political views.

113.    Essentially, Capital One de-banked Plaintiffs' Accounts.

114.    Capital One's unlawful and deceptive de-banking practices were employed in the trade or commerce of providing banking services to Plaintiffs and their affiliated entities, which falls under the definition of N.J.S.A. § 56:8-2.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

115.   Capital One's unlawful and deceptive de-banking practices, which terminate banking relationships based on a consumer or business' political views that are contradictory to those held by Capital One, are a matter of significant public interest to the residents of New Jersey.

116.   Capital One's unlawful and deceptive practices to de-bank other consumers and businesses based on their political views directly affect New Jersey residents when their banking relationships are terminated.

117.   Capital One's unlawful and deceptive practices to de-bank other consumers and businesses based on their political views directly and indirectly affect New Jersey residents because it chills their exercise of political speech by the threat of having their banking relationships terminated.

118.   Capital One's unlawful and deceptive de-banking practices injured Plaintiffs and their affiliated entities because it prevented them from using their bank accounts or accessing the funds therein.

119.   As a direct and proximate result of Capital One's conduct, Plaintiffs and their affiliated entities have suffered significant damages.

120.   Under N.J.S.A. § 56:8-19, Plaintiffs seek recovery of treble damages and attorneys' fees and costs for prosecuting this action.

121.   Because Capital One's conduct against Plaintiffs was willful, Plaintiffs intend to seek recovery of punitive damages against Capital One at the appropriate time.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter Final Judgment in their favor and against Defendant Capital One, N.A. for all available damages under New Jersey law, an award of attorneys' fees and costs, and any other relief this Court deems proper.

### COUNT V - VIOLATION OF MINNESOTA'S CONSUMER FRAUD ACT

122.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 51 as if set forth herein.

123.    This is an action arising from Capital One's violations of Minnesota's Consumer Fraud Act. Minn. Stat. § 325F.69, subd. 8.

124.    Minn. Stat. § 325F.69, subd. 8 stipulates that "an unfair method of competition or an unfair or unconscionable act or practice is any method of competition, act, or practice that: (1) offends public policy as established by the statutes, rules, or common law of Minnesota; (2) is unethical, oppressive, or unscrupulous; or (3) is substantially injurious to consumers."

125.    Minn. Stat. § 325F.68, subd. 2 defines "merchandise" means any "objects, wares, goods, commodities, intangibles, real estate, loans, or services."

126.    Over the course of decades, Plaintiffs and their affiliated entities have opened and maintained several bank accounts with Capital One.

127.    During this timeframe, Plaintiffs and their affiliated entities have deposited, transacted, and leveraged millions of dollars with Capital One.

128.    In exchange, Capital One has profited from Plaintiffs' deposits, transactions, and the prestige of being associated with President Trump.

129.    By engaging in banking activity and providing banking services to Plaintiffs and their affiliated entities, Capital One has directly offered merchandise to Plaintiffs under Minn. Stat. § 325F.68, subd. 2.

130.    On March 8, 2021, Capital One notified Plaintiffs that it was closing all of Plaintiffs' Accounts and terminating Plaintiffs' account relationships with Capital One by June 7, 2021.

131.    On June 7, 2021, Capital One terminated Plaintiffs' Accounts.

132.    Capital One did not provide any justification for why Plaintiffs' Accounts were closed.

133.    Instead, upon information and belief, Capital One leveraged unlawful and deceptive tactics and means to close Plaintiffs' Accounts based on President Trump and his political views.

134.    Essentially, Capital One de-banked Plaintiffs' Accounts.

135.    Capital One's unlawful and deceptive de-banking practices were employed in the trade or commerce of providing banking services to Plaintiffs and their affiliated entities, which falls under the definition of Minn. Stat. § 325F.69, subd. 8.

136.    Capital One's unlawful and deceptive de-banking practices, which terminate banking relationships based on a consumer or business' political views that are contradictory to those held by Capital One, are a matter of significant public interest to the residents of Minnesota.

137.    Capital One's unlawful and deceptive practices to de-bank other consumers and businesses based on their political views directly affect Minnesota residents when their banking relationships are terminated.

138.    Capital One's unlawful and deceptive practices to de-bank other consumers and businesses based on their political views directly and indirectly affect Minnesota residents because it chills their exercise of political speech by the threat of having their banking relationships terminated.

139.    Capital One's unlawful and deceptive de-banking practices injured Plaintiffs and their affiliated entities because it prevented them from using their bank accounts or accessing the funds therein.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

140.     As a direct and proximate result of Capital One's conduct, Plaintiffs and their affiliated entities have suffered significant damages.

141.     Under Minn. Stat. § 8.31, subd. 3a, Plaintiffs seek recovery of their attorneys' fees and costs for prosecuting this action.

142.     Because Capital One's conduct against Plaintiffs was willful, Plaintiffs intend to seek recovery of punitive damages against Capital One at the appropriate time.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter Final Judgment in their favor and against Defendant Capital One, N.A. for all available damages under Minnesota law, an award of attorneys' fees and costs, and any other relief this Court deems proper.

### DEMAND FOR JURY TRIAL

Plaintiffs request a jury trial as to all issues so triable.

Dated: March 7, 2025                               Respectfully submitted,

                                                   **BRITO, PLLC**
                                                   *Counsel for Plaintiffs*
                                                   2121 Ponce de Leon Boulevard
                                                   Suite 650
                                                   Coral Gables, FL 33134
                                                   Office: 305-614-4071
                                                   Fax: 305-440-4385

                                                   By: /s/ *Alejandro Brito*
                                                       **ALEJANDRO BRITO**
                                                       Florida Bar No. 098442
                                                       Primary: abrito@britopllc.com
                                                       Secondary: apiriou@britopllc.com
                                                       **IAN MICHAEL CORP**
                                                       Florida Bar No. 1010943
                                                       Primary: icorp@britopllc.com

| IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA | | |
|---|---|---|
| CIVIL DIVISION | CIVIL ACTION SUMMONS | CASE NUMBER 2025-004022-CA-01 |
| PLAINTIFFS THE DONALD J. TRUMP REVOCABLE TRUST, DJT HOLDINGS, LLC, a Delaware limited liability company, DJT HOLDINGS MANAGING MEMBER, LLC, a Delaware limited liability company, DTTM OPERATIONS, LLC, a Delaware limited liability company, and ERIC TRUMP, an individual, | VS. DEFENDANT CAPITAL ONE, N.A., a Virginia Corporation | CLOCK IN |

| To Defendant: CAPITAL ONE, N.A., a Virginia Corporation by serving its Registered Agent | Address: 100 Shockoe Slip Fl 2, Richmond, VA, 23219-4100 |
|---|---|

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached Amended Complaint with the clerk of this court. A phone call will not protect you; your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court, located at:

MIAMI-DADE COUNTY COURTHOUSE

Clerk of Courts

Room 138

73 West Flagler Street

Miami, Florida 33130

Additional Court locations are printed on the back of this form. You must also mail or take a copy of your written responses to the Plaintiff/Plaintiff's Attorney named below.

**AMERICANS WITH DISABILITIES ACT OF 1990 ADA NOTICE**

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2702, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."**

| Plaintiff/Plaintiff's Attorney ALEJANDRO BRITO, ESQ. | Address: BRITO, PLLC 2121 Ponce de Leon Boulevard, Suite 650 Coral Gables, FL 33134 Tel: 305-614-4071; Fax: 305-440-4385 |
|---|---|

| TO EACH SHERIFF OF THE STATE OF FLORIDA: You are commanded to serve this Summons and a copy of the Complaint of this lawsuit on the above-named defendant. | | |
|---|---|---|
| CLERK OF COURT | COURT SEAL<br>BY: _____ | DATE |

| IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA | | |
|---|---|---|
| CIVIL DIVISION | CIVIL ACTION SUMMONS | CASE NUMBER 2025-004022-CA-01 |
| **PLAINTIFFS** THE DONALD J. TRUMP REVOCABLE TRUST, DJT HOLDINGS, LLC, a Delaware limited liability company, DJT HOLDINGS MANAGING MEMBER, LLC, a Delaware limited liability company, DTTM OPERATIONS, LLC, a Delaware limited liability company, and ERIC TRUMP, an individual, | **VS. DEFENDANT** CAPITAL ONE, N.A., a Virginia Corporation | CLOCK IN |

| **To Defendant:** CAPITAL ONE, N.A., a Virginia Corporation by serving its Registered Agent | **Address:** 100 Shockoe Slip Fl 2, Richmond, VA, 23219-4100 |
|---|---|

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached Amended Complaint with the clerk of this court. A phone call will not protect you; your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court, located at:

MIAMI-DADE COUNTY COURTHOUSE

Clerk of Courts

Room 138

73 West Flagler Street

Miami, Florida 33130

Additional Court locations are printed on the back of this form. You must also mail or take a copy of your written responses to the Plaintiff/Plaintiff's Attorney named below.

**AMERICANS WITH DISABILITIES ACT OF 1990 ADA NOTICE**

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2702, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."**

| **Plaintiff/Plaintiff's Attorney** ALEJANDRO BRITO, ESQ. | **Address:** BRITO, PLLC 2121 Ponce de Leon Boulevard, Suite 650 Coral Gables, FL 33134 Tel: 305-614-4071; Fax: 305-440-4385 |
|---|---|

| TO EACH SHERIFF OF THE STATE OF FLORIDA: You are commanded to serve this Summons and a copy of the Complaint of this lawsuit on the above-named defendant. | | |
|---|---|---|
| CLERK OF COURT<br>Juan Fernandez-Barquin,<br>Clerk of the Court and Comptroller | COURT SEAL<br>BY: _____ 307965 | DATE<br><br>3/10/2025 |

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: <u>2025-004022-CA-01</u>
SECTION: <u>CA44</u>
JUDGE: <u>Lisa Walsh</u>

**THE DONALD J. TRUMP REVOCABLE TRUST et al**

Plaintiff(s)

vs.

**CAPITAL ONE, N.A.**

Defendant(s)

_____/

<u>**ORDER SETTING INITIAL CASE MANAGEMENT CONFERENCE AND TO PREPARE
A MANDATORY CASE MANAGEMENT REPORT**</u>

**WHEREAS**, the Complex Business Litigation Procedures shall apply to all actions in the Complex Business Litigation Section and Fla. R. Civ. P. 1.201 Complex Litigation, except to the extent that, in any particular action, they are superseded by an Order.

**WHEREAS,** the Complex Business Litigation Procedures are designed to facilitate the proceedings of cases by the Eleventh Judicial Circuit Complex Business Litigation Section; to promote the transmission and access to case information by the Court, litigants, counsel, and the public; and to facilitate the efficient and effective presentation of evidence in the courtroom. These Procedures shall be construed and enforced to avoid technical delay, **encourage civility**, permit just and prompt determination of all proceedings, and promote the efficient administration of justice.

**NOTICE IS HEREBY GIVEN** that all outstanding and future motions pertaining to cases within the Complex Business Litigation Section must adhere to Complex Business Litigation Section Procedures, which are available at the court's website:

*http://www.jud11.flcourts.org/About-the-Court/Ourt-Courts/Civil-Court/Complex-Business-Litigation*.

**NOTICE IS HEREBY GIVEN** that on **<u>June 30th 2025_____</u>** at **\_\_\_\_\_<u>9:00AM</u>** via Zoom, the undersigned shall convene a Case Management Conference ("CMC") in this cause.

**The Parties are ordered to provide courtesy copies of <u>all</u> motions and where required, memoranda pertaining thereto, hereinafter filed in this case, to the undersigned Judge via**

**CourtMAP as a supporting document to the event. Courtesy copies are not needed to be e-mailed.**

**Orders, agreed and otherwise, shall be submitted via CourtMAP.**

**Plaintiff is required to provide a full set of pending motion(s) to dismiss, opposition(s) and reply to chambers a minimum of one (1) week prior to the initially scheduled CMC. MOTIONS FILED WITHOUT COURTESY COPIES UPLOADED TO THE EVENT ON COURTMAP AS SUPPORTING DOCUMENTS MAY NOT BE CONSIDERED.**

**Any previously filed motion not in compliance with procedures, e.g., memorandum of law where required, must be resubmitted in conformity with the Complex Business Litigation Procedures**.

**Counsel for Plaintiff(s) and Third Party Plaintiff(s) is/are ORDERED** to confirm all parties subsequently named or appearing herein have been served copies of this Notice and Order. If any subsequently served or named party has not been served with a copy of this notice, Plaintiff and Third Party Plaintiff <u>shall</u> provide the party with a copy of this Notice.

**Trial Counsel and their clients shall appear via Zoom for the CMC.**[1]  Failure of any party to attend, including the insurance carrier representative, shall subject that party to sanctions and/or fees.  Regardless of the pendency of any undecided motions, Trial Counsel shall meet no less than 30 days in advance of the CMC and address the following which will be included in the Joint Case Management Report, along with other appropriate topics, including those set forth in Fla. R. Civ. P. 1.201(b) Complex Litigation, some of which subjects and topics will be incorporated into a Case Management Order:

1. The name of lead trial counsel for each party, and the name of any unrepresented party;

2. A brief factual statement of the case;

3. Pleading issues, including service of process, venue, joinder of additional parties, theories of liability, damages claimed and applicable defenses;

4. The identity and number of any motions to dismiss or other preliminary or pre-discovery motions which have been filed and the time period in which they shall be filed, briefed and argued;

5. A discovery plan and schedule including the length of the discovery period, the anticipated number of fact and expert depositions to be permitted and, as appropriate, the length and sequence of such depositions;

5.a.  A description of pertinent documents and a list of fact witnesses the parties believe to be relevant.

6. Anticipated areas of any expert testimony, the number of experts to be called by each party, timing for identification of experts, and exchange of expert reports;

7. An estimate of the volume of documents and computerized information likely to be the

subject of discovery from parties and nonparties and whether there are technological means which may render document discovery more manageable at an acceptable cost;

8. The possibility of obtaining admissions of fact and voluntary exchange of documents and electronically stored information, stipulations regarding authenticity of documents, electronically stored information, and the need for advance rulings from the Court on admissibility of evidence.

9. The advisability of using the general magistrate for discovery purposes at no cost to the parties; and the advisability of using the general and/or a special magistrate(s) for fact finding, mediation, or discovery disputes or such other matters as the parties may agree upon;

10. The time period, after the close of discovery within which post-discovery dispositive motions shall be filed, briefed and argued, and a tentative schedule for such activities;

11. The possibility of settlement and the timing of Alternative Dispute Resolution, including the selection of a mediator or arbitrator(s);

12. Whether or not a party or parties desire to use technologically advanced methods of presentation or court-reporting and, to the extent that this is the case, a determination of the following:
    a. Fairness issues, including but not necessarily limited to use of such capabilities by some but not all of the parties and/or by parties whose resources permit or require variations in the use of such capabilities;

    b. Issues related to compatibility of court and party facilities and equipment;

    c. Issues related to the use of demonstrative exhibits and any balancing of relevance and potential prejudice which may need to occur in connection with such exhibits;

    d. Such other issues related to the use of the Court's and parties' special technological facilities as may be raised by any party or the Court or its technological advisor, given the nature of the case and the resources of the parties.

13. A good faith estimate by counsel for each party based upon consultation with all of the parties of the costs and fees each party is likely to incur in pursuing the litigation through trial court adjudication;

14. A preliminary listing of the principal legal and factual issues which counsel believe will need to be decided in the case;

15. A preliminary listing of any legal principles and facts that are not in dispute;

16. A good faith estimate by counsel for each party of the length of time to try the case;

17. Whether a demand for jury trial has been made.

Within ten (10) days of the meeting among Trial Counsel, but no less than fourteen (14) days in advance of the Case Management Conference, the Parties shall file a Joint Case Management Report addressing the matters described in paragraphs 1 - 17 above and shall provide a courtesy copy to the Court via CourtMap as supporting documents to the event.

All counsel and parties are responsible for filing a Joint Case Management Report in full compliance with this Order. Plaintiff's counsel shall have the primary responsibility to coordinate the meeting of Lead Trial Counsel and unrepresented parties in person, and the filing of the Joint Case Management Report. If counsel is unable to coordinate such compliance, counsel shall timely notify the Court by written motion to be set and heard on motion calendar or request for a status conference. Failure to provide the required case management report may subject the violating party(ies) to sanctions and/or fees.

Pursuant to the provisions of Fla. R. Civ. P. 1.201(b)(3), and notwithstanding rule 1.440, at the initial case management conference, the Court will set the trial date or dates no sooner than 6 months and no later than 24 months from the date of the initial case management conference unless good cause is shown for an earlier or later setting. **As provided in the rule, continuance of the trial of a complex action should rarely be granted, and then only upon good cause shown.**

## CASE MANAGEMENT SCHEDULE (as reflected in Case Management Report

- **Pursuant to amended Rule 1.280(a), as of January 1, 2025, initial disclosures must be made without the necessity of discovery requests "within 60 days after the service of the complaint or joinder, unless a different time is set by court order."**

- **Deadlines in this case management order will be enforced unless amended by court order**

- **Joint agreed motions to extend a deadline may be rejected if such extension will affect the remaining deadlines in this order.**

- **If any party is unable to meet the deadlines set forth in the case management order for any reason, including due to the unavailability of hearing time, the affected party may promptly set a case management conference and alert the court. The notice of case management conference must identify the issues to be addressed in the case management conference.**

- **Motions for continuance shall be addressed pursuant to Rule 1.460. The court will not grant joint agreed motions for continuance of trial without a hearing and compliance with the rule.**

| | |
|---|---|
| TIME FOR SERVICE UPON ALL DEFENDANTS<br><br><br><br>TIME FOR SERVICE ON EXTENSION | |
| ESI EXCHANGE PROPOSAL (including search terms, formats, data sources to be searched, etc) | |
| RESOLUTION OF ALL OBJECTIONS TO PLEADINGS | |
| MOTIONS TO AMEND/ADD PARTIES<br><br>(includes AFFIRMATIVE DEFENSES) | |
| FACT WITNESS DEPOSITIONS/ DISCOVERY CONCLUDES | |
| COMPLETION OF PAPER DISCOVERY (Requests must be made in advance of this deadline to comply with deadline for completion) | |
| INITIAL MEDIATION DEADLINE | |
| NUMBER OF EXPERTS PER PARTY/SIDE | |
| PLAINTIFF/THIRD PARTY PLAINTIFF/CROSS | |

| | |
|---|---|
| PLAINTIFF(S) DESIGNATE EXPERTS AND COMPLY WITH CBL 6.3 AND DATES OF AVAILABILITY FOR DEPOSITION<br><br>**MUST INCLUDE: EXPERTS QUALIFICATIONS, REPORT DETAILING OPINION, BASIS FOR OPINION, AND DOCUMENTS RELIED UPON FOR OPINION** | |
| DEFENDANT/THIRD PARTY/CROSS DEFENDANT(S) DESIGNATE EXPERTS AND COMPLY WITH CBL 6.3 AND DATES OF AVAILABILITY FOR DEPOSITION<br><br>**MUST INCLUDE: EXPERTS QUALIFICATIONS, REPORT DETAILING OPINION, BASIS FOR OPINION, AND DOCUMENTS RELIED UPON FOR OPINION** | |
| REBUTTAL EXPERT DISCLOSURE REPORTS DUE<br><br>**MUST INCLUDE: EXPERTS QUALIFICATIONS, REPORT DETAILING OPINION, BASIS FOR OPINION, AND DOCUMENTS RELIED UPON FOR OPINION** | |
| EXPERT DEPOSITIONS COMPLETED | |
| RESOLUTION OF ALL PRETRIAL MOTIONS | |
| DAUBERT MOTIONS FILED | |
| DISPOSITIVE MOTIONS FILED (must be at least 90 days before trial date) | |
| DISPOSITIVE MOTIONS SET (75 days from date filed) | |
| MOTIONS IN LIMINE FILED | |

| FINAL MEDIATION DEADLINE | |
|---|---|
| FINAL PRETRIAL CONFERENCE | |

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>26th day of March,</u> <u>2025</u>.

<u>2025-004022-CA-01 03-26-2025 3:29 PM</u>
Hon. Lisa Walsh

**CIRCUIT COURT JUDGE**
Electronically Signed

**Electronically Served:**
Alejandro Brito, abrito@britopllc.com
Alejandro Brito, apiriou@britopllc.com
Alejandro Brito, lcoello@britopllc.com
IAN MICHAEL CORP, icorp@britopllc.com
IAN MICHAEL CORP, chernandez@britopllc.com

**Physically Served:**

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: <u>2025-004022-CA-01</u>
SECTION: <u>CA44</u>
JUDGE: <u>Lisa Walsh</u>

**THE DONALD J. TRUMP REVOCABLE TRUST et al**

Plaintiff(s)

vs.

**CAPITAL ONE, N.A.**

Defendant(s)

_____/

<u>**NOTICE AND ORDER OF ADHERENCE TO COMPLEX BUSINESS LITIGATION
SECTION PROCEDURES, MOTION AND MEMORANDUM PRACTICE, PROVISIONS
ON HEARIINGS AND MANDTAORY CONFERRAL REQUIREMENTS**</u>

      **WHEREAS**, the Complex Business Litigation Procedures and Fla. R. Civ. P. 1.201 Complex Litigation shall apply to all actions in the Complex Business Litigation Section, except to the extent that, in any particular action, they are superseded by an Order.

      **WHEREAS,** the Complex Business Litigation Procedures are designed to facilitate the proceedings of cases by the Eleventh Judicial Circuit Complex Business Litigation Section; to promote the transmission and access to case information by the Court, litigants, counsel, and the public; and to facilitate the efficient and effective presentation of evidence in the courtroom.  These Procedures shall be construed and enforced to avoid technical delay, **encourage civility**, permit just and prompt

determination of all proceedings, and promote the efficient administration of justice.

**NOTICE IS HEREBY GIVEN** that all outstanding and future motions pertaining to cases within the Complex Business Litigation Section must adhere to Complex Business Litigation Section Procedures, which are available at the court's website https://www.jud11.flcourts.org/Judge-Details?judgeid=888&sectionid=206

**Any previously filed motion not in compliance with procedures, e.g., memorandum of law where required, must be resubmitted in conformity with the Complex Business Litigation Procedures.**

**Counsel for Plaintiff(s) and Third Party Plaintiff(s) is/are ORDERED** to confirm all parties subsequently named or appearing herein have been served copies of this Notice.  If any subsequently served or named party has not been served with a copy of this notice, Plaintiff and Third Party Plaintiff <u>shall</u> provide the party with a copy of this Notice.

**In addition,** it is

**ORDERED** and **ADJUDGED that the following will apply to all motions, memoranda and evidentiary hearings** as follows:

<u>**Short Motions**</u>

As a general rule, five-minute Motion Calendar motions do not require memoranda of law. Copies of motions and any response shall be submitted through CourtMap in accordance with the Court's motion calendar procedures posted on its

website.

## **Motions Requesting a Special Set Hearing**

Hearings must be requested using CourtMap which is available on the judge's webpage.  Motions may be scheduled or ruled upon without a hearing, in the court's discretion.

**Content of motions** shall state with particularity the grounds therefore, citing any statute or rule of procedure relied upon; shall set forth the relief sought and shall include the required certification of conferral.  The Court will not consider issues at a hearing on the motion that were not addressed in the motion and memoranda in support of and in opposition to the motion.

## **Virtual and In-Person Hearings**

## **Administrative Order 21-11 on virtual hearings has been in effect since June 2021, and is enforced in this division.**

- Motion calendars, calendar calls, case management conferences (held monthly) are held virtually on the court's Zoom page. The credentials are: Zoom https://zoom.us/j/5374476802  Room 537 447 6802.

- Special set hearings of under 30 minutes are presumed to be held virtually on Zoom but may be held in person in Courtroom 15-1 with agreement of parties and court approval.

- Special set hearings of over 30 minutes and all evidentiary hearings are

presumed to be held in person in Courtroom 15-1 but may be held virtually with agreement of parties and court approval. **Please note that court approval is required to notice a virtual hearing of more than 30 minutes.**

- **Any hearings of over 30 minutes noticed virtually without court approval will be cancelled by the court.**


**CourtMap Setting, Notice and Uploaded Documents**

-Parties may coordinate and set motion calendar hearings and special set hearings of 30 minutes or less directly on available slots on the court's docket. There is no need for prior court approval.

-To set hearings of more then 30 minutes, contact staff at dwright@jud11.flcourts.org.

Parties shall include the Docket Entry number ("D.E. #") on all Notices of Hearing, as well as within the "Subject" field within the CourtMap setting, and in the title and body of Proposed Orders submitted to CourtMap. If the docket entry numbers are omitted from notices of hearing and the subject area for the CourtMap setting, the court will cancel your hearing. If the docket entry numbers are omitted from the proposed orders, the judge will reject your orders.

-Parties should upload all motions, responses, replies, and memoranda to the "Supporting Documents" portal within the hearing setting. It is helpful to upload the

pleading when setting a motion directed at a pleading. It is helpful to upload discovery requests and responses (or a subpoena and objections, if any) when setting a motion directed at discovery requests or an objection to subpoena.

**Memoranda Requirements**

**These requirements and deadlines may not be waived or altered except by court order.**

**Failure to File and Serve Motion Materials:** CBL 4.4   A motion or opposition unaccompanied by a required memorandum may be summarily rejected or denied.   Failure to timely file a memorandum in opposition to a motion may result in the pending motion being considered and decided as an uncontested motion. **Motion briefing deadlines are court orders.**

| Motion | Memoranda of law | Page limit | Time deadline | |
|---|---|---|---|---|
| Motion filed by movant | As required by CBL rules | 20 | When filing the motion | Memos which are not filed with the motion will be disregarded |
| Opposition to motion | At time of filing opposition, if needed | 20 | 10 days after service of motion | If no response is timely filed, the Court will |

| | | | as computed in Fla. R. Civ. P. 1.090 | proceed and may grant the motion as unopposed |
|---|---|---|---|---|
| Reply | If needed, limited to matters raised in the opposition | 10 | 5 days after service of opposition<br><br>as computed in Fla. R. Civ. P. 1.090 | If no reply is timely filed, the Court will proceed |
| Sur-reply | With Court permission only | | | |

**Motions Decided on Papers and Memoranda:** Motions may be considered and decided by the Court without a hearing. CBL 4.5 **A hearing is at the discretion of the Court.**

## Sealed and Confidential Documents

Sealed or confidential documents should be e-filed pursuant to the instructions on the Clerk's e-filing portal. In Camera inspections shall be conducted as instructed by the Court.

## Evidentiary Hearings

Absent court order, evidentiary hearings are to be held in person. The court's usual assigned courtroom is 15-1, however for larger cases and pursuant to advance request, the hearing may be held in another courtroom.

 Prior to the evidentiary hearing:

1. The parties must file an exhibit list, listing pre-marked exhibits intended for use by the parties, at least 5 days prior to the hearing.

2. The parties must bring with them to the hearing an index to all potential trial exhibits.

3. The parties must pre-mark all exhibits as follows:

   Plaintiff, Counter-Plaintiff, Cross-Plaintiff: Exh. 1A, 1B, 1C, for identification (e.g.)

   Defendant, Counter-Defendant, Third-Party Defendant, etc: Exh. A1. A2. A3, for identification (e.g)

4. The parties must exchange all exhibits and meet and confer on objections at least 48 hours before the hearing.

5. Witnesses may appear by Zoom only in accordance with updated AOs,civil rules, or court order. The party calling any witness by Zoom is responsible for retrofitting the courtroom to ensure such witness can see and hear counsel, the judge,, the jury (if appropriate), that there is no feedback, that the witness may properly be sworn, and that there are no persons in the background coaching the witness nor inappropriate notes or scripts which cannot be viewed by the judge. Any violation of this provision will result in an immediate suspension of a witness' testimony.

In addition, it is ordered as follows:

### <u>MANDATORY ORDER TO CONFER AND CERTIFICATION REQUIREMENT</u>

This case is subject to the Complex Business Litigation Rules. The rules require that parties meet and confer prior to filing any motion to determine if issues can be narrowed, the appropriate amount of time required for hearing if hearing is requested, and any other issues such as the completion of related discovery. Meet and Confer under these rules requires **an actual effort** between attorneys, not staff.

It is therefore: **ORDERED** and **ADJUDGED** as follows:

All parties to a motion must meet the conferral requirements of the division. The motion must contain a certification of the efforts at meet and confer, which shall include:

- A description of all efforts at a meet and confer, including names of movant and respondent attorneys, dates and method (email, telephone, live meeting) requesting a meet and confer; and

- A description of all dates for meet and confer actually held and the method and names of participating attorneys; and

- Results achieved, including consensus as to amount of time required for hearing, if granted.

The only motions exempt from the meet and confer requirement are Motions for

Injunctive Relief Without Notice; Motions for Summary Judgment and Motions to Amend to Add Punitive Damages. **ANY OTHER MOTION** submitted without a certificate of conferral will be rejected by the Court without prejudice.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 26th day of March, 2025.

2025-004022-CA-01 03-26-2025 3:29 PM
Hon. Lisa Walsh

**CIRCUIT COURT JUDGE**
Electronically Signed

**Electronically Served:**
Alejandro Brito, abrito@britopllc.com
Alejandro Brito, apiriou@britopllc.com
Alejandro Brito, lcoello@britopllc.com
IAN MICHAEL CORP, icorp@britopllc.com
IAN MICHAEL CORP, chernandez@britopllc.com

**Physically Served:**



# JUAN FERNANDEZ-BARQUIN, ESQ.
## CLERK OF THE COURT AND COMPTROLLER
## OF MIAMI-DADE COUNTY

Contact Us    My Account    My Desk    

# CIVIL, FAMILY AND PROBATE COURTS ONLINE SYSTEM

◀◀ BACK

**THE DONALD J. TRUMP REVOCABLE TRUST ET AL VS CAPITAL ONE, N.A.**

| | | | |
|---|---|---|---|
| Local Case Number: | 2025-004022-CA-01 | Filing Date: | 03/07/2025 |
| State Case Number: | 132025CA00402201GE01 | Judicial Section: | CA44 - Downtown Miami - Judge Walsh, Lisa S |
| Consolidated Case No.: | N/A | Court Location: | 73 West Flagler Street, Miami FL 33130 |
| Case Status: | OPEN | Case Type: | Business Torts |

☰ Related Cases                                         Total Of Related Cases: 0  ✚

👥 Parties                                              Total Of Parties: 6  ✚

🔨 Hearing Details                                      Total Of Hearings: 0  ✚

🔊 Dockets                                              Total Of Dockets: 10  ▬

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| 📄 | 10 | 03/26/2025 | | Order Setting CM Deadline | Event | |
| 📄 | 9 | 03/26/2025 | | Order Setting CM Deadline | Event | |
| | 8 | 03/11/2025 | | Receipt: | Event | RECEIPT#:3160060 AMT PAID:$10.00 NAME:ALEJANDRO BRITO BRITO PLLC 2121 PONCE DE LEON BLVD STE 650 CORAL GABLES FL 33134-5230 COMMENT: ALLOCATION CODE QUANTITY UNIT AMOUNT 3139-SUMMONS ISSUE FEE 1 $10.00 $10.00 TENDER TYPE:EFILINGS TENDER AMT:$10.00 RECEIPT DATE:03/11/2025 REGISTER#:316 CASHIER:EFILINGUSER EFILING #:218363918 |
| | 7 | 03/10/2025 | | Electronic Summons Email Notification Sent | Event | **ALEJANDRO BRITO** |
| | | 03/10/2025 | | 20 Day Summons Issued | Service | |
| 📄 | 6 | 03/10/2025 | | ESummons 20 Day Issued | Event | RE: INDEX # 5. Parties: CAPITAL ONE N.A. |
| | 4 | 03/08/2025 | | Receipt: | Event | RECEIPT#:3180179 AMT PAID:$401.00 NAME:ALEJANDRO BRITO BRITO PLLC 2121 PONCE DE LEON BLVD STE 650 CORAL GABLES FL 33134-5230 COMMENT: ALLOCATION CODE QUANTITY UNIT AMOUNT 3100-CIRCUIT FILING FEE 1 $401.00 $401.00 TENDER TYPE:EFILINGS TENDER AMT:$401.00 RECEIPT DATE:03/08/2025 REGISTER#:318 CASHIER:EFILINGUSER EFILING #:218307876 |

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| 📄 | 5 | 03/07/2025 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
| 📄 | 2 | 03/07/2025 | | Complaint | Event | |
| 📄 | 1 | 03/07/2025 | | Civil Cover Sheet - Claim Amount | Event | |

◀◀ BACK

**Please be advised:**

The Clerk's Office makes every effort to ensure the accuracy of the following information; however it makes no warranties or representations whatsoever regarding the completeness, accuracy, or timeliness of such information and data. Information on this website has been posted with the intent that it be readily available for personal and public non-commercial (educational) use and to provide the public with direct online access to information in the Miami-Dade Clerk's Office information systems. Other than making limited copies of this website's content, you may not reproduce, retransmit, redistribute, upload or post any part of this website, including the contents thereof, in any form or by any means, or store it in any information storage and retrieval system, without prior written permission from the Miami-Dade Clerk's Office.

If you are interested in obtaining permission to reproduce, retransmit or store any part of this website beyond that which you may use for personal use, as defined above, visit our Web API Services. You can review the complete Miami-Dade County Disclaimer.

## General

Online Case Home

Civil / Family Courts Information

Login

## Help and Support

Clerk's Home

Privacy Statement

ADA Notice

Disclaimer

Contact Us

About Us



Juan Fernandez-Barquin, Esq.
Clerk of the Court and Comptroller
of Miami-Dade County

73 W. Flagler Street
Miami, Florida 33130

305-275-1155

©2025 Clerk of the Court & Comptroller of Miami-Dade County. All rights reserved.