**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-cv-21596-ALTMAN/LETT**

THE DONALD J. TRUMP REVOCABLE
TRUST, *et al.*,

      Plaintiffs,

v.

CAPITAL ONE, N.A.,

      Defendant.

_____/

## <u>DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .................................................................................................. 1

FACTUAL BACKGROUND.................................................................................................... 3

LEGAL STANDARD............................................................................................................. 4

ARGUMENT ....................................................................................................................... 4

I.  Plaintiffs Fail to State a Claim for Declaratory Relief........................................................ 4

A. Plaintiffs' Claim Is an Inappropriate Request for an Advisory Opinion. ..................... 4

B. Plaintiffs' Declaratory Judgment Claim Is Impermissibly Duplicative of Their
Contract-Based Claim and Fails to Allege Any Ambiguity........................................... 6

C. Plaintiffs' Claim for Declaratory Relief Fails to Allege Any Violation of Law........... 7

II.  Plaintiffs' Consumer Protection Act Claims Must Be Dismissed. .................................... 8

A. Plaintiffs Fail to Allege a Factual Nexus to the Relevant State. ................................... 8

B. Plaintiffs Do Not Adequately Plead an Economic Injury or that Any
Conceivable Injury Occurred in the Relevant State. .................................................... 10

C. Plaintiffs Fail to Allege Any Wrongful or Deceptive Conduct, as Required to
State a Claim Under the NCUDTPA and the NJCFA.................................................. 12

III.  Plaintiffs' Claim for Breach of the Implied Covenant of Good Faith and Fair
Dealing Must Be Dismissed................................................................................................... 16

CONCLUSION........................................................................................................................ 20

## PRELIMINARY STATEMENT

This matter arises from the March 2021 decision by Defendant Capital One, N.A. ("Defendant" or "Capital One") to close certain bank accounts held by Plaintiffs.  On March 8, 2021, Capital One informed Plaintiffs of its decision to close some, but not all, of the accounts associated with Plaintiffs.  Although the account agreements permit closure without any notice, Capital One's initial communication to Plaintiffs provided three months' notice to find alternative banking services, until June 7, 2021.  At Plaintiffs' request, Capital One extended the closure date for some of the accounts to permit Plaintiffs additional time to transfer those accounts.  Plaintiffs also informed Capital One that they intended to voluntarily close additional accounts that Capital One did not decide to close.  By October 2021, Plaintiffs had moved and closed all their accounts. Capital One made no public statement regarding the account closures.

Almost four years to the date after Capital One's initial March 8, 2021 communication, and after Capital One had not heard from Plaintiffs in years, Plaintiffs commenced this action, asserting, without any factual support, that the decision to close the accounts was an "unlawful and deceptive" example of political "debank[ing]" because of disagreement with "President Trump's political views."  Compl., ECF No. 1-1 ¶¶ 71–72.  This is false.  While Capital One closes bank accounts occasionally, it does so for legally and regulatorily permissible reasons, and Plaintiffs plead no facts to suggest otherwise.

On this basis, Defendant moved to dismiss Plaintiffs' original pleading, pointing out numerous factual and legal defects in each of Plaintiffs' claims.  Mot. to Dismiss, ECF No. 15.  In response, Plaintiffs filed the First Amended Complaint, adding several new entities as Plaintiffs and additional factual allegations in an attempt to bolster their conclusory claims.  First Am.

1

Compl. ("Am. Compl."), ECF No. 32.  But these superficial changes do not cure the fundamental problems with Plaintiffs' claims, each of which fails for several reasons.

First, Plaintiffs' claim for declaratory judgment fails to plead the existence of a live legal or factual dispute as required by Eleventh Circuit precedent.  The account closures occurred more than four years ago, and Plaintiffs do not articulate any present harm or risk of harm that would result without the requested declaration that the closures were improper.  Rather, this claim is little more than a rehash of their contractual claim, and as such must be dismissed.

Second, Plaintiffs do not plead facts to allege a sufficient nexus to North Carolina or New Jersey, nor the kind of economic injury required to state a claim under the consumer protection laws of those states.  The Amended Complaint also fails to allege any facts indicating that Capital One engaged in unfair or deceptive conduct.  Instead, Plaintiffs rely entirely on the unsupported and conclusory allegation that Plaintiffs "learned" after unspecified "due diligence" that the closure was the result of political animus.  But Plaintiffs fail to specify what the "diligence" revealed and rely instead on news articles about debanking involving *other* banks that do not mention Capital One.  Such threadbare allegations are not sufficient to state a claim.

Finally, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fails for several reasons.  Most importantly, as the Amended Complaint concedes, the express terms of the agreement governing Plaintiffs' accounts permitted Capital One to close accounts at any time in the bank's "sole discretion," which forecloses a claim for breach of the implied covenant of good faith and fair dealing.  Nor do Plaintiffs' factual allegations suggest that Capital One's closure of the accounts was unfair or deceptive in any way.  Instead, the facts actually pled regarding the account closures—including that Plaintiffs were provided three months' notice before the accounts were closed and received extensions to the closure date from Capital One upon

request—contradict Plaintiffs' claim of breach and, if anything, affirmatively demonstrate Capital One's good faith.

For these reasons and as further described below, the Motion to Dismiss should be granted.

## FACTUAL BACKGROUND[1]

Defendant Capital One is a national bank offering commercial and retail banking services with its headquarters in Virginia. Am. Compl. ¶ 13. Plaintiffs are former holders of Capital One deposit accounts and allege they were active users of Capital One's banking services for "several decades" for a variety of business endeavors.[2] *Id*. ¶¶ 22, 24–25. Plaintiffs' accounts were governed by Capital One's Rules Governing Deposit Accounts, which set forth the terms and conditions for an account holder at Capital One. *See id*. Ex. A (the "Rules"), ECF No. 32-1. The Rules provide, in relevant part, that Capital One may close an account for any reason in its sole discretion and that Capital One is "not liable for any damages or liabilities resulting from the termination of an account relationship." Am. Compl. ¶¶ 98, 167; Rules at 13.

On March 8, 2021, Capital One notified Plaintiffs by letter of its decision to terminate the account relationships for many, but not all, deposit accounts held by Plaintiffs and their related entities by June 7, 2021. Am. Compl. ¶ 46. The letter provided Plaintiffs with three months' notice prior to the closure of the accounts to allow for the orderly drawdown of funds and the

---

[1]  Defendant Capital One accepts the facts pled as true solely for the purpose of this motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2]  Plaintiffs The Donald J. Trump Revocable Trust, DJT Holdings Managing Member, LLC, DJT Holdings, LLC, and DTTM Operations, LLC are corporate entities located in Palm Beach County, Florida, and Plaintiff Eric Trump is a resident of Palm Beach County, Florida. Am. Compl. ¶¶ 1–4, 12. Plaintiff Eric Trump Wine Manufacturing, LLC is a corporate entity located in Charlottesville, Virginia. *Id*. ¶ 5. Plaintiffs Lamington Family Holdings, LLC and Mobile Payroll Construction, LLC are corporate entities located in Bedminster, New Jersey. *Id*. ¶¶ 6–7. Plaintiff Pine Hill Development, LLC is a corporate entity located in Pine Hill, New Jersey. *Id*. ¶ 8. Plaintiff T International Realty, LLC is a corporate entity located in Jupiter, Florida. *Id*. ¶ 9. Plaintiff TNGC Charlotte, LLC is a corporate entity located in Mooresville, North Carolina. *Id*. ¶ 10. Plaintiff Trump Ice, LLC is a corporate entity located in New York, New York. *Id*. ¶ 11.

transition of deposits to other financial institutions, and at Plaintiffs' request (and as the Amended Complaint concedes), Capital One granted extensions beyond the original closure date.  *Id.* ¶ 47.

Almost exactly four years later, Plaintiffs filed this lawsuit in Florida state court claiming that the accounts were wrongfully closed for political reasons.  On April 7, 2025, Defendant Capital One removed this case to federal court based on diversity jurisdiction.  ECF No. 1.  On May 7, 2025, Defendant filed the Motion to Dismiss the Complaint.  ECF No. 15.  On June 12, 2025, Plaintiffs filed the First Amended Complaint.  ECF No. 32.

## LEGAL STANDARD

To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plausibility standard requires Plaintiffs to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  The Amended Complaint's "[l]egal conclusions without adequate factual support are entitled to no assumption of truth."  *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011).

## ARGUMENT

I.      **Plaintiffs Fail to State a Claim for Declaratory Relief.**

A.      **Plaintiffs' Claim Is an Inappropriate Request for an Advisory Opinion.**

Plaintiffs' claim for relief under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, which applies to this action post-removal, fails because it is an inappropriate request for an advisory opinion that courts in this Circuit have made clear is not permitted.  Am. Compl. ¶ 118; *see Garden-Aire Vill. S. Condo. Ass'n Inc. v. QBE Ins. Corp.*, 774 F. Supp. 2d 1224, 1227 (S.D.

Fla. 2011).[3]  A declaratory judgment action requires a legal dispute "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Goeseke v. Arch Specialty Ins. Co.*, No. 20-CV-24878-DLG, 2021 WL 2459570, at *2 (S.D. Fla. Feb. 10, 2021) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  No such dispute exists here.

A ruling on Plaintiffs' declaratory judgment claim would not have "the potential to prevent damages," as required to state a claim. *Bacardi USA, Inc. v. Young's Mkt. Co.*, 273 F. Supp. 3d 1120, 1129 (S.D. Fla. 2016) (dismissing declaratory judgment claims where contract had previously been terminated).  Plaintiffs' banking relationship with Capital One ended years ago, and Plaintiffs do not allege that they were unable at the time, let alone are currently unable, to find comparable banking services.[4]  To the contrary, Plaintiffs concede that they were given substantial notice of the termination decision and that Capital One provided extensions at Plaintiffs' request to enable them to obtain other banking services.  Am. Compl. ¶ 47.  Plaintiffs offer only conclusory, non-specific assertions that they suffered financial harm or disruption as a result of the closures.  Nor do they allege that they are at risk of sustaining any present or future harm, as is necessary to state a claim for declaratory judgment, given that the accounts have been closed for nearly four years.  *See Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999) (declaratory judgment claim cannot stand where a party fails to "assert a reasonable expectation that the injury they have suffered will continue or will be repeated in the future"); *Michele F. Libman MD PA v. First Health Grp. Corp.*, No. 24-14119-CIV-AMC, 2024 WL

---

[3]   Federal courts construe claims for declaratory relief under Florida's declaratory judgment statute as being governed by the Federal Declaratory Judgment Act.  *See, e.g.*, *Garden-Aire Vill. S. Condo. Ass'n Inc.*, 774 F. Supp. 2d at 1227; *Palmetto W. Park Condo., Inc. v. Empire Indem. Ins. Co.*, No. 21-21751-CIV-FAM, 2021 WL 3931871, at *2–3 (S.D. Fla. Sept. 2, 2021).

[4]   The Amended Complaint's passing allegation that there is a "live controversy" regarding "whether Plaintiffs' Accounts should be reinstated by Capital One," Am. Compl. ¶ 115, does not change this analysis, as Plaintiffs do not actually ask the Court for such relief.

4564804, at *3 (S.D. Fla. Aug. 12, 2024) ("Injury in the past does not support a claim for declaratory judgment."). Accordingly, Plaintiffs' requested declaration would be "nothing more than a gratuitous comment without any force or effect," which case law in this Circuit makes clear is not appropriate. *Malowney*, 193 F.3d at 1348 (citation omitted).

**B.      Plaintiffs' Declaratory Judgment Claim Is Impermissibly Duplicative of Their Contract-Based Claim and Fails to Allege Any Ambiguity.**

Plaintiffs' declaratory judgment claim fails for the additional reason that it is duplicative of their contract-based good faith and fair dealing claim. To state a viable declaratory judgment claim, Plaintiffs must allege a contractual violation that is "forward-looking, rather than retrospective, as any retrospective declaration would be equally solved by resolution of the breach of contract claim." *Garcia v. Scottsdale Ins. Co.*, No. 18-20509-CIV-RNS, 2018 WL 3432702, at *2 (S.D. Fla. July 16, 2018) (rejecting declaratory judgment claim as duplicative of a contract claim). "Declaratory judgment claims that functionally seek adjudication on the merits of a breach of contract claim are duplicative and cannot stand." *Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, 499 F. Supp. 3d 1178, 1191 (S.D. Fla. 2020). But Plaintiffs here do exactly that: rather than allege any conceivable "forward-looking" violation of an express or implied term of the parties' contract, their declaratory judgment claim seeks to adjudicate the same contract-based arguments that form the basis of their good faith and fair dealing claim, relying on events that occurred more than four years ago.[5]

---

[5]     In addition to the other flaws with Plaintiffs' contractual good faith and fair dealing claim discussed *infra* Section III, such a claim in any event cannot give rise to a declaratory judgment. *See ABC Univ. Shops, LLC v. Scottsdale Ins. Co.*, No. 18-60562-CIV-DPG-BSS, 2018 WL 3672265, at *3–4 (S.D. Fla. July 24, 2018) (dismissing declaratory judgment claim as duplicative of breach of contract claim, while also dismissing breach of contract claim for lack of factual allegations of breach), *report and recommendation adopted*, 2018 WL 4409851 (Aug. 16, 2018).

Moreover, a forward-looking, prospective claim is necessary but not sufficient—a plaintiff also must plead some plausible contractual ambiguity.  *See Saltponds Homeowners Ass'n, Inc. v. Rockhill Ins. Co.*, No. 20-10063-CIV-JEM, 2021 WL 3284841, at *2 (S.D. Fla. July 29, 2021) ("Under the Federal Declaratory Judgment Act, a plaintiff must . . . 'plead that a contractual term or provision is ambiguous and needs construction.'" (citation omitted)).  Far from arising from a purported contractual ambiguity, while Plaintiffs vaguely state that there is a need for a declaration of the "legal rights, powers, privileges, status, and immunities of the parties with respect to . . . Capital One's Rules Governing Deposit Accounts," Am. Compl. ¶ 114, Plaintiffs' declaratory relief claim does not allege that Capital One violated any provision of the Rules, nor that any portion of the Rules is ambiguous and in need of construction, as required to state a declaratory judgment claim.  *See Cantonis Co. v. Certain Interested Underwriters at Lloyds, London*, No. 9:18-81703-CIV-RLR-BER, 2019 WL 3429962, at *3 (S.D. Fla. May 9, 2019) ("Failure to plead ambiguity requires dismissal of a declaratory relief claim."), *report and recommendation adopted*, 2019 WL 3429140 (June 10, 2019).

## C.     Plaintiffs' Claim for Declaratory Relief Fails to Allege Any Violation of Law.

Plaintiffs also fail to allege any ongoing or future violation of law that could entitle them to a declaratory judgment.  Count I, which sets forth Plaintiffs' request for declaratory relief, does not reference any statute, let alone assert any violation of any law by Capital One.  The failure to allege a legal violation, combined with the failure to plead any contractual breach or ambiguity as described above, requires dismissal of Plaintiffs' declaratory relief claim.  *See Santiago v. NSI Ins. Grp., Inc.*, No. 05-22307-CIV-ASG, 2006 WL 8433177, at *9 (S.D. Fla. July 10, 2006); *Bacardi USA, Inc.*, 273 F. Supp. 3d at 1127–28.

Moreover, none of the laws referenced in the Amended Complaint—in particular, section 655.0323(2)(a), Florida Statutes (the "Florida Banking Statute"), which prohibits terminating

banking relationships based on political affiliations—give rise to a request for declaratory judgment.  Am. Compl. ¶ 109.  As an initial matter, the Florida Banking Statute did not even exist in 2021.  § 655.0323, Fla. Stat. (2023) (amended 2024).  Additionally, it provides that violations may be enforced "*only by the enforcing authority*, as defined in s[ection] 501.203(2)" to mean various state agencies, not by private litigants.  § 655.0323(7), Fla. Stat. (emphasis added).  Without a private right of action, the Florida Banking Statute cannot form the basis of a declaratory judgment claim.  *See Newton v. Duke Energy Fla., LLC*, No. 16-CV-60341-WPD, 2016 WL 10564996, at *4 (S.D. Fla. Sept. 21, 2016) (dismissing claims where cited statutes and constitutional provisions do not allow private rights of action and plaintiffs' claims therefore "cannot be brought under the [Declaratory Judgment Act]"); *Glen v. Club Méditerranée S.A.*, 365 F. Supp. 2d 1263, 1272 (S.D. Fla. 2005) (rejecting plaintiffs' "attempt to use the Declaratory Judgment Act as a vehicle" for their claim because "judicial review is unavailable where no express provision for judicial relief exists").

## II.     Plaintiffs' Consumer Protection Act Claims Must Be Dismissed.

### A.     Plaintiffs Fail to Allege a Factual Nexus to the Relevant State.

Despite Plaintiffs' efforts to bolster the factual basis for their claims under the North Carolina and New Jersey consumer protection laws, the Amended Complaint still fails to plead the required factual connection to the relevant state, requiring dismissal.

North Carolina:  Plaintiffs TNGC, T International Realty, and DTTM (the only Plaintiffs asserting a claim under North Carolina's Unfair and Deceptive Trade Practices Act ("NCUDTPA"), N.C. Gen. Stat. § 75-1.1) fail to plead any specific connection between Capital One's decision to close their accounts and the state of North Carolina.  *Jacobs v. Cent. Transp., Inc.*, 891 F. Supp. 1088, 1111 (E.D.N.C. 1995) ("North Carolina must have a substantial relationship to the *particular conduct* giving rise to the unfair and deceptive trade practices claim."

(emphasis added)).  Plaintiffs do not allege that Capital One's decision to close Plaintiffs' accounts occurred within North Carolina, was communicated to Plaintiffs from North Carolina, or that the accounts were opened in North Carolina.  Instead, Plaintiffs offer only strained suggestions of a connection to North Carolina which boil down to: (1) one plaintiff (TNGC) operated in North Carolina and two others (T International Realty and DTTM) had occasional dealings in the state; and (2) non-specific allegations of "financial harm and reputational harm" suffered in the state as a result of the account closures, without actually identifying any transaction or business activity that could not be completed as a result.  Am. Compl. ¶¶ 54–55, 59, 62–64, 68, 71–73, 75.  Such assertions allege "merely incidental" connections to North Carolina and are insufficient to state a claim under the NCUDTPA.  *Jacobs*, 891 F. Supp. at 1111; *The 'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494, 502 (M.D.N.C. 1987) (holding that due to the Commerce Clause, "[a]pplication of the Act in cases having only an incidental local effect not only would be contrary to the Fourth Circuit's interpretation of the Act, but also would render the Act constitutionally suspect").

New Jersey:  Plaintiffs Mobile Payroll Construction, LLC, Eric Trump Wine Manufacturing, and DTTM (the only Plaintiffs asserting a claim under the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-2) also fail to allege that any purportedly wrongful conduct occurred in New Jersey.  *See Cheslow v. Cont'l Cas. Co.*, No. 21-C-4010, 2022 WL 1641888, at *5–6 (N.D. Ill. May 24, 2022) (dismissing NJCFA claim against insurer who sold claims to New Jersey-based employer where none of the other relevant contacts occurred in New Jersey).  The only allegations of any connection to New Jersey are (1) that Plaintiff Mobile Payroll Construction is based in New Jersey and allegedly "processes and funds payroll" from projects in the state, and (2) that Plaintiffs Eric Trump Wine Manufacturing and DTTM sold certain products in New Jersey.  These allegations—which amount to nothing more than claims that certain

Plaintiffs' businesses had incidental contact with the state—fail to directly connect the allegedly unfair conduct (the closing of Plaintiffs' accounts) to New Jersey, as the NJCFA requires.  *See Maniscalco v. Brother Int'l Corp.*, 709 F.3d 202, 208 (3rd Cir. 2013) (NJCFA did not apply where "[n]othing else about the relationship between the parties, other than the fortuitous location of [defendant's] headquarters, took place in . . . New Jersey").

### B.   Plaintiffs Do Not Adequately Plead an Economic Injury or that Any Conceivable Injury Occurred in the Relevant State.

Plaintiffs' consumer protection claims also fail because Plaintiffs do not plausibly allege that they suffered any economic injury, as required to state a NCUDTPA or NJCFA claim.  *See Collision Consolidation Co. v. MAACO Franchisor SPV, LLC*, No. 2023-007248, 2023 WL 12046829, at *2 (Mich. Cir. Ct. July 31, 2023) (dismissing NCUDTPA claim against a company *headquartered* in North Carolina for failure to allege that plaintiff suffered a substantial effect on operations or suffered any injury in North Carolina); *Robey v. SPARC Grp. LLC*, 311 A.3d 463, 471 (N.J. Sup. Ct. 2024).   The Amended Complaint makes only boilerplate statements that Plaintiffs suffered "financial" and "reputational harm," Am. Compl. ¶¶ 59, 68, 75; it fails to provide any specific facts indicating that the account closures caused Plaintiffs any injury at all. Plaintiffs do not claim that Capital One provided them insufficient time to transition their accounts or claim that they were unable to transition to other financial institutions.  Indeed, Plaintiffs offer no facts to explain how the closure of their accounts and the orderly transfer of their funds (in accordance with extensions requested by Plaintiffs) prevented Plaintiffs from "accessing the funds therein," *id*. ¶ 139, or injured Plaintiffs in any way.

For example, Plaintiff T International Realty claims to have been injured in connection with certain allegedly under-contract real estate properties in North Carolina, claiming that "any commission earned . . . would have been deposited in its bank account" and that T International Realty "was forced to scramble" upon learning of the account closures.  *Id*. ¶¶ 66, 67.  But the

Amended Complaint does not allege that T International Realty was unable to receive commission payments or explain how the alleged need to "scramble" caused them economic injury, especially given the Amended Complaint's concession that Capital One agreed to extend the account closure timeline upon Plaintiffs' request. *Id*. ¶ 47. This kind of inconvenience, without more, is insufficient to allege the economic harm required to state a claim. *Staffing Advantage LLC v. Definitive Staffing Sols., Inc.*, No. 7:20-CV-00150, 2021 WL 2426340, at *10 (E.D.N.C. June 14, 2021) (dismissing NCUDTPA claim given failure to plausibly allege "actual injury" and noting that purported injuries resulting from "a mere breach of contract" are insufficient); *Paradiso v. Bank of Am., N.A.*, No. 2:22-02042, 2022 WL 17176937, at *4 (D.N.J. Nov. 23, 2022) (dismissing NJCFA claim where "plaintiffs merely parrot the elements by alleging that [defendant's] conduct proximately caused their 'ascertainable loss,' without giving facts about what their loss is or how [defendant] caused it" (citations omitted)).

In addition, even if Plaintiffs had suffered an injury (which they have not), Plaintiffs DTTM and T International Realty's NCUDTPA claims and Plaintiffs Eric Trump Wine Manufacturing and DTTM's NJCFA claims must be dismissed for the additional reason that those Plaintiffs fail to allege that they suffered an injury in North Carolina or New Jersey, respectively. A financial injury is "deemed to have occurred 'where the plaintiff feels the pain' which usually 'will be the state of the *plaintiff's* principal place of business.'" *Window World of Baton Rouge, LLC v. Window World, Inc.*, No. 15-CVS-1, 2024 WL 5053172, at *45 (N.C. Super. Ct. Nov. 26, 2024) (quoting *Clifford v. Am. Int'l Specialty Lines Ins. Co.*, No. 04-CV-486, 2005 WL 2313907, at *8 (M.D.N.C. Sep. 21, 2005) ("In determining where the injury occurred in a case involving commercial or financial injury rather than physical injury, courts often look at the location where the economic loss was felt.")); *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 450 (D.N.J. 2012) (New Jersey law inapplicable where the alleged injury was suffered in California). None of these

Plaintiffs maintain their principal place of business in North Carolina or New Jersey; instead, these Plaintiffs rely on incidental contact like the sale of goods within the state, conduct that cannot give rise to a claim under the NJCFA or NCUDTPA. *See, e.g.*, *Knox v. Samsung Elecs. Am.*, *Inc.*, No. 08-4308, 2009 WL 1810728, at *2–4 (D.N.J. June 25, 2009) (declining to apply NJCFA because, among other reasons, none of the relevant contacts occurred in New Jersey); *Montich*, 849 F. Supp. 2d at 450 (holding the NJCFA inapplicable where plaintiff "purchased the washing machine from a store in California, took delivery of the machine in California, used the machine at her home in California, and allegedly suffered injury in California"); *Dixie Yarns, Inc. v. Plantation Knits, Inc.*, No. 3:93-CV-301, 1994 WL 910955, at *2 (W.D.N.C. July 12, 1994) (holding that it is "plainly contrary to the requirement [that] the plaintiff suffer an in-state injury" if all a party needs to show is it "made a product and sold it within the borders of North Carolina"). The "pain" of any claimed injury resulting from the alleged (unspecified) disruption to the sale of products in New Jersey or North Carolina would be felt in the entities' state of headquarters, and permitting a claim to proceed under this circumstance would extend the NJCFA and NCUDTPA far beyond their intended scope.

     **C.**    **Plaintiffs Fail to Allege Any Wrongful or Deceptive Conduct, as Required to State a Claim Under the NCUDTPA and the NJCFA.**

Plaintiffs' NCUDTPA and NJCFA claims also fail because they do not allege facts indicating that Capital One engaged in the kind of unfair or misleading conduct that would violate either statute. *Fitzgerald Fruit Farms LLC v. Aseptia, Inc.*, 527 F. Supp. 3d 790, 800 (E.D.N.C. 2019) (NCUDTPA claim requires plaintiff to allege that "(1) the defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff" (citation omitted)), *aff'd sub nom. Fitzgerald Fruit Farms, LLC v. Harris*, 858 F. App'x 625 (4th Cir. 2021); *Robey*, 311 A.3d at 471 (NJCFA requires

plaintiffs to plead "an unlawful practice, an ascertainable loss, and a causal relationship between the two").

The Amended Complaint's assertion that the account closures were politically motivated and therefore unfair or deceptive rests entirely on conclusory assertions that are insufficient to sustain a claim under the NCUDTPA and NJCFA. Am. Compl. ¶¶ 132, 134–37, 139, 154, 156–59, 161; *see also Gutman v. Liberty Bankers Life Ins. Co.*, No. 24-8076, 2025 WL 615128, at *5 (D.N.J. Feb. 26, 2025) (dismissing NJCFA claim where the complaint merely stated "in a conclusory fashion that '[t]he conduct outlined in the complaint violated the New Jersey Consumer Fraud Act'"); *Waterford I at Cary Park Condo. Homeowners Ass'n, Inc. v. Nationwide Prop. & Cas. Ins. Co.*, 669 F. Supp. 3d 531, 536–37 (E.D.N.C. 2023) (dismissing NCUDTPA claims where plaintiffs stated in a conclusory fashion that insurer defendants violated the NCUDTPA and failed to allege facts that defendants engaged in any unfair conduct). Courts applying New Jersey and North Carolina law require *facts* to suggest that the challenged conduct was actually wrongful; otherwise, every unhappy consumer could sustain a claim merely by labeling their complaints with adjectives like "deceptive" or "unlawful." *See Wright v. Ocwen Loan Servicing, LLC*, No. 3:16-cv-8989, 2019 WL 4013954, at *6–7 (D.N.J. Aug. 26, 2019) (dismissing plaintiff's NJCFA claim because the complaint was "conclusory" and "completely bereft of" detail, and stating that "[i]t is not sufficient to make conclusory or broad-brush allegations regarding defendant's conduct [under the NJCFA]; plaintiff must specifically plead those facts"); *see also* N.J. Stat. Ann. § 56:8-2; *Alqolaq v. State Farm Fire & Cas. Co.*, No. 3:11-CV-16, 2011 WL 1831570, at *3 (W.D.N.C. Apr. 7, 2011) (dismissing NCUDTPA claim where plaintiff made "[n]aked assertions devoid of further factual enhancement" and without showing "substantial aggravating circumstances on the part of [d]efendant").

Despite adding numerous paragraphs to the Amended Complaint, Plaintiffs still fail to offer a single detail or fact to support their broad allegation that the closure of their accounts was the result of politically-motivated "debanking," let alone that it was unfair or deceptive. As described above, the Amended Complaint relies almost exclusively on irrelevant press articles and other public reports about "debanking" industry-wide, which do not mention Capital One. Am. Compl. ¶¶ 27–41, 102–07. Neither North Carolina nor New Jersey law contemplates permitting a consumer protection claim to proceed on such a thin basis.

Here, the facts pled weigh *against* any inference that Capital One's closure was undertaken in a harmful, deceptive, or unfair manner. As described above, even though the Rules permitted Capital One to close the accounts without notice, Plaintiffs admit that Capital One provided substantial advance notice of the closures and granted extensions of the closing date of the accounts at Plaintiffs' request. *Id*. ¶¶ 46–47; *Waterford I at Cary Park Condo. Homeowners Ass'n, Inc.*, 669 F. Supp. 3d at 537 (dismissing an NCUDTPA claim where insurer defendants took ameliorative actions that contradicted plaintiffs' conclusory allegations). Plaintiffs' disappointment regarding Capital One's decision to close their accounts, without a violation of contract or law, is insufficient to state a claim under the NJCFA or NCUDTPA. *See Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 517 (D.N.J. 2009) (dismissing NJCFA claim where the challenged practice was disclosed to plaintiff in bank account agreement because "[m]ere customer dissatisfaction does not constitute consumer fraud" (citation omitted)), *aff'd*, 374 F. App'x 341 (3d Cir. 2010); *Thortex, Inc. v. Standard Dyes, Inc.*, No. COA05-1274, 2006 WL 1532136, at *4 (N.C. Ct. App. June 6, 2006) (affirming the dismissal of an NCUDTPA claim where defendants simply competed for business, noting that actions that "appear to be nothing more than the normal ambit" of business activities do not violate North Carolina law).

Courts in New Jersey and North Carolina recognize the difficulty of asserting a consumer protection claim where the parties' dealings are governed by contract, as the "exercise of contractual rights is not an unfair trade practice." *In re Nantahala Vill., Inc*, 976 F.2d 876, 882 (4th Cir. 1992) (applying North Carolina law); *U.S. Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 735 (4th Cir. 1989) (affirming dismissal of NCUDTPA claim where loan-provider defendant exercised contractual right to withdraw from financing program to plaintiff's detriment, noting defendant's "exercise of its contractual right to withdraw could not form the basis of a deceptive trade practice claim"); *see also Urbino v. Ambit Energy Holdings, LLC*, No. 14-5184, 2015 WL 4510201, at *3 (D.N.J. July 24, 2015) (where "the parties' relationship is governed by a valid contract, a court will dismiss a [NJ]CFA claim if the defendant's allegedly unlawful conduct is expressly authorized by the terms of the parties' agreement"); *Slack v. Suburban Propane Partners, L.P.*, No. 10-2548, 2010 WL 3810870, at *5 (D.N.J. Sept. 21, 2010) (dismissing NJCFA claim where the contract between parties "provided for and explained the actions that [d]efendants ultimately took," including taking such action "without providing advance notice or corresponding explanation to [p]laintiffs"). This is especially true here, as similar contractual language permitting account closure is common among banks in the United States, and regulatory guidance from the Office of the Comptroller of the Currency recognizes that banks may close customer accounts "for any reason and without notice."[6]

Furthermore, courts have recognized that companies do not violate the NCUDTPA or the NJCFA by merely exercising their discretion as to how they conduct business. *See Allied Distribs., Inc. v. Latrobe Brewing Co.*, 847 F. Supp. 376, 379 (E.D.N.C. 1993) (dismissing NCUDTPA claim

---

[6]   *Closing a Bank Account*, Off. of the Comptroller of the Currency, https://www.helpwithmybank.gov/help-topics/bank-accounts/opening-closing-inactive-bank-accounts/closing-a-bank-account/closing-notification.html (last visited July 11, 2025) ("Generally, banks may close accounts, for any reason and without notice.").

against defendant that refused to conduct business with plaintiff where plaintiff failed to allege aggravating circumstances, noting that the exercise of discretion in business relationships is not an unfair practice); *see also Gen. United Co. v. Am. Honda Motor Co., Inc.*, 618 F. Supp. 1452, 1455 (W.D.N.C. 1985) ("[T]he United States Supreme Court has recognized the right of a seller freely to exercise its independent discretion as to parties with whom it will deal." (citing *Monsanto Co. v. Spray–Rite Serv. Corp.*, 465 U.S. 752 (1984))); *Urbino*, 2015 WL 4510201, at *5 (dismissing NJCFA claim where contract clearly gave defendant the discretion to change energy rates and was therefore not deceptive or unfair).[7]

Without any plausible allegation of egregious or aggravating circumstances, normal business activities such as the closure of Plaintiffs' accounts do not rise to the level of unfair conduct. *Thortex, Inc.*, 2006 WL 1532136, at *4 (holding that facts that "appear to be nothing more than the normal ambit" of business activities do not violate the NCUDTPA); *Dalton v. Camp*, 548 S.E.2d 704, 711 (N.C. 2001) ("*[E]gregious or aggravating* circumstances must be alleged and proved before the Act's provisions may take effect." (citation omitted)); *Coda v. Constellation Energy Power Choice, LLC*, 409 F. Supp. 3d 296, 302 (D.N.J. 2019) (dismissing NJCFA claim because a customer's displeasure with an agreed upon contractual term—allowing defendant the discretion "to consider a list of non-exhaustive factors in setting the variable rate" charged—does not constitute a substantial aggravating circumstance).

## III.   Plaintiffs' Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Must Be Dismissed.

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing must similarly be dismissed because the contract governing the parties' relationship expressly permits

---

[7]   Even if Plaintiffs had stated a claim for breach of contract, they do not allege any aggravating circumstances that would elevate a breach of contract to support a claim under the NCUDTPA or NJCFA.  *See Allied Distribs., Inc.*, 847 F. Supp. at 379; *Coda v. Constellation Energy Power Choice, LLC*, 409 F. Supp. 3d 296, 301–02 (D.N.J. 2019).

Capital One to close the accounts and the Amended Complaint offers no facts to suggest that Capital One failed to act in good faith or deal fairly.[8]  Under Florida law, "[t]o allege a breach of the implied covenant, the party must demonstrate a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence; but, rather by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement."  *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000).

As Plaintiffs do not dispute, the Rules governing Plaintiffs' accounts make explicit that Capital One may close an account at any time for any reason, stating that the bank can do so "in its sole discretion" and without notice, contractual provisions that are consistent with regulatory guidance and industry practice as noted above.  *See supra* at 3.  In essence, Plaintiffs' claim is that in exercising its "sole discretion" under an unambiguous term of an express, written contract, Capital One acted in bad faith.  But Florida courts have rejected good faith and fair dealing claims where an agreement expressly provides absolute discretion in exercising a contractual right. *Compare Amica Mut. Ins. Co. v. Morowitz*, 613 F. Supp. 2d 1358, 1361 (S.D. Fla. 2009) ("[A]

---

[8]    A federal court sitting in diversity applies the choice of law rules of the state in which it sits; therefore, this Court would apply Florida's choice of law rules.  *Grupo Televisa, S.A. v. Telemundo Commc'n Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941)).  For contract claims, Florida courts apply the law of the state in which the contract was executed.  *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006).  In addition, the Rules include a choice of law provision that reflects the same.  Rules at 23.  The Amended Complaint makes no mention of where the Rules were agreed to with Plaintiffs.  For the purposes of this motion only, and without waiver of any argument regarding the applicable choice of law, Capital One analyzes Plaintiffs' claim under Florida law.  However, the outcome would be the same under other potentially applicable state laws.  *See, e.g.*, *Goureau v. Lemonis*, No. 20-CV-04691, 2021 WL 4847073, at *7 (S.D.N.Y. Oct. 15, 2021) (no claim for good faith and fair dealing where the contract entitled the party to "complete and sole discretion"); *Frank Brunckhorst CO., L.L.C. v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 462 (E.D. Va. 2008) ("Under Virginia law, every contract contains an implied covenant of good faith and fair dealing; however, a breach of those duties only gives rise to a breach of contract claim, not a separate cause of action.").

contract that *expressly* grants absolute and unlimited discretion concerning a party's decision-making power would preclude the applicability of the implied covenant of good faith and fair dealing as to such decisions."), *with Speedway SuperAmerica, LLC v. Tropic Enters., Inc.*, 966 So. 2d 1, 5 (Fla. 2d DCA 2007) (finding a claim for good faith and fair dealing was properly presented because the contractual provision "contain[ed] 'no standards for exercising discretion'" nor stated "that the landlord's discretion to withhold consent is absolute" (citation omitted)).

As explained above, Plaintiffs also do not assert that Capital One violated any applicable laws in the closure of Plaintiffs' accounts.  Nor can Plaintiffs argue that their good faith and fair dealing claim should stand because Capital One exercised its discretion in closing the accounts, as can give rise to a claim for breach of the implied duty in certain circumstances.[9]  Here, Capital One's exercise of its contractual right simply ended its relationship with Plaintiffs in Capital One's "sole discretion," just as Plaintiffs could have chosen to do under the contract terms.  *See Sunshine Gasoline Distribs., Inc. v. Biscayne Enters., Inc.*, 139 So. 3d 978, 980 n.1 (Fla. 3d DCA 2014) (recognizing that "imposing a duty of good faith and fair dealing" where a contract provided a party "sole discretion" on renewal decision would be inappropriate because permitting such a claim to proceed "in this instance would frustrate the parties' expectations, not protect them.  The term 'sole discretion,' in this instance, simply means that both parties have the choice whether to renew the contract for any reason").

Plaintiffs also fail to specify any provision of the Rules that Capital One breached, as Florida law requires to state a claim for breach of the duty of good faith and fair dealing.  *Diageo*

---

[9]    Moreover, Capital One's closure decision did not impair Plaintiffs' assets or otherwise harm Plaintiffs beyond the possible inconvenience of finding other accounts to receive the transfer of funds, distinguishing the present case from those permitting good faith and fair dealing claims to proceed.  *See, e.g.*, *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1098 (Fla. 1st DCA 1999) (issue of material fact existed where plaintiff alleged defendant withheld business opportunities in exercising contractual discretion).

*Dominicana, S.R.L. v. United Brands, S.A.*, 314 So. 3d 295, 299 (Fla. 3d DCA 2020) (vacating a judgment for breach of the duty of good faith where the liable party terminated the agreement according to provisions in the contract, stating that "[a] duty of good faith must 'relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements'" (citation omitted)). To allow Plaintiffs' claim to proceed where the express language of the Rules indisputably provides Capital One with complete discretion to close Plaintiffs' accounts at any time and for any reason would "rewrite" the terms of an agreement, which Florida law does not permit. *See City of Riviera Beach v. John's Towing*, 691 So. 2d 519, 521 (Fla. 4th DCA 1997) ("The implied obligation of good faith cannot be used to vary the terms of an express contract.").

This is especially true given that Plaintiffs here are knowledgeable business entities and the individual Plaintiff is involved in many sophisticated business ventures. Am. Compl. ¶¶ 24–25. Plaintiffs do not claim to have failed to understand the unambiguous terms of the Rules and thus were on notice that their accounts could be closed. The Eleventh Circuit has recognized the "general rule" that where "we have two private, sophisticated parties who voluntarily entered into a contract," conduct that is "expressly authorized" by that contract, such as a termination clause, "cannot be said to breach the implied covenant of good faith and fair dealing." *Harris Corp. v. Giesting & Assocs., Inc.*, 297 F.3d 1270, 1273 (11th Cir. 2002); *see also Cardinal Point, LLC v. Edgewood Partners Ins. Ctr., Inc.*, No. 22-23170-CIV-CMA, 2024 WL 1632740, at *10 (S.D. Fla. Apr. 16, 2024) (enforcement of at-will employment termination clause did not violate the duty of good faith and fair dealing where plaintiffs were "sophisticated parties").

The good faith and fair dealing claim also fails because Plaintiffs have not alleged any facts to suggest that the decision to close the accounts was not made in good faith; Florida courts have

emphasized that, even where a plaintiff lacks access to "direct evidence of dishonesty," a plaintiff still "must allege *facts* indicating that defendant's stated purpose for its actions is merely a pretext for the actual impermissible purpose." *Nat'l Franchisee Ass'n v. Burger King Corp.*, No. 09-23435-CIV-KMM, 2010 WL 4811912, at *4 (S.D. Fla. Nov. 19, 2010) (emphasis added). As described above, Plaintiffs fail to allege a single fact to suggest that the account closure was actually motivated by "political discrimination." *Id.* at *3 ("[A] plaintiff does not adequately raise a claim of 'bad faith' merely by making a conclusory assertion that the party acted in bad faith in exercising its discretion."); *see also Stewart Title Guar. Co. v. Arlene Raijman, P.A.*, No. 09-22263-CIV-PAS, 2010 WL 11506389, at *4 (S.D. Fla. June 30, 2010) (dismissing good faith and fair dealing claim and noting that "breach of the implied covenant of good faith and fair dealing cannot be based on general allegations of 'bad faith'"); *Merrill Lynch Bus. Fin. Servs., Inc. v. Performance Mach. Sys. U.S.A., Inc.*, No. 04-60861-CIV-JEM, 2005 WL 975773, at *10 (S.D. Fla. Mar. 4, 2005) (dismissal warranted where plaintiffs had merely "incanted the conclusory platitudes of a purported breach of the implied covenant of good faith and fair dealing"). Here, Plaintiffs' allegations confirm that Capital One *exceeded* the requirements of the Rules by providing more notice and time to transition than the Rules required. That Plaintiffs waited nearly four years to file this suit—and are unable to specify any financial harm suffered as a result of the closures beyond general inconvenience—directly undermines Plaintiffs' conclusory assertions that the closures were "unfair" and undertaken in bad faith.

## <u>CONCLUSION</u>

For the foregoing reasons, Capital One respectfully requests that the Court dismiss the First Amended Complaint in its entirety with prejudice.

Dated: July 11, 2025                    Respectfully submitted,

                                        */s/ Gerald E. Greenberg*
                                        GERALD E. GREENBERG
                                        Florida Bar No. 440094
                                        ggreenberg@gsgpa.com
                                        ADAM M. SCHACHTER
                                        Florida Bar No. 647101
                                        aschachter@gsgpa.com
                                        SHANE GRANNUM
                                        Florida Bar No. 1055050
                                        sgrannum@gsgpa.com
                                        GELBER SCHACHTER & GREENBERG, P.A.
                                        One Southeast Third Avenue, Suite 2600
                                        Miami, FL 33131
                                        Telephone: (305) 728-0950
                                        E-service: efilings@gsgpa.com


                                        HELEN V. CANTWELL*
                                        hcantwell@debevoise.com
                                        SUSAN REAGAN GITTES*
                                        srgittes@debevoise.com
                                        ERICH O. GROSZ*
                                        eogrosz@debevoise.com
                                        DEBEVOISE & PLIMPTON LLP
                                        66 Hudson Boulevard
                                        New York, NY 10001
                                        Telephone: (212) 909-6000

                                        *Admitted *pro hac vice*

                                        *Counsel for Defendant Capital One, N.A.*