**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

THE DONALD J. TRUMP REVOCABLE          Case No. 1:25-cv-21596-RKA
TRUST, *et. al.*,

       Plaintiffs,

vs.

CAPITAL ONE, N.A., a Virginia
Corporation,

       Defendant.
_____/

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Plaintiffs The Donald J. Trump Revocable Trust, DJT Holdings, LLC, DJT Holdings Managing Member, LLC, DTTM Operations, LLC, and Eric Trump (collectively, "Plaintiffs"), by and through undersigned counsel, hereby file this Memorandum of Law in Opposition ("Response") to the Motion to Dismiss the First Amended Complaint ("Motion to Dismiss") [D.E. 37] filed by Defendant, Capital One, N.A. ("Capital One" or "Defendant"). In support thereof, Plaintiffs state as follows:

**ARGUMENT**

**I.**    **Legal Standard**

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.*, at 545. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Additionally, "Rule 8(d) of the Federal Rules of Civil Procedure expressly permits the pleading of both alternative and inconsistent claims." *See United Techs. Corp. v. Mazer*, 556 F.3d

1260, 1273-74 & n. 14 (11th Cir. 2009); *see also* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.") *see also Diaz-Martinez v. Miami-Dade County,* 2009 WL 2970468, *15, 19 (stating plaintiff "has the right to assert multiple and alternative theories of liability and have each considered on its own merits").

When a complaint is challenged under Fed. R. Civ. P. 12(b)(6), "a court must view the complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." *Am. United Life Ins. Co. v. Martinez,* 480 F.3d 1043, 1057 (11th Cir. 2007) (cited only to explain applicable standard). "Accordingly, a well pleaded complaint will survive a motion to dismiss even if appears that recovery is remote and unlikely." *Deuel v. Santander Consumer USA, Inc.,* 700 F. Supp. 2d 1306, 1309 (S.D. Fla. 2010) (internal quotations omitted) (quoting *Twombly,* 550 U.S. at 556). Indeed, a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Cole-Parmer Instrument Co. v. Prof'l Labs., Inc.,* 568 F. Supp. 3d 1307, 1313 (S.D. Fla. 2021) (internal quotations and citation omitted).

## II.     Plaintiffs state a claim under Count I.

The Federal Declaratory Judgment Act ("DJA") states in relevant part:

> In a case of actual controversy within its jurisdiction, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C.§ 2201(a).

"The purpose of the Declaratory Judgment Act, which empowers federal courts to provide declaratory judgment as a remedy, is therefore to give courts more flexibility in resolving disputes free from traditional restrictions that were at times inefficient and subject to abuse." *Sonic Momentum B, LP v. Motorcars of Distinction, Inc.,* 2011 WL 4738190, * 2 (S.D. Fla. Oct. 7, 2011). "Accordingly, declaratory judgments have been used to avoid unnecessary accrual of damages, to allow would-be defendants to settle potential liabilities without waiting for a plaintiff to decide to commence an action,  . . . and to avoid the inefficiencies and burdens of a multiplicity of simultaneous actions." *Id.* (internal citations omitted).

In keeping with its purposes of increasing flexibility, the DJA gives courts "'exceptionally broad discretion in deciding whether to issue a declaratory judgment.'" *Restless Media GmbH v. Johnson,* 704 F. Supp. 3d 1288, 1300 (S.D. Fla. Nov. 23, 2023). "The [Declaratory Judgment] Act 'is to be liberally construed to achieve its wholesome and salutary purpose.'" *de Cortes v. Brickell*

*Investment Realty, LLC,* 546 F. Supp. 3d 1332, 1344 (S.D. Fla. July 1, 2021). "The Declaratory Judgment Act allow[s] relief to be given by way of recognizing the plaintiff's right even though no immediate enforcement of it was asked." *Skelly Oil Co. v. Phillips Oil Co.,* 339 U.S. 667, 672 (1950). "It has long been well-accepted that the 'test for sufficiency of a complaint for declaratory relief is not whether the plaintiff will succeed in obtaining the decree he seeks favoring his position, but whether he is entitled to a declaration of rights at all.'" *Hartford Fire Ins. Co. v. Weathertrol Maintenance Corp.,* 2017 WL 5643298, * 3 (S.D. Fla. Feb. 21, 2017) (citation omitted) (denying motion to dismiss). "In other words, '[t]he possibility that the court will rule adversely to the plaintiff on the merits does not preclude the right to a declaratory decree.'" *Id.* (citation omitted).

"[T]he only relevant inquiry on a motion to dismiss a declaratory-judgment action is whether or not the plaintiff is entitled to a declaration of rights." *Singhal v. Unison Agreement Corp.,* 2023 WL 2734230, * 4 (S.D. Fla. Mar. 31, 2023). "[A] claim for declaratory judgment should be permitted 'to proceed where declaratory relief would (1) serve a useful purpose in clarifying and settling the legal relations in issue, and (2) terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding.'" *Clark v. Rockhill Ins. Co.,* 2018 WL 4926487, *4 (M.D. Fla. Sept. 21, 2018).

In asking the Court to dismiss Plaintiffs' declaratory judgment claim, Capital One invites the Court to ignore its exceptionally broad and flexible discretion in resolving these types of disputes and adopt an unduly narrow view of the facts alleged without drawing any reasonable inferences in Plaintiffs' favor. As further demonstrated below, Capital One's analysis is incorrect, incomplete, and unsupported by the cases it cites.

***First***, Capital One argues that Plaintiffs' claim is an inappropriate request for an advisory opinion. *See* D.E. at p. 5. Advisory opinions are those that "do not 'affect the rights of litigants in the case before' us or that merely opine on 'what the law would be upon a hypothetical state of facts." *Gagliardi v. TJCV Land Tr,* 889 F.3d 728, 733 (11th Cir. 2018). This is certainly not the case here as Capital One misconstrues the relief Plaintiffs seek.

As the First Amended Complaint makes clear, unlike the cases Capital One relies on in its Motion,[1] Plaintiffs are not seeking a declaration based upon a ***hypothetical*** set of facts. Rather,

---

[1] *See Garden-Aire Vill. S. Condo. Ass'n Inc. v. QBE Ins. Corp.,* 774 F. Supp. 2d 1224, 1227 (S.D. Fla. 2011) (seeking declaration that glass windows and sliding glass doors are covered under insurance policy even though insurer had never taken a position or made a determination as to the

Plaintiffs are seeking a declaration regarding a concrete controversy between Plaintiffs and Capital One concerning the validity of the termination provision set forth in Capital One's Rules Governing Deposit Accounts ("Account Rules"). *See* D.E. 32. Specifically, as described in the First Amended Complaint, the Account Rules afford Capital One the power to terminate any account maintained at its institution for illegal reasons. *See id.* at ¶¶ 113, 114, 167. Given Capital One's inherent constitutional responsibility to make its services available without discriminating against individuals or businesses, Plaintiffs are compelled to seek a determination as to whether this termination provision is illegal – and, thus, enforceable – after Capital One arbitrarily and capriciously terminated Plaintiffs' Accounts and effectively ceased and foreclosed all business with Plaintiffs based on political discrimination. *See, e.g., Persuad v. Ododal,* 2025 WL 373150, * 3 (S.D. Fla. Jan. 17, 2025) ("[I]t is well-established that 'no court will lend its assistance in any way towards carrying out the terms of an illegal contract.'") (quoting *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 77 (1982)). Plaintiffs, who have been burdened by this illegal clause, deserve to have the uncertainty concerning the Account Rules and their ability to transact business with Capital One resolved. These are not hypothetical facts. They are *actual* facts based on *actual* positions taken by Plaintiffs and Capital One, which clearly demonstrate there is a substantial controversy between Plaintiffs and Capital One concerning the validity of the termination provision set forth in the Account Rules. Further, the fact that Capital One's arbitrary termination of Plaintiffs' Accounts based on political discrimination has foreclosed Plaintiffs' ability to transact any business with Capital One, creates a *reasonable inference* of a continuing controversy and a likelihood that Plaintiffs will suffer injury in the future.

Despite these well-pled allegations, Capital One, nonetheless, attempts to argue that Plaintiffs' declaratory judgment claim does not have "the potential to prevent damages," as required to state a claim (*see* D.E. 37 at p. 5), and relies on *Bacardi USA, Inc. v. Young's Mkt. Co.,* 273 F. Supp. 3d 1120 (S.D. Fla. 2016) and *Malowney v. Fed. Collection Deposit Grp.,* 193 F.3d 1342 (11th Cir. 1999), to support this proposition. Both cases are distinguishable.

---

glass windows and sliding glass doors); *Goeseke v. Arch Specialty Ins. Co.,* No. 20-CV-24878-DLG, 2021 WL 2459570, at *2 (S.D. Fla. 10, 2021) (seeking declaration that are factual in nature as to insurance company's relationship with a mitigation company, including whether mitigation company acted as an agent for the insurance company and whether insurance company breached its fiduciary duty to homeowners); *Bacardi USA, Inc. v. Young's Mkt. Co.,* 273 F. Supp. 3 1120, 1129 (S.D. Fla. 2016).

In *Bacardi,* the alcohol supplier (*i.e.,* Bacardi) brought what the Court described as a "precautionary" lawsuit seeking declarations from the Court *confirming* that it had the right to terminate its agreement with the distributor and that its actions did not violate any antitrust laws in the event that its actions would be challenged by the distributor, after it had terminated the agreement. *Bacardi,* 273 F. Supp. 3d at 1130. In dismissing Bacardi's claim, the Court specifically took note of Bacardi's dismissal of twenty-three of its twenty-nine federal lawsuits for declaratory relief against terminated distributors, and stated that "[w]hile [Bacardi's] resort to mass preemptive litigation might have been a clever business strategy, the Court can and will decline [Bacardi's] invitation to use the Declaratory Judgment Act . . . to approve past decisions over which there is no apparent dispute." *Id.* at 1133. Here, not only is Capital One not seeking a "preemptive" declaration condoning its actions, but as Plaintiffs' First Amended Complaint makes clear, there is a dispute as to Capital One's actions.

In *Malowney,* the plaintiffs brought an action challenging the constitutionality of the notice provisions in Florida's post-judgment garnishment statute from a single incident in which a judgment creditor caused plaintiffs' bank account containing exempt funds to be frozen pursuant to a writ of garnishment. *Malowney,* 193 F.3d at 1345. In affirming dismissal of plaintiffs' claim, the Court found that there was no basis to infer, and plaintiffs had not alleged, that the judgment creditor would wrongfully attempt to garnish their funds again. *See id.* Here, Plaintiffs are not challenging the constitutionality of any statute, but rather, seek a determination as to the validity of the termination provision that governed their accounts at Capital One. As Plaintiffs have alleged, "there is a live controversy between the parties as to whether Plaintiffs' Accounts were improperly terminated and/or whether Plaintiffs' Accounts should be reinstated by Capital One." *See* D.E. at ¶¶ 114, 115.

**Second**, Capital One argues that Plaintiffs' declaratory judgment claim is duplicative of their "contract-based claim" and fails to allege any ambiguity. In support of this argument, Capital One contends that Plaintiffs are merely seeking "to adjudicate the same contract-based arguments that form the basis of their good faith and fair dealing claim, relying on events that occurred more than four years ago." *See* D.E. 37 at p. 6. Capital One's analysis is incorrect and unsupported.

As an initial matter, Plaintiffs have more than plausibly alleged an ambiguity. Indeed, at the core of Plaintiffs' declaratory judgment claim is the interpretation of the termination provision of the Account Rules, which allows Capital One to close accounts in its "sole discretion." *See* D.E.

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

32 at ¶ 113 ("Due to the irreconcilable differences between Plaintiffs and Capital One, Plaintiffs are in doubt as to their legal rights, status, powers, privileges, and/or immunities with respect to Plaintiffs' Accounts and whether Capital One's [Account Rules] allow termination of an existing banking relationship based on political discrimination.").[2]

Further, courts in the Eleventh Circuit have *repeatedly* held that a declaratory judgment claim may properly coexist alongside a breach of contract claim because: (1) Fed. R. Civ. P. 8(d)(3) allows a party to "plead alternate theories of recovery including declaratory relief even if a remedy at law is pled in another count;" and (2) Fed. R. Civ. P. 57 states that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." *See Graner v. Federal Insurance Company,* 2024 WL 5159798, * 2 (S.D. Fla. Aug. 20, 2024); *Joyner v. National Specialty Ins. Co.,* 2023 WL 9034130, *3 (S.D. Fla. Feb. 13, 2023).

Capital One, nonetheless, attempts to avail itself of a few cases where courts have dismissed a declaratory judgment claim on the basis that it is duplicative of an ***existing*** breach of contract claim, which are clearly distinguishable not only because Plaintiffs have not even asserted a breach of contract claim here.[3] In any event, the fact that Plaintiffs arguably could have asserted a breach of contract claim still does not prevent them from seeking a declaratory judgment claim to determine the validity of the termination provision in the Account Rules. *See Johnson v. Geico Gen. Ins. Co.,* 2008 WL 4793616, * 3 (S.D. Fla. Nov. 3, 2008) ("the fact that Plaintiff could have simply brought an action for breach of contract does not prevent him from also seeking a declaratory judgment to establish coverage"). In fact, some of these cases even note that "[d]eclaratory judgment claims *may properly coexist* with breach of contract claims when they provide the plaintiff a form of relief unavailable under the breach of contract claim." *See, e.g., Garcia,* 2018 WL 3432702 at * 2 (emphasis added); *Raymond H. Nahmad DDS PA,* 499 F. Supp.

---

[2] As one of the cases Capital One relies on makes clear, "a legal dispute over the correct ***interpretation*** of a contract," as is the case here, "is an appropriate subject for declaratory relief." *Cantonis Co. v. Certain Interested Underwriters at Lloyds, London,* 2019 WL 3429962, * 3 (S.D. Fla. May 9, 2019) (emphasis added).

[3] *See Garcia v. Scottsdale Ins. Co.,* 2018 WL 3432702, *3 (S.D. Fla. July 16, 2018) (declaratory judgment claim based on insured's "failure and refusal to properly adjust the loss"); *Raymond H. Nahmad DDS PA v. Hartford Cas. Ins. Co.,* 499 F. Supp. 3d 1178, 1191 (S.D. Fla. 2020); *Saltponds Homeowners Ass'n, Inc. v. Rockhill Ins. Co.,* 2021 WL 3284841, *2 (S.D. Fla. July 29, 2021); *Cantonis Co. v. Certain Interested Underwriters at Lloyds, London,* 2019 WL 3429962, *3-4 (S.D. Fla. May 9, 2019).

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

3d at 1191 (same).

Moreover, Plaintiffs' declaratory judgment claim does not seek relief that is duplicative of its breach of implied covenant of good faith and fair dealing claim. As set forth in their First Amended Complaint, Plaintiffs seek a declaration concerning the validity of the termination provision set forth in Account Rules, whereas Plaintiffs' breach of implied covenant of good faith and fair dealing – which is pled in the alternative[4] – seeks damages as a result of Plaintiffs' failure to act in a commercially reasonable manner when it terminated Plaintiffs' Accounts pursuant to the termination provision.

*Lastly*, Capital One argues that Plaintiffs' declaratory judgment claim fails to allege any ongoing or future violation of law that could entitle them to a declaratory judgment. But Capital One's argument ignores the wide latitude and discretion that federal courts have in determining whether to entertain a request for declaratory relief. Indeed, in *Sonic Momentum B, LP v. Motorcars of Distinction,* this Court, in denying defendant's motion to dismiss raising similar arguments, specifically stated:

> Indeed, United is correct in pointing out that Plaintiff has alleged that a great many violations have already occurred but has not identified those it expects to ripen in the absence of the Court's intervention. . . . However, in addition to the goal of preventing unaccrued damages, declaratory judgments can also be used to simplify litigation and avoid multiplicity. . . . Therefore, the Court finds that it is within its discretion to permit Plaintiff to bring this action as a claim for declaratory judgment and that the purpose of simplifying the litigation arising out of the underlying transactions is served by doing so.

2011 WL 4738190, * 4 (S.D. Fla. Oct. 7, 2011).

Here, Plaintiffs' declaratory judgment will simplify this litigation. Plaintiffs have presented an actual controversy and dispute over the validity and legality of the termination provision in the Account Rules, and the parties' rights and obligations pursuant to that provision. Resolution of the legality of the termination provision will simplify Plaintiffs' other claims which arise out of Capital One's termination of Plaintiffs' Accounts pursuant to the discretion afforded it under the

---

[4] As previously set forth, "Rule 8(d) of the Federal Rules of Civil Procedure expressly permits the pleading of both alternative and inconsistent claims." *See United Techs. Corp.,* 556 F.3d at 1273-74 & n. 14; *see also Diaz-Martinez,* 2009 WL 2970468, *15, 19 (stating plaintiff "has the right to assert multiple and alternative theories of liability and *have each considered on its own merits*") (emphasis added).

termination provision. *See, e.g., Darrin Cupo, D.M.D., P.A. v. Orthodontic Centers of Am., Inc.*, 2008 WL 11333240, at *8 (S.D. Fla. Apr. 17, 2008) ("resolution of the legality issue raised by the declaratory judgment claim is necessary before the Court may resolve Plaintiffs' post-petition breach of contract claim").

## III.   The North Carolina Plaintiffs state a claim under Count II.

"[E]ngaging in banking and opening a savings account constitutes a 'business activity,' the alleged conduct 'affect[s] commerce' as required to trigger the statute." *In re Capital One 360 Sav. Account Interest Rate Litig.*, 779 F. Supp. 3d 666, 734 (E.D. Va. 2024) (denying motion to dismiss claim under NCUDTPA and NJCFA). "A claim under section 75–1.1 of the North Carolina General Statutes requires proof of three elements: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, which (3) proximately caused actual injury to the claimant." *Boyce & Isley, PLLC v. Cooper*, 568 S.E.2d 893, 901 (N.C. Ct. App. 2002). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397 (1981) (interpreting the NCUDTPA).

### a.   The North Carolina Plaintiffs have an operational presence in the forum state.

"The majority of federal courts within North Carolina hold that a business must have *both* suffered an injury in North Carolina *and* have an operational presence within the state in order to have a claim under N.C. Gen. Stat. § 75-1.1." *Bendfeldt v. Window World, Inc.*, 2018 WL 11318516, at *1 (W.D.N.C. June 22, 2018). "[S]ection 75–1.1 applies only if the plaintiff alleges an in-state, injurious effect on his business operations in North Carolina." *The In Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494, 501–02 (M.D.N.C. 1987).

TNGC Charlotte, LLC, T International Realty, LLC, and DTTM Operations, LLC (together, the "North Carolina Plaintiffs") are the three plaintiffs that are seeking redress under the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"). As explained below, each of the North Carolina Plaintiffs maintain an "operational presence" in North Carolina.

TNGC Charlotte, LLC owns and operates Trump National Golf Club, which is exclusively in Charlotte, North Carolina ("Trump Charlotte") *See* D.E. 30-1, ¶¶ 54-55. TNGC Charlotte, LLC is the operator of Trump Charlotte and used a bank account with Capital One to sell to its members and the public its products and services, which include, but are not limited to access to an eighteen-hole golf course, world-class cuisine, fitness and tennis facilities, and other sought-after amenities.

*See* D.E. 30-1, ¶¶ 56-57. When the Termination Letter was received and ultimately took effect, TNGC Charlotte was actively selling its products and services in North Carolina. *See id.*, ¶ 57.

T International Realty, LLC owns and operates Trump International Realty, which has an operational presence and track record in North Carolina. *See id.*, ¶¶ 61-62. Indeed, since 2021, T International Realty, LLC had an office in North Carolina located at 120 Trump Square, Mooresville, North Carolina 28117.[5] And when Capital One's Termination Letter was received and became effective, T International Realty, LLC had $22,608,000.00 of real properties under contract in three different cities in North Carolina. *See* D.E. 30-1, ¶¶ 63-65.

DTTM Operations, LLC also maintains an operational presence in North Carolina. From the beginning of 2021 until present, DTTM Operations, LLC has distributed and sold countless of its products, which bore trademarks associated with President Trump and the Trump Organization, for sale in North Carolina at Trump Charlotte. *See* D.E. 30-1, ¶¶ 70-73.

**b. The North Carolina Plaintiffs sufficiently allege an economic injury**.

Capital One's political discrimination barred TNGC Charlotte, LLC from being able to sell its products and services at Trump Charlotte. *See* D.E. 30-1, ¶¶ 56-60. Among other harms, this caused TNGC Charlotte, LLC to suffer lost profits. *See id.*, ¶ 60; *see also* Ad Damnum clause to Count II (requesting an award of "all available damages under North Carolina law"). Capital One's political discrimination caused T International Realty, LLC to suffer lost profits because it lost the ability to deposit any commissions it would have received from closing any of $22,608,000.00 in real properties that were under contract at the time that the Termination Letter was received and ultimately took effect. *See* D.E. 30-1, ¶¶ 64-69; *see supra* Ad Damnum clause to Count II. Capital One's political discrimination also caused DTTM Operations, LLC to suffer lost profits because it was barred from selling its products that bore registered trademarks linked to President Trump and the Trump Organization at Trump Charlotte. *See* D.E. 30-1, ¶¶ 74-76; *see supra* Ad Damnum clause to Count II.

Despite these well-pleaded allegations, Capital One relies on *Window World of Baton Rouge, LLC v. Window World, Inc.,* No. 15 CVS 1, 2024 WL 5053172, at *45 (N.C. Super. Nov. 26, 2024) for the proposition that "injuries are deemed to have occurred 'where the plaintiff feels

---

[5] "Trump International Realty" TRUMP CHARLOTTE (January 12, 2021) (https://web.archive.org/web/20210112223257/https://www.trumpnationalcharlotte.com/trump-international-realty).

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

the pain,' which usually 'will be in the state of the *plaintiff's* principal place of business.'" However, that was an argument raised by a party and is not a holding of the court. *See id.*, at *45. Although *Window World* held that "Plaintiffs can point to neither an in-state injury nor any in-state business operations," *Window World* provided no analysis why the plaintiffs allegations failed to show an in-state injury. *See id.* For purposes of an in-state injury under the NCUDTPA, however, all that the North Carolina Plaintiffs are required to allege is an injury to its in-state business. *See supra The In Porters, S.A.*, 663 F. Supp. at 501–02. As explained above, the North Carolina Plaintiffs each allege an economic injury to their business operations in North Carolina. *See* D.E. 30-1, ¶¶ 56-60 (TNGC Charlotte, LLC), ¶¶ 64-69 (T International Realty, LLC), and ¶¶ 74-76 (DTTM Operations, LLC).

Capital One also relies on *Dixie Yarns Dixie Yarns, Inc. v. Plantation Knits, Inc.,* No. 3:93CV301-P, 1994 WL 910955 (W.D.N.C. July 12, 1994) (*see* D.E. 37, pp. 11-12), which explained that the injury occurred where the harmful effect was felt. *See Dixie Yarns*, 1994 WL 910955, at *3. *Dixie Yarns* also explains that the NCUDTPA is connected to North Carolina's long-arm statute. *See id.* Even if the Court disagrees that each of the North Carolina Plaintiffs pled injuries that impacted their in-state business operations, *Dixie Yarns* is distinguishable because the counterclaim plaintiff lacked business operations in North Carolina. *Id.*, at *3. Here, TNGC Charlotte, LLC is based in Mooresville, North Carolina, T International Realty, LLC maintains an office at 120 Trump Square, Mooresville, North Carolina 28117, and DTTM Operations, LLC maintains an operational presence in North Carolina. *See* D.E. 30-1, ¶¶ 10; 54-76.

### c. Capital One's political discrimination was unlawful under the NCUDTPA.

Plaintiffs pled in the First Amended Complaint that before receiving the Termination Letter, their accounts were in good standing. *See* D.E. 30-1, ¶ 50, 52. Plaintiffs also pled that "upon conclusion of their due diligence, Capital One terminated Plaintiffs' Accounts as a result of political discrimination against President Trump, the Trump Organization, and the Trump family." D.E. 30-1, ¶ 53. Plaintiffs further pled that Capital One's Rules Governing Deposit Accounts do not allow termination for an illegal purpose and that termination of Plaintiffs' Accounts for political discrimination is an illegal purpose. *See* D.E. 30-1, ¶¶ 98-101.

These well-plead allegations show that Capital One's political discrimination against Plaintiffs qualifies as unfair under the NCUDTPA. *See supra Marshall*, 302 N.C. 539, 548, 276 S.E.2d 397; *see also Citibank USA, Nat'l Ass'n v. Ragsdale*, No. 4:06-CV-00071-FL, 2009 WL

10705209, at *5 (E.D.N.C. Jan. 30, 2009) ("Either unfairness or deception can bring conduct within the purview of the statute; an act need not be both unfair and deceptive.").

Despite this, Capital One contends that the First Amended Complaint lacks any egregious or aggravating circumstances that explain what political discrimination Capital One engaged in to cause injury to Plaintiffs. *See* D.E. 37, p. 13. For this proposition, Capital One relies on *Waterford I v. Nationwide Prop. & Cas. Ins. Co.,* 669 F. Supp. 3d 531 (E.D.N.C. 2023) and *Alqolaq v. State Farm Fire & Cas. Co.*, 2011 WL 1831570 (W.D.N.C. Apr. 7, 2011).

*Waterford I* is distinguishable because it is an insurance policy dispute involving an insured's dissatisfaction with the insurer's decision to order a roof replacement. *See Waterford I,* 669 F. Supp. 3d at 537. Likewise, *Alqolaq* is distinguishable because it concerned a policyholder's dissatisfaction with the investigation conducted by their homeowner's insurance company into theft of construction materials from a policyholder's home. *See Alqolaq*, 2011 WL 1831570, at *3.

In stark contrast to *Waterford I* and *Alqolaq*, Plaintiffs have pled that Capital One politically discriminated against them by terminating their Accounts. *See* D.E. 30-1, ¶¶ 46-53, 98-101. Moreover, because Capital One's conduct is so egregious, it stands to reason that Capital One would impede access to the documents and communications that explain with particularity the manner and substance of the political discrimination it employed against Plaintiffs. And that is exactly what Capital One has done in this case. On March 31, 2025, before this case was removed to this Court, Plaintiffs served their First Request for Production and First Set of Interrogatories on Capital One. *See* D.E. 34. Then, on April 30, 2025, after removal, Plaintiffs re-propounded those same discovery requests. *See id*. Rather than responding, Capital One sought a stay of discovery, which it ultimately obtained. *See* D.E. 16; *see also* D.E. 36; *see also* D.E. 40. So, on the one hand, Capital One contends that Plaintiffs have not pled enough facts. *See* D.E. 37, p. 13. On the other hand, Capital One refuses to provide any information that is in its possession, custody, and control that would presumably cure any alleged pleading defect. *See* D.E. 16; *see also* D.E. 36; *see also* D.E. 40. Capital One should not be able to have it both ways.

But even without this information, Plaintiffs are not subject to a heightened pleading standard to state a claim under the NCUDTPA. Plaintiffs have not alleged any claims against Capital One on the basis that they were misled, which would have triggered an additional pleading requirement. *See Sunset Beach Dev., LLC v. AMEC, Inc.*, 196 N.C.App. 202, 675 S.E.2d 46, 53 (2009) (explaining that when misrepresentation is alleged, the plaintiff must plead "actual

reliance" on that misrepresentation). Instead, all that the North Carolina Plaintiffs are obligated to plead are that Capital One employed an unfair practice, the implementation of that practice affected commerce in North Carolina, and it caused an actual injury. *See supra Cooper*, 568 S.E.2d 893, 901. Each of the North Carolina Plaintiffs have met that standard. *See supra* § II(a)-(b).

Despite this, Capital One persists that Plaintiffs' allegations are conclusory. *See* D.E. 37, p. 13. But Capital One's allegation that its actions were justified are equally conclusory. Even if Capital One gave Plaintiffs extra time to find an alternative banking partner, advance notice and otherwise claiming to act in good faith "is not a defense to allegations under [the NCUDTPA]." *Ken-Mar Fin. v. Harvey*, 368 S.E.2d 646, 648 (N.C. Ct. App. 1988).

Ultimately, the determination of whether a practice qualifies as unfair or deceptive under the North Carolina Act is a fact-intensive inquiry that must be decided on a case-by-case basis by the trier of fact, which would be premature to do at this stage. *See supra Marshall*, 302 N.C. 539, 548, 276 S.E.2d 397, 403. "Ordinarily, once the jury has determined the facts of a case, the court, based on the jury's findings, then determines, as a matter of law, whether the defendant engaged in unfair or deceptive practices in or affecting commerce." *Gray v. N. Carolina Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000); *see also supra Ragsdale*, 2009 WL 10705209, at *5.

### d.   Capital One's political discrimination was a bad faith exercise of its discretion.

Capital One boldly contends that engaging in political discrimination against its clients does "not rise to the level of unfair conduct." D.E. 37, p. 16. In support, Capital One relies on *Thortex, Inc. v. Standard Dyes, Inc.,* 630 S.E.2d 257 (N.C. Ct. App. 2006) and *Dalton v. Camp*, 353 N.C. 647, 658, 548 S.E.2d 704 (2001), claiming that its political discrimination is "'nothing more than the normal ambit' of business" (*Thortex*) and that the political discrimination does not qualify as "egregious or aggravating circumstances" (*Dalton*), which collectively preclude application of the NCUDTPA. D.E. 37, p. 16. *Thortex* is distinguishable because it was a business-to-business dispute relating to the manufacturing and sale of fabric dye that did not allege any egregious or aggravating circumstances. *See Thortex*, 630 S.E.2d 257. *Dalton* is also distinguishable because it concerned an employer-employee dispute. *See Dalton*, 353 N.C. 647, 658, 548 S.E.2d 704, 711–12. Neither *Thortex* nor *Dalton* are related to this case.

It is difficult to think of a more egregious commercial act than arbitrarily terminating a business relationship based on that individual or entity's political beliefs. This is especially true

when, at the time Plaintiffs' Accounts were terminated, there was a significant imbalance in power favoring Capital One. Endorsing such a practice would encourage Capital One to engage in viewpoint discrimination at its sole discretion - leaving its clients without recourse.

## IV.   The New Jersey Plaintiffs state a claim under Count III.

There are three elements to state a claim "under the [NJCFA] … : (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 436 (D.N.J. 2012). "Unlawful conduct is defined as 'any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission.' " *Capital Health Sys., Inc. v. Symmetry Workforce Sols., LLC*, No. 24-CV-00202-ESK-MJS, 2025 WL 1554256, at *3 (D.N.J. June 2, 2025) (quoting N.J.S.A. 56:8-2 and cited only to explain applicable standard).

Plaintiffs must allege "they suffered an 'ascertainable loss of moneys or property, real or personal, as a result of … any ... practice declared unlawful under' the CFA. … A plaintiff can establish an ascertainable loss by demonstrating either an out-of-pocket loss or a deprivation of the benefit of one's bargain." *Robey v. SPARC Group LLC*, 256 N.J. 541, 548, 311 A.3d 463, 467 (2024) (cited only to explain the applicable standard); *see also Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248, 872 A.2d 783, 793 (2005) ("[A]n 'ascertainable' loss is that it is quantifiable or measurable."). The New Jersey Consumer Fraud Act ("NJCFA") "specifies the conduct that will amount to an unlawful practice in the disjunctive ... [and p]roof of any one of those acts or omissions ... will be sufficient to establish unlawful conduct under the Act." *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 18, 647 A.2d 454, 462 (1994).

### a.   The New Jersey Plaintiffs have sufficient contacts with the forum state.

Although the NCUDTPA does require that a party maintain an "operational presence" in North Carolina to state a claim, the NJCFA does not contain this same pleading requirement. *See Scibek v. Longette*, 339 N.J. Super. 72, 78, 770 A.2d 1242, 1246 (App. Div. 2001) ("The Act is to be applied broadly [in the consumer's favor] in light of the statute's remedial purpose. … 'The legislative concern was the victimized consumer, not the occasionally victimized seller.' ").

Despite this, Capital One attempts to lump the allegation that Mobile Payroll Construction, LLC, Eric Trump Wine Manufacturing, LLC, and DTTM Operations, LLC (together, the "New

Jersey Plaintiffs") failed to show any causal nexus with New Jersey as if the alleged failure to do so warrants dismissal on those grounds alone. *See* D.E. 37, pp. 9-10. In support, Capital One relies on *Cheslow v. Cont'l Cas. Co.,* 2022 WL 1641888 (N.D. Ill. May 24, 2022) and *Maniscalco v. Brother Intern. (USA) Corp.,* 709 F.3d 202 (3d Cir. 2013).

*Cheslow* concerned a misrepresentation and reliance claim under the NJCFA made by a California resident with no contacts with New Jersey. *See* 2022 WL 1641888, at *5. Conversely, the New Jersey Plaintiffs do not allege any misrepresentation or fraud claims under the NJCFA, and each of them have actual contacts with New Jersey because they sell and have sold products throughout New Jersey (Eric Trump Wine Manufacturing, LLC and DTTM Operations, LLC; *see* D.E. 30-1, ¶¶ 83-96) and actively manage and pay operational expenses for several real estate projects in New Jersey (Mobile Payroll Construction, LLC; *see* D.E. 30-1, ¶¶ 77-82).

*Maniscalco* concerned a South Carolina resident who bought a defective printer from an Office Depot store in South Carolina and filed a putative class action claim under the NJCFA alleging reliance on the manufacturer's representations regarding the subject printer. *See Maniscalco,* 709 F.3d at 205. Diametrically opposite to *Maniscalco*, the New Jersey Plaintiffs do not allege that they have suffered any harm due to their reliance on a misrepresentation made by Capital One. *See* D.E. 30-1, ¶¶ 77-96, 143-164.); *see also Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.,* 192 N.J. 372, 391, 929 A.2d 1076 (2007) ("Our CFA does not require proof that a consumer has actually relied on a prohibited act in order to recover.").

### b.  The New Jersey Plaintiffs sufficiently allege an ascertainable loss.

Capital One also contends that the Rules give it carte blanche to exercise its discretion thereunder however it sees fit. *See* D.E. 37, p. 15. However, a party cannot exercise "contractual discretion in bad faith, even when such discretion is vested solely in that party." *In re Capital One 360 Sav. Account Interest Rate Litig.,* 779 F. Supp. 3d at 702; *see also Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 940 (4th Cir. 1999) (" 'Bad faith includes the 'evasion of the spirit of the bargain' and an 'abuse of a power to specify terms.' *Restatement (Second) of Contracts* § 205. § 205 cmt. d."). Terminating banking relationships due to political discrimination is textbook bad faith. *See* D.E. 30-1, ¶¶ 46-53, 98-101, 143-164.

Capital One contends that the New Jersey Plaintiffs allege only that they suffered an "inconvenience," which is insufficient to state a claim under the NJCFA. *See* D.E. 37, p. 11. In support, Capital One relies on *Paradiso v. Bank of Am., N.A.,* No. CV22202042KSHCLW, 2022

WL 17176937 (D.N.J. Nov. 23, 2022), which concluded that "plaintiffs merely parrot the elements by alleging that Bank of America's conduct proximately caused their 'ascertainable loss' (*see* D.E. 37, ¶¶ 27-28), without giving facts about what their loss is or how Bank of America caused it." However, *Paradiso* is starkly different than this case.

Mobile Payroll Construction, LLC pled that Capital One's political discrimination "had a direct impact on its ability to fund payroll to multiple people servicing multiple real estate projects in New Jersey." D.E. 30-1, ¶ 82. Logically, when Mobile Payroll Construction, LLC's bank account was closed, it suffered ascertainable losses because it had to instruct its employees to cease servicing the ongoing New Jersey real estate projects and instead begin attempting to locate alternative banking partners to continue servicing those projects. *See* D.E. 30-1, ¶¶ 81-82. Eric Trump Wine Manufacturing, LLC pled that Capital One's political discrimination prevented it from being able to sell its products throughout New Jersey, which constitute ascertainable losses. *See* D.E. 30-1, ¶¶ 88-89. DTTM Operations, LLC suffered an ascertainable loss because Capital One's political discrimination precluded the sale of DTTM Operations, LLC's products that bore the registered trademarks affiliated with President Trump and the Trump Organization at Trump Bedminster. *See* D.E. 30-1, ¶¶ 94-96. In Count III, each of the New Jersey Plaintiffs pled that they suffered lost profits. *See* D.E. 30-1, Ad Damnum clause in Count III (requesting an award of "all available damages under New Jersey law").

To plead an ascertainable loss under the NJCFA, the loss "need not yet have been experienced as an out-pocket loss to the plaintiff. … We can envision the possibility that an expert may be able to speak to a loss in value of real or personal property due to market conditions, with sufficient precision to withstand a motion for summary judgment." *Thiedemann*, 183 N.J. 234, 248-249, 872 A.2d 783, 793 (cited only to explain applicable standard). Thus, the New Jersey Plaintiffs' injuries are "ascertainable" losses because the damages are quantifiable.

Capital One also relies on *Montich v. Miele USA, Inc.,* 849 F. Supp. 2d 439 (D.N.J. 2012), and *Knox v. Samsung Elecs. Am., Inc.,* No. CIV.A. 08-4308JLL, 2009 WL 1810728 (D.N.J. June 25, 2009) for the proposition that the New Jersey Plaintiffs suffered an injury where their principal place of business is located, which is outside of New Jersey. *See* D.E. 37, p. 11-12.

*Montich* is distinguishable because there were competing claims by the same plaintiff under two different laws for the same conduct that complained of and as a result, the court had to conduct a choice of law analysis. *See id*., *Montich*, 849 F. Supp. 2d 439, 444. Here, the New Jersey

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

Plaintiffs do not allege any claims under the NCUDTPA for any harm that was suffered in New Jersey. *See* D.E. 30-1, ¶¶ 77-96, 143-164. Although DTTM Operations, LLC alleges a claim under the NCUDTPA, it is exclusively for harm that it suffered in North Carolina. *Compare id.*, ¶¶ 90-96; *with id.*, ¶¶ 70-76. As a result, no choice of law analysis is required.

*Knox* is distinguishable for the same reason. There, the defendant alleged that the court must conduct a choice-of-law analysis to determine if the NJCFA applied. *See Knox,* 2009 WL 1810728, at *2. Here, Capital One has not expressly raised any argument in support of its Motion to Dismiss that would invoke a choice-of-law analysis by this Court. *See generally* D.E. 37. By failing to raise this issue, Capital One has waived the choice-of-law argument and agreed that North Carolina law applies to Count II and New Jersey law applies to Count III. *See Goodnight v. Boston Sci. Corp.,* 548 F. Supp. 3d 1325, 1335–36 (S.D. Fla. 2020) ("[I]t's well-settled in this and other circuits that, just as a party may stipulate to the application of a state's legal regime, a party may, through its briefing (or otherwise), waive its choice-of-law arguments implicitly[.]").

Further, Mobile Payroll Construction, LLC, has its principal place of business in Bedminster, New Jersey. *See* D.E. 30-1, ¶ 7. And although Eric Trump Wine Manufacturing, LLC and DTTM Operations, LLC do not have their principal place of business in New Jersey, "'[t]he available legislative history demonstrates that the [NJCFA] was intended to be one of the strongest consumer protection laws in the nation.' While there can be no doubt that the New Jersey legislature desired to protect its own residents, it is equally clear that this state has a powerful incentive to insure that local merchants deal fairly with citizens of other states and countries." *Boyes v. Greenwich Boat Works, Inc.,* 27 F. Supp. 2d 543, 547 (D.N.J. 1998).

### c.   Capital One's political discrimination was unlawful under the NJCFA.

Capital One contends that the New Jersey Plaintiffs' allegations of political discrimination are conclusory and in support, relies on *Gutman v. Liberty Bankers Life Ins. Co*., 2025 WL 615128, at *1 (D.N.J. Feb. 26, 2025) and *Wright v. Ocwen Loan Servicing, LLC,* 2019 WL 4013954 (D.N.J. Aug. 26, 2019) for the argument that the New Jersey Plaintiffs' allegations of political discrimination are conclusory. *See* D.E. 37, pp. 13-14. Both cases are distinguishable.

*Gutman* granted a motion to dismiss a claim under the NJCFA because the complaint at issue consisted of only conclusory allegations that did not describe the alleged loss. *See Gutman*, 2025 WL 615128, at *5. In *Wright*, the plaintiff's claim under the New Jersey Consumer Fraud Act was dismissed because despite alleging that "Deutsche Bank engaged in deceptive and

fraudulent practices … [t]he factual allegations in the Amended Complaint are entirely conclusory and completely bereft of any background details concerning how the supposed fraud was accomplished, who was involved, and when it took place." *Wright*, 2019 WL 4013954, at *6-7.

In stark contrast to *Gutman*, Plaintiffs pled abundant allegations that evidence the unlawful nature of Capital One's political discrimination. *See* D.E. 30-1, ¶¶ 46-53, 98-101. Plaintiffs pled that at the time the Termination Letter was received and took effect, their Accounts were in good standing, they had not previously received any notice of any document, warning, any notice showing that the Accounts were delinquent or victim of suspicious activity or fraud, or any other activity that would warrant abrupt and unjustified termination. *See id.*, ¶¶ 50-52. Plaintiffs further pled that in spite of this, Capital One chose to terminate Plaintiffs' Accounts on the basis of political discrimination against President Trump, his family, and the Trump Organization. *See id.*, ¶ 53. Because Capital One's debanking and termination of Plaintiffs' Accounts was politically motivated, it was unlawful under the NJCFA. *See id.*, ¶¶ 143-164.

And unlike *Wright*, the New Jersey Plaintiffs do not allege any claims against Capital One on the basis of fraud or misrepresentation. *See* D.E. 30-1, ¶¶ 77-96, 143-164. On the contrary, the New Jersey Plaintiffs allege that Capital One's political discrimination was willful, which is enough to state a claim under the NJCFA. *See id.*, ¶ 164; *see also supra Cox,* 647 A.2d at 462.

Next, Capital One relies on *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509 (D.N.J. 2009) to contend that "Plaintiffs' disappointment regarding Capital One's decision to close their accounts" amounts to nothing more than "mere customer dissatisfaction." *See* D.E. 37, p. 14. However, in *Hassler*, the putative lead-class-action plaintiff's NJCFA claim was dismissed because his dissatisfaction with bank's non-chronological processing of transactions was authorized under the agreement between the parties. *See Hassler*, 644 F. Supp. 2d at 515. Unlike *Hasseler*, the New Jersey Plaintiffs have pled that they suffered ascertainable losses due to Capital One's unlawful political discrimination, which goes far beyond mere "customer dissatisfaction." *Compare* D.E. 30-1, ¶¶ 77-96, 143-164; *with Hassler* 644 F. Supp. 2d at 515.

Capital One further alleges that its exercise of its contractual rights under the Rules fail to qualify as an unlawful practice under the NJCFA. *See* D.E. 37, p. 15. In support, Capital One relies on *Urbino v. Ambit Energy Holdings, LLC*, 2015 WL 4510201 (D.N.J. July 24, 2015), which dismissed a NJCFA claim because the fraudulent conduct complained of was authorized by the agreement between the parties. *See id.*, at *4. But here, the New Jersey Plaintiffs are not alleging

that Capital One committed any fraudulent conduct, and the Rules do not expressly authorize Capital One to engage in political discrimination to terminate a banking relationship with its clients. *See* D.E. 30-1, ¶¶ 77-96, 143-164, 167; *see also* D.E. 30-1, Exhibit A.

Capital One also contends that its political discrimination against Plaintiffs constitutes "normal business activities" that does not rise to the level of unfair conduct under the NJCFA. *See* D.E. 37, p. 16. In support, Capital One relies on *Coda v. Constellation Energy Power Choice, LLC,* 409 F. Supp. 3d 296 (D.N.J. 2019). Unlike *Coda*, this case does allege substantial aggravating circumstances because Capital One's political discrimination against the New Jersey Plaintiffs falls "outside the norm of reasonable business practice in that it will victimize the average consumer." *Hughes v. TD Bank, N.A.,* 856 F. Supp. 2d 673, 681 (D.N.J. 2012) (denying motion to dismiss NJCFA claim); *see also* D.E. 30-1, ¶¶ 46-53, 98-101. Indeed, Capital One engaged in the dangerous, arbitrary, and capricious practice of viewpoint discrimination by terminating its banking relationship with Plaintiffs. *See* D.E. 30-1, ¶¶ 46-53, 98-101. Capital One cannot rely on such a justification to dismiss the New Jersey Plaintiffs' claims under Count III. *See Hughes,* 856 F. Supp. 2d at 680–81. Put simply, the Rules do not provide Capital One with carte blanche to terminate banking relationships for illegal purposes. *See supra In re Capital One 360 Sav. Account Interest Rate Litig.,* 779 F. Supp. 3d at 702.

Moreover, like the NCUDTPA, it is well settled that whether a practice qualifies as unfair or deceptive under the NJCFA is a question for the jury. *See Harnish v. Widener Univ. Sch. of Law*, 931 F. Supp. 2d 641, 648 & 654 (D.N.J. 2013) (denying motion to dismiss claims under the NJCFA: "'Often, the determination of whether business conduct 'stand[s] outside the norm of reasonable business practice' presents a jury question.' … At this stage, Plaintiffs have made plausible allegations, the credibility of which may well be determined only by the fact-finder, a jury. It follows then that Defendant's Motion to Dismiss is denied."). And when " 'the legal basis for the claim emanates from a new or evolving legal doctrine,' the judge should consider the motion [to dismiss] with even greater trepidation." *Perkins v. DaimlerChrysler Corp*., 383 N.J. Super. 99, 111, 890 A.2d 997, 1003 (App. Div. 2006) (affirming dismissal on other grounds).

## V.     **Plaintiffs state a claim under Count IV**.

"Under Florida law, the covenant of good faith and fair dealing is implied in every contract, requiring the parties to follow standards of good faith and fair dealing designed to protect the parties' reasonable expectations." *Townhouses of Highland Beach Condominium Ass'n, Inc.,* 504

F. Supp. 2d 1307, 1310 (S.D. Fla. 2007). "The implied covenant of good faith and fair dealing is usually an issue when the question is not resolved by the terms of the contract or when one party may make a discretionary decision without defined standards." *Id.* "[T]he covenant of good faith and fair dealing imposes a duty upon the party invested with discretion to act in a commercially reasonable manner that satisfies the reasonable expectations of the contracting parties." *Martorella v. Deutsche Bank Nat. Trust Co.,* 931 F. Supp. 2d 1218, 1225-26 (S.D. Fla. Mar. 18, 2013). In considering the application of the implied duty of good faith, courts have explained:

> [U]nder an agreement that appears by word or silence to invest one party with a degree of discretion in performance sufficient to deprive another party of a substantial proportion of the agreement's value, the parties' intent to be bound by an enforceable contract raises an implied obligation of good faith to observe reasonable limits in exercising that discretion, consistent with the parties' purpose or purposes in contracting.

*Id.* at 1226 (internal quotations and citation omitted).

Capital One, nonetheless, incredulously attempts to argue that when a contract expressly grants absolute and unlimited discretion concerning a party's decision-making power, a party is powerless to bring a breach of implied covenant of good faith and fair dealing. *See* D.E. 37 at p. 18. Not only does this contravene long-standing black letter law in Florida as set forth above, but the only case Capital One cites for this proposition – *Amica Mut. Ins. Co. v. Morowitz,* 613 F. Supp. 2d 1358 (S.D. Fla. 2009) – has never been cited for this proposition. Moreover, in *Amica,* there were two other reasons for dismissing the breach of implied covenant of good faith and fair dealing claim (for which *Amica* has actually been cited), namely, that the counter-plaintiff had failed to sufficiently allege a breach of an express contractual provision that may form the basis of the claim and that the allegations asserted to support the breach of implied covenant claim are repetitive of the conduct alleged in the breach of contract claim. *See id.* at 1361-62. In fact, recognizing that its argument cannot possibly withstand scrutiny, Capital One then attempts to assert that it exercised its right to "simply" end its relationship with Plaintiffs in order to try to fit the facts of this case into a passing footnote in another case – *Sunshine Gasoline Distributors, Inc. v. Biscayne Enterprises, Inc.,* 139 So. 3d 978 (Fla. 3d DCA 2014) – involving a simply *binary* option to renew a lease that was afforded to ***both*** parties, which the Court recognized was markedly different than the "sole discretion" reposed in just *one* party, as is the case here when Capital One suddenly decided to close *hundreds* of bank accounts that had been maintained at Capital One by

Plaintiffs and their affiliates for decades involving tens of millions of dollars of transactions.

Next, Capital One incredulously argues that Plaintiffs have not specified any provision of the Account Rules that Capital One breached. Plaintiffs, however, wholly ignore the fact that Plaintiffs' claim is based on Capital One's improper termination or closure of Plaintiffs' Accounts under the termination provision of the Account Rules. *See* D.E. 32 at ¶¶ 167-172.

Then, in a desperate attempt to overcome Capital One's glaring breach of the implied covenant of good faith and fair dealing claim, Capital One raises several arguments which should be summarily rejected. *First,* Capital One claims that allowing Plaintiffs to proceed with their claim would "rewrite" the terms of the agreement simply because the Account Rules allow Capital One to terminate accounts in its sole discretion. *Second,* Capital One claims that because "Plaintiffs are knowledgeable business entities and the individual Plaintiff is involved in many sophisticated business ventures," its conduct is somehow "expressly authorized." *Third*, Capital One claims that Plaintiffs have not alleged any facts to suggest that the decision to close Plaintiffs' Accounts was not made in good faith because Capital One "exceeded" the requirements by providing more notice and time to transition than required. None of these reasons provide any justification for Capital One to terminate Plaintiffs' Accounts for political discrimination or any other illegal reason, and no court will enforce any contract that would allow any party to do so.[6] Moreover, whether Capital One acted in good faith is a question of fact to be developed in discovery and resolved at trial, and should not be the subject of a motion to dismiss. *See In re Checking Account Overdraft Litig.,* 694 F. Supp. 2d 1302, 1316 (S.D. Fla. 2010); *see also Nat'l Franchisee Ass'n v. Burger King Corp.,* 2010 WL 3749219, *5 (S.D. Fla. Sept. 20, 2010) (documents are discoverable if they may assist in determining whether Defendant's decision making process was performed in good faith).[7]

For the reasons described above, Capital One's Motion to Dismiss should be denied.

_____

[6] *See Hurd v. Hodge,* 334 U.S. 24, 34-35 (1948) ("The power of the federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of public policy of the United States as manifested in . . . federals statutes. . . .Where the enforcement of private agreements would be violative of that policy, it is the obligation of the courts to refrain from such exertions of judicial power.").

[7] If the Court is inclined to grant Defendant's Motion, Plaintiffs respectfully request leave to amend, which would contain additional facts explaining the declaratory relief sought, Plaintiffs' connections to North Carolina and New Jersey, and detail on Capital One's political discrimination against Plaintiffs. *See Miles v. Carnival Corp,* 767 F. Supp. 3d 1376 (S.D. Fla. 2025).

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

## REQUEST FOR ORAL ARGUMENT

Under Local Rule 7.1(b), Plaintiffs respectfully request an oral argument to adjudicate Defendant's Motion to Dismiss the First Amended Complaint. Oral argument will help explain to the Court Plaintiffs' arguments why Capital One's unlawful political discrimination qualifies as an unlawful practice under the NCUDPTA and NJCFA and why Capital One's bad faith exercise of its discretion under the Rules should not be countenanced.

Dated: August 22, 2025                                      Respectfully submitted,

**BRITO, PLLC**
*Counsel for Plaintiffs*
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Office: 305-614-4071
Fax: 305-440-4385

By: /s/ *Alejandro Brito*
**ALEJANDRO BRITO**
Florida Bar No. 098442
Primary: abrito@britopllc.com
Secondary: apiriou@britopllc.com
**IAN MICHAEL CORP**
Florida Bar No. 1010943
Primary: icorp@britopllc.com
Secondary: chernandez@britopllc.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed on August

22, 2025, through the Florida Courts E-filing Portal upon:

| **Debevoise & Plimpton, LLP** | **Gelber Schachter & Greenberg, P.A.** |
|---|---|
| Helen Cantwell, Esq. | Adam Schachter, Esq. |
| Susan Reagan Gittes, Esq. | Gerald Greenberg, Esq. |
| Erich O. Grosz, Esq. | Shane Grannum, Esq. |
| 66 Hudson Boulevard | 1 SE 3rd Avenue, Suite 2600 |
| New York, New York 10001 | Miami, Florida 33131 |
| hcantwell@debevoise.com | aschachter@gsgpa.com |
| srgittes@debevoise.com | ggreenberg@gsgpa.com |
| eogrosz@debevoise.com | sgrannum@gsgpa.com |
| | |
| *Counsel for Defendant* | *Co-counsel for Defendant* |

By: */s/ Alejandro Brito*

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071