# EXHIBIT B.3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-cv-21596-ALTMAN/HERNANDEZ**

THE DONALD J. TRUMP REVOCABLE
TRUST, *et. al.*,

     Plaintiffs,

v.

CAPITAL ONE, N.A.,

     Defendant.

_____/

**<u>JOINT STIPULATION ON THE PROTOCOL FOR DISCOVERY OF</u>**
**<u>ELECTRONICALLY-STORED INFORMATION</u>**

Plaintiffs The Donald J. Trump Revocable Trust, Eric Trump, DJT Holdings Managing Member, LLC, DJT Holdings, LLC, Eric Trump Wine Manufacturing, LLC, Lamington Family Holdings, LLC, Mobile Payroll Construction, LLC, Pine Hill Development, LLC, T International Realty, LLC, TNGC Charlotte, LLC, Trump Ice, LLC, and DTTM Operations, LLC (collectively, "Plaintiffs") and Defendant Capital One, N.A. ("Capital One" and, together with Plaintiffs, the "Parties") agree to and stipulate to the following terms regarding the form of production of documents and electronically-stored information in this case. Defined terms shall have the same meaning as in the Parties' Confidentiality Stipulation and Protective Order. The Parties stipulate as follows:

1. The Parties shall take reasonable steps to comply with the procedures set forth in this Stipulation. This Stipulation is intended to streamline production to promote a "just, speedy and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

1

2. To the extent reasonably possible, the production of documents shall be conducted to maximize efficient and quick access to documents and minimize related discovery costs. The terms of this Stipulation shall be construed so as to ensure the prompt, efficient, and cost-effective exchange of information consistent with the Federal Rules of Civil Procedure, the Local Rules, and any orders by this Court.

3. Except as specifically limited herein, this Stipulation governs the production of discoverable documents by the Parties during the litigation.  In the event of transfer to other courts, this Stipulation will remain in effect in all respects, until adopted by the transferee court or replaced by a successor agreement. This Stipulation shall not enlarge, reduce, or otherwise affect the scope of discovery in this litigation as imposed by the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders, nor imply that discovery produced under the terms of this Stipulation is properly discoverable, relevant, or admissible in this or in any other litigation.  Subject to this Stipulation, the Parties' objections and responses to requests for production of documents and interrogatories, and subject to a binding Protective Order, all documents that are responsive to discovery requests and not designated as "privileged" shall be produced in the manner provided herein.  Nothing in this Stipulation shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, bank examination privilege, Bank Secrecy Act, or any other possible applicable privilege or immunity.  Additionally, nothing in this Stipulation shall be deemed to waive or limit any Party's right to object to the production of certain electronically stored information, or to move for an appropriate order pursuant to the Federal Rules of Civil Procedure on the ground that the sources are not

2

reasonably accessible because of undue burden or cost or on the ground that there is good cause for the documents' production.

4. The Parties agree to promptly alert all other Parties concerning any technical problems associated with complying with this Stipulation.  To the extent compliance with this Stipulation imposes an undue burden with respect to any protocol or source, the Parties shall promptly confer in an effort to resolve the issue.

5. Consistent with their obligations under applicable Federal Rules of Civil Procedure, the Parties will attempt to resolve, in person, in writing (including e-mail) or by telephone, disputes regarding the issues set forth herein prior to filing a motion with the Court or otherwise seeking relief.  If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

6. Discovery concerning the preservation and collection efforts of another Party can contribute to unnecessary expense and delay and may inappropriately implicate work product and attorney-client privileged matter.  If there is a dispute concerning the scope of a Party's preservation or collection efforts, the burden is on the Receiving Parties to explain their reasons for believing that additional efforts are reasonable and proportionate.  In particular, before initiating discovery about preservation, collection or review, a Party shall confer with the other Party concerning the specific need for such discovery.

7. **<u>Production Format – Hardcopy:</u>** At the Producing Party's discretion, hardcopy documents should be scanned in PDF format or single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (i.e., .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "BEGATTACH," "ENDATTACH," "PAGES" and "CUSTODIAN." The documents

3

should be logically unitized (i.e., distinct documents should not be merged into a single record, and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. If an original document contains relevant information in color necessary to understand the meaning or content of the document, the document should be produced as single-page, 300 DPI with a minimum quality level of 75, 24-bit, color JPG images. To the extent that the Producing Party OCR's the document for its own benefit, OCR should also be provided. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process, if available.

8. **<u>Production Format – Electronically Stored Information:</u>** Unless specifically addressed elsewhere in this protocol, electronically stored information ("ESI") should be produced as single-page, Group IV, 300 DPI TIFF images with the exception of source code, audio, video, and spreadsheet-type files, including, but not limited to, Microsoft Excel, CSV – which should be produced in native format.  All family relationships will be maintained with attachments produced sequentially after the document to which they were attached. All ESI should be produced with a delimited, database load file (Concordance .dat) that contains the metadata fields listed in Appendix 1, attached hereto, to the extent captured at the time of the collection.  To the extent that metadata does not exist, is not reasonably accessible or available for any documents produced or would be burdensome to provide, nothing in this Stipulation shall require any Party to extract, capture, collect or produce such data. The Parties agree that certain documents identified and collected as part of a targeted collection that originated as ESI may be produced without metadata but compliant

4

with Paragraph 7. An .opt image cross-reference file should also be provided for all TIFF images.  Specifications for the load files are listed in Appendix 2.

a. TIFF images should show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFF images of e-mail messages should include the BCC line. PowerPoint documents should be processed with hidden slides and all speaker notes unhidden and should be processed to show both the slide and the speaker's notes on the TIFF/JPG image. Color originals may be produced in B&W TIFF format, but either Party may subsequently request, by Bates number(s), a replacement set of images in color only to the extent that the Requesting Party demonstrates that the loss of the color detracts from the usability or reduces the ability to understand the information imparted in the original. However, categorical or wholesale requests are deemed invalid.

b. If a document is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the document has been produced in native format should also be provided. No native ESI items will be produced for redacted items, except for spreadsheets, which shall be redacted in their native format. If documents requested in native format require redactions and reasonably cannot be produced in TIFF, the Parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained. Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the

5

extent either Party believes native files should be produced for a specific document or class of documents not required to be produced in native format pursuant to this paragraph or to the extent records do not easily conform to native or TIFF format (i.e., structured data), the Parties should meet and confer in good faith.

c. Individual text files shall be provided for each document produced. Each text file should be named according to the Bates begin assigned to its corresponding TIFF or Native document and should be linked directly to its corresponding record in the load file using the TEXT_PATH field.

9. **<u>Previously Collected and Produced Data</u>:** The Parties agree there is no obligation to recollect or reproduce any prior collections or productions collected or produced prior to the entry of this ESI Stipulation.  This includes not requiring either Party to reproduce productions in the production format outlined in this ESI Stipulation.

10. **<u>Production Format - Structured Data</u>:** To the extent a response to a non-objectionable discovery request requires production of discoverable electronic information contained in a database, the Parties will meet and confer to discuss the most appropriate and cost-effective production format, which may include an export of data.

11. **<u>Production Format – Text and/or Chat Messaging</u>:** If text or chat messages from mobile devices must be collected, the Parties will forensically collect the same and provide the metadata listed in Appendix 1 together with metadata extracted during the forensic collection.  For the avoidance of doubt, such metadata should include the dates of the text or chat, the participants, Mobile From, Mobile To, and Attachment Count.  Family relationships should be maintained, with any attachments appearing directly after the message to which they were attached.

6

12. **Production Format - Linked Documents:** The parties acknowledge that hyperlinks to documents exist in the data set but that neither party is obligated to collect and review those documents, until such documents are identified by the party receiving the production as potentially relevant to the litigation.  When a reasonable request is made by one party for a hyperlinked document or documents, the producing party shall collect and review the data for responsiveness and privilege and produce the data if it is relevant and not privileged. The parties shall meet and confer in an attempt to resolve any request for hyperlinked data that is burdensome or unreasonable.  Such requests should be made by providing the BATES_BEG of the document(s) containing the link(s). Only hyperlinked data from Google Drive and OneDrive shall be collected upon request and the data shall be collected as it currently lives in that location as of the time of collection.  If multiple hyperlinks lead to the same document, only one copy shall be produced.  If the hyperlinked document(s) requested has/have been previously produced, the Bates number(s) of said document shall be provided to the requesting party.  Hyperlinks to other data or locations shall not be required to be collected or reviewed.

13. **Production Format - Media:** Documents shall be exchanged through secure file transfer protocols (FTP) or similar secure electronic transmission.  Any document production that may contain Protected Material shall be produced in encrypted form.  If a Producing Party encrypts or "locks" the production, the Producing Party shall send, under separate cover, a password or an explanation of how to decrypt the files.

14. **Processing and Other Specifications:** On-site inspections of ESI under Rule 34(b) shall not be permitted absent a good faith showing by the Requesting Party of good cause and specific need or upon agreement of the Parties. As appropriate, the Parties may petition the

Court to condition on-site inspections of ESI, as authorized in the preceding sentence, to be performed by independent third-party experts, and the Parties may petition the Court to set other conditions it deems appropriate.

15. **<u>Bates Numbering and Confidentiality Designations</u>:** Each page of a produced image shall have a legible, unique Bates number that includes an alpha prefix along with a fixed number, i.e., ABC00000001, electronically "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source document.  Each image page or native file assigned a Bates number shall be assigned a Bates number that is unique, sequential and maintains a constant length across the entire document production. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will note the same in a cover letter or production log accompanying the production.  No other legend or stamp will be placed on the document image other than confidentiality legends (where applicable) or redactions.

16. **<u>ESI Date and Time Processing</u>:** Each Party's ESI should be processed using a consistent Time Zone for all data.  The Party shall share the Time Zone selected for processing of its data with the other Party.

17. **<u>Global or Horizontal Deduplication</u>:**  Removal of duplicate documents should only be done on exact duplicate documents at the family level (based on MD5 or SHA-1 hash values or near duplicate analysis where documents are 100% textual matches but due to underlying data sources or differences in processing or archiving over time the hash values do not match).  Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. When applying global deduplication, metadata identifying all custodians in possession of each document

8

that is removed as a duplicate must be provided in the CUSTODIAN metadata field subject to any exceptions provided in this Stipulation.

18. **Email Thread Suppression:**  Each Party may also deduplicate emails in such a way as to eliminate earlier or incomplete chains of emails, and produce only the most complete or most inclusive iteration of an email chain.

19. **Embedded Objects:**  Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, Access and PDF. Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded unless otherwise subject to an exception provided within this Stipulation.

20. **Compressed Files:**  Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

21. **Redactions:**  The Producing Party can redact documents for privilege or otherwise Protected Material, non-responsive content within a responsive document, and "Personally Identifiable Information," "Sensitive Private Data," or "Nonpublic Personal Information" as these terms are defined under federal, state or foreign data protection laws.  The Parties may, at their own expense, apply redactions to non-responsive highly sensitive or confidential data within relevant documents.  If, during the course of discovery, the Parties identify other kinds of information that any Party has a reasonable basis for redacting, the Parties will meet and confer regarding it before such redactions are made.  If the issue cannot be resolved, the Parties may seek resolution from the Court.

a.  When a document is redacted, the document will be produced in TIFF image unless otherwise agreed to by the Parties. The exception to this is spreadsheet type documents which shall be produced in native format with redaction applied natively. The TIFF image for a document produced in redacted form will include a label identifying the redacted area of the document. For redacted items that were originally ESI, non-redacted metadata fields will be provided, unless certain metadata fields must be redacted to protect privileged information of any type or Protected Information as defined in the Confidentiality Stipulation and Protective Order (the "Protective Order") governing this action.

22. **<u>No Designation of Discovery Requests</u>:**  Production of hard copy documents and ESI in the reasonably usable form set out in this Stipulation need not include any reference to the requests to which a document or ESI may be responsive.

23. **<u>Foreign Language Documents</u>:** To the extent that documents or ESI are produced that contain languages other than English, in whole or in part, the Producing Party shall produce all foreign language documents and ESI in the original language.  The Producing Party has no obligation to provide a translation of the documents or ESI or any portion thereof.

24. **<u>Preservation</u>:** The Parties acknowledge they have an obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody or control (as that phrase is defined and interpreted under Fed. R. Civ. P. 26 and 34). The Parties agree the circumstances of this case do not warrant the preservation, collection, review, or production of the following sources of ESI because they are either not reasonably accessible or not likely to contain additional relevant information from other sources whereby the associated burden and costs outweigh any benefit:

a. Data maintained or duplicated in any electronic backup system.

b. Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by forensics and "unallocated" space on hard drives.

c. Data stored in random access memory ("RAM"), temporary files, or other ephemeral data that is difficult to preserve without disabling operating systems.

d. On-line access data such as temporary internet files, history, cache files, cookies, and the like, wherever located.

e. Data stored on photocopiers, scanners and fax machines.

f. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

g. Server, system or network logs.

h. Logs of calls made from cellular or land-line phones including voicemails.

i. Social media.

j. Legacy data or data remaining from systems no longer in use that is unintelligible on the systems in use.

k. Computer programs, operating systems, computer activity logs, programming notes or instructions, batch files, system files, and miscellaneous files or file fragments.

l. Other forms of ESI whose preservation requires extraordinary affirmative measures not utilized in the ordinary course of business.

25. **<u>Privilege and Privilege Logs</u>:** The Parties agree certain privileged communications or documents need not be included in a privilege log: (a) any internal communications within a law firm; (b) any communications regarding litigation holds or preservation, collection, or review in this or any litigation; and (c) any communication or document that post-dates

11

the filing of the complaint in this litigation. The Parties agree that any documents redacted for privilege shall be identified in a separate redaction log.

    a.  If the Requesting Party requires further information, or desires to challenge a privilege designation on either the privilege log or redaction log, the Parties shall confer before raising any disputes with the Court.  Within thirty (30) days of such a request, the Producing Party must either (i) provide the requested information or (ii) challenge the request.  If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the Parties must request a conference with the Court before any motions may be filed.

    b.  The Parties may later confer about whether it is necessary to enter into a separate agreement with respect to the logging of hard-copy privileged documents, to the extent such documents exist.

26. Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.  Further nothing contained herein is intended to reduce the time frame provided to the Disclosing Party to complete their review should they choose to do so.

27. Nothing contained herein is intended to limit a Party's proportionality and burden arguments specifically related to the costs to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

28. **<u>Third Party Documents</u>:** A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this Stipulation with the subpoena and state that the Parties to the litigation have requested that third Parties produce documents in accordance with the specifications set forth herein.  The Issuing Party shall produce any documents obtained pursuant to a non-Party subpoena to the opposing Party.  Nothing in this Stipulation is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third Parties to object to a subpoena.

29. The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Stipulation. No Party may seek relief from the Court concerning compliance with the Stipulation unless it has conferred with other affected Parties to the action.

30. This Stipulation does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI.  The Parties are not waiving the right to seek any discovery, and the Parties are not waiving any objections to specific discovery requests.  Nothing in this Stipulation shall be interpreted to require disclosure of materials a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, bank examination privilege, bank secrecy act, the work product doctrine, or any other possible privilege that may be applicable.  Nothing in this Stipulation shall be construed to affect the admissibility of any document or data.  All objections to the admissibility of any document or data, except as to the authenticity of the documents produced by a Party as to which that Party stipulates, are preserved and may be asserted at any time

31. A document produced in this litigation shall be presumed to be authentic if offered as evidence against the Party that produced it unless the Party (a) gave notice at the time of production that the authenticity of the document may be challenged, including the reasons for such a challenge; or (b) shows good cause for its failure to give such notice at the time of production.

32. When documents produced in accordance with this Stipulation are used in any proceeding herein, including depositions, hearings, or trial, the image copy of documents shall be the copy used.  Extracted text files shall not be used in any proceeding as a substitute for the image of any document.  This paragraph does not apply to any Federal Rule of Evidence 1006 summary exhibits or summary demonstratives.

33. Nothing in this Stipulation shall be deemed to limit, modify, or override any provision of the Protective Order.

34. The Parties understand this Stipulation contemplates rolling productions of documents, and they acknowledge that nothing in this Stipulation waives, restricts, or eliminates the Parties' respective rolling production obligations, the Parties' respective supplementation obligations prescribed in the Federal Rules of Civil Procedure, or the Parties' 502(d) obligations, and other obligations pursuant to the Agreed Confidentiality Order entered in this case.

35. **<u>Discovery Deficiency</u>:** If the Requesting Party has good cause to believe the Producing Party's discovery efforts have been deficient, the Parties will meet and confer before raising any disputes with the Court. If the Parties are unable to resolve the dispute, the Requesting Party may raise the dispute with the Court.

36. **Modification:** This Stipulation may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

Date: April 20, 2026

*/s/ Alejandro Brito*
ALEJANDRO BRITO
Florida Bar No. 098442
IAN MICHAEL CORP
Florida Bar No. 1010943
BRITO, PLLC
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, Florida 33134
abrito@britopllc.com
icorp@britopllc.com
apiriou@britopllc.com

*Counsel for Plaintiffs*

Respectfully submitted,

*/s/ Shane Grannum*
GERALD E. GREENBERG
Florida Bar No. 440094
ggreenberg@gsgpa.com
ADAM M. SCHACHTER
Florida Bar No. 647101
aschachter@gsgpa.com
SHANE GRANNUM
Florida Bar No. 1055050
sgrannum@gsgpa.com
GELBER SCHACHTER & GREENBERG, P.A.
One Southeast Third Avenue, Suite 2600
Miami, Florida 33131
Telephone: (305) 728-0950
E-service: efilings@gsgpa.com

HELEN V. CANTWELL*
hcantwell@debevoise.com
SUSAN REAGAN GITTES*
srgittes@debevoise.com
ERICH O. GROSZ*
eogrosz@debevoise.com
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000

*Admitted pro hac vice*

*Counsel for Defendant Capital One, N.A.*

15

**APPENDIX 1: METADATA FIELDS**

| Field Name | Example / Format | Description |
|---|---|---|
| BATES_BEG | ABC00000001 (Unique ID) | The Document ID Number associated with the first page of the document. |
| BATES_END | ABC00000003 (Unique ID) | The Document ID Number associated with the last page of the document. |
| ATTACH_BEG | ABC00000001 (Unique ID Parent- Child Relationships) | The Document ID Number associated with the first page of the parent document. |
| ATTACH_END | ABC00000008 (Unique ID Parent- Child Relationships) | The Document ID Number associated with the last page of the last attachment. |
| IMAGE_COUNT | 3 (Numeric) | The number of pages for a document. |
| SENT_DATE_TIME | MM/DD/YYYY HH:MM:SS AM/PM | The date and time the email was sent. |
| CREATE_DATE_TIME | MM/DD/YYYY HH:MM:SS AM/PM | The date and time the document was created.<br><br>*Parties acknowledge that the CREATEDATE field may not actually reflect the date the file was created, due to the ease of change to that field and the technical definition of the field (e.g., the created date and time reflects the date when the file was created in that particular location on the computer or on the other storage device location) |
| LAST_MODIFIED_DATE_TIME | MM/DD/YYYY HH:MM:SS AM/PM | The date and time the document was last modified. |
| CUSTODIANS | John Smith; Tim Jones; Finance Department | The custodian/source of a document. NOTE: If the documents are de-duped on a global level, this field should contain the name of each custodian from which the document originated. |
| CONFIDENTIALITY | Language corresponding with Protective Order | Confidentiality level of document. |
| AUTHOR | jsmith | The author of a document from extracted metadata.<br><br>*Parties acknowledge that the Author field may not actually reflect the author of the document. |
| FROM | Joe Smith <jsmith@email.com> | The display name or e-mail of the sender of an e-mail. |

| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the recipient(s) of an e-mail. |
|---|---|---|
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the copyee(s) of an e-mail. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the blind copyee(s) of an e-mail. |
| SUBJECT | | The subject line of the e-mail. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILE_TYPE | Microsoft Excel Workbook | Native type of document |
| FILE_EXT | XLS | The file extension of a document. |
| FILE_SIZE | Numeric | The file size of a document (including embedded attachments). |
| TEXT_PATH | D:\TEXT\ABC000001.txt | The path to the full extracted text or OCR of the document.  There should be a folder on the deliverable, containing a separate text file per document.  These text files should be named with their corresponding bates numbers.<br><br>If the attachment or e-file does not extract any text, then OCR for the document should be provided (only to the extent the Producing Party OCR's the document for their own benefit). |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The relative path to a native copy of a document, only when a native is being provided pursuant to this agreement. |

** As it relates to the CUSTODIAN metadata field above, the Producing Party reserves the right to produce in multiple fields (e.g., CUSTODIAN + DUPLICATE CUSTODIAN) since the metadata may already be exported and logged as such.

17

**APPENDIX 2: LOAD FILE FORMATS**

**Image Load Files**
- Every document referenced in a production image load file must have all corresponding images, text and metadata.
- The name of the image load file must mirror the name of the delivery volume and should have an .OPT extension.
- The volume names must be consecutive (e.g., ABC001, ABC002…). If, for any reason, the volume names are not consecutive, that fact and the reason for the discrepancy shall be promptly disclosed to the party receiving the documents.
- The load file must contain one line per image.
- Every image in the delivery volume must be contained in the image load file. The image key must be named the same as the Bates number of the image.
- Load files must not span across media.

**Metadata Load Files**
- The metadata load file must use the following delimiters: Column delimiter:
  - o   ASCII 020
  - o   Text qualifier: ASCII 254
  - o   New line:  ASCII 174
- Data for documents must be produced in only one data load file throughout the productions, unless that document is noted as being a replacement document.
- The first record must contain the field names in the order of the data set forth in Appendix 1.
- A carriage-return line-feed must be used to indicate the start of the next document. Load files must not span across media.
- The name of the metadata load file must mirror the name of the delivery volume, and must have a .DAT extension.
- The volume names must be reasonably consecutive (e.g., ABC001, ABC002…).