**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CV-21596-ALTMAN/HERNANDEZ**

THE DONALD J. TRUMP REVOCABLE
TRUST, *et al.*,

      Plaintiffs,

v.

CAPITAL ONE, N.A.,

      Defendant.

_____/

**<u>DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

                                                                                                    **Page**

PRELIMINARY STATEMENT ...................................................................................................... 1

FACTUAL BACKGROUND.......................................................................................................... 3

LEGAL STANDARD..................................................................................................................... 4

ARGUMENT .................................................................................................................................. 5

    I.    Count I Fails to State a Claim for Breach of the Implied Covenant of Good Faith
    and Fair Dealing and Breach of Contract. ................................................................................ 5

        A.    Plaintiffs Still Fail to Allege Any Express Provision of the Rules That Capital
        One Purportedly Violated, Requiring Dismissal of Count One.............................................. 5

        B.    Plaintiffs' Theories for Implying a Duty All Fail. ............................................................ 7

        C.    The Duties Plaintiffs Seek to Impose Are in Tension with Federal Law. ...................... 9

        D.    The Second Amended Complaint Still Fails to Plead the Bad Faith Required for
        an Implied Covenant Claim. ................................................................................................. 9

    II.    Count II's Fraudulent Concealment Claim Fails as a Matter of Law. ............................. 11

        A.    Plaintiffs Fail to Plead the Essential Elements of Fraudulent Concealment................. 11

        B.    Plaintiffs' Claim is Barred by the Independent Tort Doctrine..................................... 16

    III.    Count III Fails to State a Claim for Declaratory Relief. .................................................. 17

        A.    The Requested Declarations Concern Only Past Conduct............................................ 17

        B.    Plaintiffs Fail to Allege a Live, Immediate Controversy............................................. 18

CONCLUSION............................................................................................................................. 20

## PRELIMINARY STATEMENT[1]

On March 20, 2026, this Court granted Capital One's motion to dismiss the First Amended Complaint ("FAC"), holding that the Rules Governing Deposit Accounts ("Rules") permitted closure by either party in their absolute discretion. As the Court observed, "[i]n the end, limiting Capital One's discretion to close customer accounts because of allegations of impure motive would, quote, vary the expressed terms of the contract, which afforded both parties' discretion to terminate their business relationship for any reason. That we are not allowed to do." Tr. of Mar. 20, 2026 Mot. to Dismiss Hr'g, Dkt. No. 53 Tr. at 25:2-8. Accordingly, the Court dismissed the FAC in full but granted Plaintiffs a limited discovery period and leave to replead, providing clear instructions regarding the problems with Plaintiffs' factual allegations and legal theories. Now, after more than three months of discovery, Plaintiffs' Second Amended Complaint ("SAC") suffers from the same fundamental flaws as their prior two pleadings and should be dismissed for many of the same reasons set forth in this Court's prior dismissal.

The SAC concedes that Capital One's decision to terminate the accounts was expressly permitted by the governing agreement and instead rests on vague allegations of political discrimination that are not supported by any of the documents attached to the SAC. To the contrary, those documents and Plaintiffs' own allegations make clear that Capital One closed Plaintiffs' accounts for anti-money laundering ("AML") reasons. The closures were the result of months of analysis and a careful review by Capital One's AML team in accordance with bank policies and regulatory guidance. Capital One never publicized the termination decision nor its

---

[1] Because portions of the Second Amended Complaint and its exhibits are currently sealed, counsel for Capital One provided a copy of this Motion to Dismiss to Plaintiffs' counsel for review prior to filing. Plaintiffs' counsel confirmed that they had no proposed redactions to the Motion.

1

confidential internal process giving rise to the closure, and it permitted Plaintiffs several months (and granted several extensions) to find new banking services, which they did.

As the SAC makes plain, Plaintiffs cannot meaningfully criticize the robust process undertaken by Capital One's AML professionals with decades of law enforcement experience in deciding to close the accounts.  Instead, Plaintiffs attempt to keep their misguided allegations of political discrimination alive by speculating that Capital One's anti-money laundering concerns were pretextual and claiming that Plaintiffs were somehow "misled" by the contractually-permitted closure decision.  But these new theories are based on cherry-picked quotations unsupported by the full context of the documents Plaintiffs cite and are, in any event, unnecessary for this Court to consider at the pleading stage because Plaintiffs' claims fail as a matter of Florida law.  None of Plaintiffs' efforts to avoid this Court's prior rulings can save their claims, and the SAC should be dismissed with prejudice for several reasons.

First, Plaintiffs' claim for breach of the implied covenant cannot stand under Florida law because the Rules expressly permitted Capital One to close the accounts for any reason and without notice, as Plaintiffs cannot dispute.  Plaintiffs' assertion that they can plead a claim for breach of the implied covenant by arguing that Capital One executed the AML closure process in bad faith is unsupported by applicable law and contrary to the express language of the parties' agreement.

Second, Plaintiffs' argument that the account closure letters give rise to a fraudulent concealment claim fares no better.  Plaintiffs cannot reasonably claim that Capital One, acting in accordance with an express provision in the Rules allowing either party sole discretion to close an account for any reason, "defrauded" them as to the confidential reasoning for account closure. Under the terms of the parties' agreement, Plaintiffs were not entitled to any reason for the closure

decision and received none.  Acting in accordance with an express contractual provision cannot give rise to a fraud claim.

Finally, Plaintiffs' declaratory judgment claim fails again because it still seeks an advisory opinion regarding closure decisions made more than five years ago.  The SAC concedes that Plaintiffs have never sought reinstatement of their accounts, and Plaintiffs' vague assertion that the closure decision impaired Plaintiffs' ability to obtain services with other banks (e.g., SAC, Dkt. No. 81 ¶ 175–77) is entirely backwards.  Capital One has never disclosed the basis for the closure decisions nor impaired Plaintiffs' ability to obtain accounts with other banks (which discovery to date makes clear Plaintiffs were able to do promptly).  Indeed, Capital One's decision to close Plaintiffs' accounts only became public because of Plaintiffs' own decision to pursue this litigation.  Plaintiffs therefore still cannot plead the existence of a present controversy between the parties, requiring dismissal under the Court's March 20, 2026 ruling.

For these reasons and the reasons set forth below, Capital One respectfully requests that the Court dismiss Plaintiffs' Second Amended Complaint with prejudice.

## FACTUAL BACKGROUND[2]

Defendant Capital One is a national bank offering commercial and retail banking services with its headquarters in Virginia.  SAC, Dkt. No. 81 ¶ 19.  Plaintiffs are former holders of Capital One deposit accounts and allege they were active users of Capital One's banking services for "over a decade."  *Id*. ¶ 28.  Plaintiffs' accounts were governed by Capital One's Rules, which set forth the terms and conditions for an account holder at Capital One.  *See id.* ¶ 29; Rules, Dkt. No. 81–12.  The Rules provide, in relevant part, that Capital One may close an account for any reason in

---

[2]   Defendant Capital One accepts the facts pled as true solely for the purpose of this motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

its sole discretion and that Capital One is "not liable for any damages or liabilities resulting from the termination of an account relationship." SAC, Dkt. No. 81 ¶¶ 31, 33, 131; Rules, Dkt. No. 81–12 at 10, 13.

On March 8, 2021, Capital One notified Plaintiffs by letter of its decision to terminate the account relationships for many, but not all, deposit accounts held by Plaintiffs and their related entities by June 7, 2021. SAC, Dkt. No. 81 ¶ 86. The letters provided Plaintiffs with three months' notice prior to the closure of the accounts to allow for the orderly drawdown of funds and the transition of deposits to other financial institutions, and at Plaintiffs' request (and as the FAC conceded), Capital One granted extensions beyond the original closure date. Ex. K, Dkt. No. 81–11 at 1, 16, 19, 22–23; FAC, Dkt. No. 32 ¶ 47.

Almost exactly four years later, Plaintiffs filed this lawsuit in Florida state court claiming that the accounts were wrongfully closed for political reasons. Capital One removed the case to federal court based on diversity jurisdiction and moved to dismiss the complaint for failure to state a claim. In response, Plaintiffs filed their FAC, which Capital One again moved to dismiss. On March 20, 2026, this Court heard argument on Capital One's Motion to Dismiss the FAC, granted the motion without prejudice, and granted Plaintiffs leave to amend. Dkt. Nos. 53, 54. This Court also ordered that the parties conduct discovery for 90 days from the date of the Order dismissing the FAC. *Id.* On July 17, 2026, Plaintiffs filed the Second Amended Complaint. Dkt. No. 81.

## LEGAL STANDARD

To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard requires Plaintiffs to "plead[] factual content that allows the court to draw the

4

reasonable inference that the defendant is liable for the misconduct alleged" and "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The Second Amended Complaint's "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011).

## ARGUMENT

**I.      Count I Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing and Breach of Contract.**

Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing and breach of contract fail in light of the express terms of the parties' contract, exactly as this Court previously ruled. Plaintiffs do not dispute that the termination clause in the parties' agreement expressly authorized closure for any reason, foreclosing Plaintiffs' claim under Florida law. Plaintiffs' attempts to avoid this conclusion—arguing that the account closure constituted an "implicit" violation of other terms of the Rules, was contrary to purported "industry customs," or violated the Bank's obligations under AML laws—fail on multiple legal and factual grounds.

**A.      Plaintiffs Still Fail to Allege Any Express Provision of the Rules That Capital One Purportedly Violated, Requiring Dismissal of Count One.**

The SAC concedes, as it must in light of this Court's prior ruling, that the Rules expressly permit Capital One to close Plaintiffs' accounts at any time and for any reason or no reason, foreclosing Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing and breach of contract for the same reasons set forth by this Court in the March 20, 2026 ruling. *See* SAC, Dkt. No. 81 ¶¶ 29, 31, 10; Rules, Dkt. No. 81-12 at 10 (providing that Capital One "may close any account in [its] sole discretion at any time for any or no reason"); *see also* Dkt. No. 53 Tr. at 20:4–25:12. While Plaintiffs style Count I of the SAC as a claim for "*Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing,*" *see* Dkt. No. 81 at p. 26 (emphasis added), Plaintiffs do not identify any express provision of the Rules that Capital One

5

allegedly violated.  As this Court previously explained, a breach of the implied covenant of good faith and fair dealing "must be based on the failed performance of an expressed term of the contract."  Dkt. No. 53 Tr. at 21:3–7 (quoting *Silver v. Countrywide Home Loans, Inc.*, 483 F. App'x 568, 570 (11th Cir. 2012)).  A breach of contract claim likewise requires an identifiable contractual obligation.  *See Stepakoff v. IberiaBank Corp.*, 637 F. Supp. 3d 1309, 1313 (S.D. Fla. 2022) (quoting *Pierce v. State Farm. Mut. Auto. Ins. Co.*, 2014 WL 7671718, at *4 (S.D. Fla. Dec. 17, 2014)) ("In order to allege a material breach in accordance with the pleading standards required under the Federal Rules of Civil Procedure, the plaintiff must allege which provision of the contract has been breached.").  Because Plaintiffs still "haven't alleged that Capital One breached any express term of the contract," this Court's prior basis for dismissal of the implied covenant of good faith and fair dealing claim applies with equal force here.  Dkt. No. 53 Tr. at 21:14–18.

Unable to avoid that the Rules expressly permitted Capital One's decision here, Plaintiffs attempt to dispute Capital One's motive in closing the accounts.  But this argument fails too, as Plaintiffs disregard the most fundamental limitation on the implied covenant of good faith and fair dealing: that it "does not vary the expressed terms of a contract."  Dkt. No. 53 Tr. at 21:8–11 (citing *Silver*, 483 F. App'x at 570).  As the Court previously observed, Florida courts have "uniformly held that a party exercising a discretionary termination clause has not breached the implied covenant."  Dkt. No. 53 Tr. at 23:9–12.[3]  Plaintiffs offer no authority, and Capital One is aware of

---

[3]     *See also Amica Mut. Ins. Co. v. Morowitz*, 613 F. Supp. 2d 1358, 1361 (S.D. Fla. 2009) ("[A] contract that *expressly* grants absolute and unlimited discretion concerning a party's decision-making power would preclude the applicability of the implied covenant of good faith and fair dealing as to such decisions") (emphasis in original); *Sunshine Gasoline Distribs, Inc. v. Biscayne Enters., Inc.*, 139 So. 3d 978, 980 n.1 (Fla. 3d DCA 2014) (noting that "imposing a duty of good faith and fair dealing" where a contract provides a party "sole discretion" would be inappropriate because permitting such a claim to proceed "would frustrate the parties' expectations, not protect them").

none, to support the notion that a party's confidential basis for exercising its clear contractual discretion could give rise to claim for breach of contract or breach of the implied covenant. *See* Dkt. No. 53 Tr. at 23:9–18.

### B. Plaintiffs' Theories for Implying a Duty All Fail.

Faced with an express contractual term permitting termination, Plaintiffs attempt to rewrite the Rules by cherry-picking and misconstruing unrelated provisions to manufacture contractual duties that do not exist. But the Court has already rejected this contractual revisionism. *See* Dkt. No. 53 Tr. At 23:19–24:6 (rejecting Plaintiffs' arguments that the implied covenant imposes on Capital One a duty to exercise its discretion "in a commercially reasonable manner").

Despite the Court's prior ruling, the SAC premises Plaintiffs' implied covenant claim on distortions of three provisions of the Rules: (i) reference to "industry standard banking practices"; (ii) mention of "applicable law"; and (iii) the exculpatory clause. SAC, Dkt. No. 81 ¶¶ 32–35, 102, 128–137. None of those provisions impose an affirmative contractual obligation governing account termination or gives rise to a claim for breach of the implied covenant.

First, Plaintiffs' "industry standard" argument muddies the language of the Rules: the only mention of "industry standard" practices in the Rules is in the Liability section, which limits Capital One's liability for failing to act upon instructions when it reasonably believes that doing so would "conflict with industry standard banking practices." Rules, Dkt. No. 81-12 at 18. This provision has nothing to do with Capital One's contractual ability to close an account, which Plaintiffs cannot dispute. Instead, Plaintiffs suggest that the mere "contemplat[ion]" of industry practices in this narrow context (a provision that expressly *limits* rather than expands Capital One's potential liability) implies an overarching duty that silently controls the entire agreement.

7

*See* SAC, Dkt. No. 81 ¶¶ 34, 104.  But there is no support for such an interpretation; if the parties intended to qualify all terms of the Rules with "industry standards," they would have done so.

Second, Plaintiffs' reliance on the phrase "applicable law" fails for similar reasons.  This language appears in a separate provision in the Liability section, which provides that certain categories of damages must be excluded from certain claims unless such an exclusion is unenforceable under "applicable law."  Rules, Dkt. No. 81-12 at 18.  This standard savings clause does not qualify or otherwise limit Capital One's express rights.  Plaintiffs advance the circular argument that this reference permits any potential cause of action arising under "applicable law," *see* SAC, Dkt. No. 81 ¶¶ 32, 35, 102–04, but that interpretation would nullify the express terms of the contract and therefore fails under black letter law.  *See* Dkt. No. 53 Tr. at 25:2–8 (implied covenant does not "vary the express terms of the contract"); *Fla. Polk Cnty. v. Prison Health Servs., Inc.*, 170 F.3d 1081, 1084 (11th Cir. 1999) (contract "should be construed so as to give every provision meaning").

Third, the Rules' exculpatory clause—providing that Capital One is "not liable for any damages or liabilities resulting from the termination of an account relationship," Rules, Dkt. No. 81-12 at 10—also cannot give rise to a claim.  Plaintiffs contend that their otherwise foreclosed claims are viable because Florida courts strictly construe exculpatory clauses against the drafter.  *See* SAC, Dkt. No. 81 ¶¶ 33, 35, 131–33.  But arguing that an unambiguous *limitation* on Capital One's liability could override the express terms of the contract is illogical and again contravenes black letter law that "a party exercising a discretionary termination clause has not breached the implied covenant."  Dkt. No. 53 Tr. at 23: 9–12 (citing Florida law).  Regardless of the constraints Florida law might place on *other* provisions in the Rules, including the exculpatory clause, those constraints cannot override the express provisions to which the parties agreed.  *See supra* Sec. I.A.

**C.      The Duties Plaintiffs Seek to Impose Are in Tension with Federal Law.**

In addition to these fundamental defects, Plaintiffs' argument that Capital One should have proceeded with the contractually-permitted termination process differently and given Plaintiffs an opportunity to explain suspicious transactions fails for the additional reason that Capital One had no duty to do so.[4]  As a federally regulated financial institution, Capital One is subject to the Bank Secrecy Act ("BSA") and its implementing regulations, under which a bank's BSA-mandated compliance obligations are "owed to the United States and not private bank customers."  *FW Distrib., LLC v. J.P. Morgan Chase Bank, N.A.*, 2024 WL 4665255 at *8 n.2 (S.D. Fla. Nov. 4, 2024).  If any inquiry about the transactions or explanation of the account termination would reveal information subject to federal confidentiality obligations, federal law prohibits such disclosure.  31 U.S.C. § 5318(g)(2); 12 C.F.R. § 21.11(k); 31 C.F.R. § 1020.320(e).  Plaintiffs' position is therefore both inconsistent with the parties' agreement and not supported by federal banking law.

**D.      The Second Amended Complaint Still Fails to Plead the Bad Faith Required for an Implied Covenant Claim.**

As with the previous iteration of the complaint, Plaintiffs' allegations regarding Capital One's purported political motivations cannot save their implied covenant claim.  Florida courts have held that allegations of purported bad faith—even when pleaded with factual specificity—do not overcome a contract that expressly confers absolute discretion, because additional factual allegations cannot revive a legally foreclosed theory.  *See Coira v. Fla. Medical Ass'n, Inc.*, 429

---

[4]   Plaintiffs make the conclusory claim that they could have "explained" the transactions underlying Capital One's assessment, SAC, Dkt. No. 81 ¶ 152, but Plaintiffs do not allege facts plausibly suggesting that any such explanation would have altered Capital One's determination or prevented the account closures.  Indeed, the transaction patterns identified by Capital One are among the types of activity flagged by federal banking guidance.  *Id.* ¶ 73; Ex. B, Dkt. No. 81-2; *see* Federal Financial Institutions Examination Council, BSA/AML Examination Manual: Appendix F—Money Laundering and Terrorist Financing "Red Flags", https://bsaaml.ffiec.gov/manual/Appendices/07 (last visited May 30, 2026).

So.2d 23, 24 (Fla. App. 3 Dist.,1983) ("[A]ny bad faith motives . . . are immaterial . . . where the contract . . . provides that either party may cancel it upon furnishing proper notice"); *see also Burger King Corp. v. Weaver*, 169 F.3d 1310, 1318 (11th Cir. 1999) (holding that "a cause of action for breach of the implied covenant cannot be maintained . . . in derogation of the express terms of the underlying contract"); *Stewart Title Guar. Co. v. Arlene Raijman, P.A.*, 2010 WL 11506389, at *4 (S.D. Fla. June 30, 2010) (dismissing good faith and fair dealing claim and noting that "breach of the implied covenant of good faith and fair dealing cannot be based on general allegations of 'bad faith'"). Capital One's motive is therefore irrelevant, and Plaintiffs' claim fails as a matter of law.

Even if Plaintiffs' allegations regarding Capital One's purported motives were relevant (and they are not), the SAC still fails to state a claim. Florida law requires that a plaintiff plead facts showing that the "defendant's stated purpose for its actions is merely a pretext for the actual impermissible purpose." *See Nat'l Franchisee Ass'n v. Burger King Corp.*, 2010 WL 4811912, at *4 (S.D. Fla. Nov. 19, 2010). Plaintiffs cannot meet this requirement, as the SAC does not allege that Capital One provided any "stated purpose" for the closure; there can be no impermissible purpose that Capital One supposedly sought to conceal since the Rules expressly authorized Capital One to close Plaintiffs' accounts at any time, for any reason or no reason at all. Nor do Plaintiffs' conclusory allegations of improper motive, even accepted as true, constitute an "impermissible purpose" as required to state a claim. Rather, as this Court has already held, "limiting Capital One's discretion to close customer accounts because of allegations of impure motive would 'vary the expressed terms of the contract,' which afforded both parties' discretion to terminate their business relationship for any reason." Dkt. No. 53 Tr. 25:2–8 (quoting *Burger King Corp. v. Weaver*, 169 F.3d at 1316).

**II.      Count II's Fraudulent Concealment Claim Fails as a Matter of Law.**

Plaintiffs' addition of a fraudulent concealment claim to the SAC (the only new cause of action added) should be rejected as a transparent attempt to shoehorn a fraud claim into a straightforward contract dispute.  Plaintiffs point to no communication that provides any reason— pretextual or otherwise—for the account closure.  Dkt. No. 81 ¶ 6 ("Capital One's external termination letters gave no reason for the closures.").  Rather, Plaintiffs appear to assert a fraud claim by omission, arguing that by failing to articulate any reason for the closure, Capital One deprived Plaintiffs of information they might otherwise have used.  But this strained theory fails for numerous reasons under Florida law.  Plaintiffs cannot identify any duty to disclose the reason for the account closures to Plaintiffs, as required to state a fraudulent concealment claim.  Nor can Plaintiffs' convoluted theory plausibly assert a misleading statement, reliance, causation, or the other required elements of a concealment claim, let alone with the particularity required under the heightened pleading standards applicable to fraud-based claims under Florida law.

**A.      Plaintiffs Fail to Plead the Essential Elements of Fraudulent Concealment.**

Plaintiffs fail to sufficiently allege the required elements of a fraudulent concealment claim under Florida law, which require pleading that Capital One: (1) concealed or failed to disclose a material fact; (2) knew or should have known that the fact should be disclosed; (3) knew that its concealment or non-disclosure would induce the plaintiff to act or refrain from acting; (4) owed the plaintiff a duty to disclose; and (5) caused the plaintiff to detrimentally rely on the concealment, resulting in damages.  *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1196 (S.D. Fla. 2017); *see Cote v. R.J. Reynolds Tobacco Co.*, 909 F.3d 1094, 1106 n.6 (11th Cir. 2018).

11

*(i)* <u>*Capital One Owed No Duty to Disclose Its Reasons for the Account Closures.*</u>

Plaintiffs fail to allege that Capital One had any plausible duty to disclose, foreclosing their fraudulent concealment claim at the outset. "In Florida, a fraudulent concealment claim based on omission must be accompanied by allegations of a special relationship that gives rise to a duty to speak." *Garrett-Alfred v. Facebook, Inc.*, 540 F. Supp. 3d 1129, 1139 (M.D. Fla. 2021) (citation omitted). In an arm's-length relationship like the one at issue here, "such duty arises when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them." *Id.* (citation omitted).[5] Plaintiffs fail to plead any such duty for several reasons.

First, the SAC only alleges an ordinary banking relationship between Capital One and Plaintiffs. *See* Dkt. No. 81 ¶ 28. This type of arm's-length relationship gives rise only to a duty of ordinary care under Florida law, not the kind of fiduciary duty or other heightened obligation required to trigger disclosure obligations. *Arbitrajes Financieros, S.A. v. Bank of America, N.A.*, 605 Fed. Appx. 820, 823 (11th Cir. 2015). Banks only assume fiduciary or heightened disclosure

---

[5] One exception to this rule is when "a party in an arm's length transaction undertakes to disclose information, all material facts must be disclosed." *Cont'l Gen. Ins. Co. v. Gardina*, 773 F. Supp. 3d 1294, 1303 (M.D. Fla. 2025) (citation omitted). But this exception has no application here, as Plaintiffs concede that no facts about the basis for the closure decision were disclosed. Further, in arm's-length transactions, courts have explicitly disavowed imposing a duty based on one party's alleged possession of "superior knowledge" absent some fiduciary or otherwise confidential relationship. *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1429 (S.D. Fla. 1996). As case law makes clear, this supposed exception "does not exist in the absence of a fiduciary or other special or confidential relationship of trust because there is no duty imposed on either party to protect or benefit the other." *Cordell Consultant, Inc. Money Purchase Plan & Tr. v. Abbott*, 2012 WL 13148744 at *3 (S.D. Fla. July 11, 2012); *see also DJ Lincoln Enters., Inc. v. Google, LLC*, 2021 WL 3079855 (S.D. Fla. July 21, 2021), *aff'd*, 2022 WL 203365 (11th Cir. Jan. 24, 2022) ("Possession of superior knowledge alone does not create a duty to disclose under Florida law.").

obligations under special circumstances not at issue here—for example, where a bank acts as an adviser or broker. *See First Union Brokerage v. Milos*, 717 F. Supp. 1519, 1526 (S.D. Fla. 1989), *aff'd*, 997 F.2d 835 (11th Cir. 1993); *Dickson v. Wells Fargo Bank, N.A.*, 812 F. Supp. 3d 1281, 1292 (S.D. Fla. 2025) ("If simply placing money in a bank account constituted a special circumstance and relationship of trust that creates a fiduciary duty, then every bank would have a fiduciary relationship with its customers."). Moreover, "mere receipt of confidential information is insufficient by itself to transform an arm's-length transaction into a fiduciary relationship." *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1367 (S.D. Fla. 2015). Plaintiffs' concession that the relationship with Capital One was an ordinary banking relationship forecloses their fraudulent concealment claim because Capital One has no duty to disclose.

Second, where (as here) a contract specifically provides that no explanation is required for termination, a party cannot simultaneously claim that the other party's silence regarding its reasons for closure constitutes concealment. *See Vital Pharmaceuticals, Inc. v. Balboa Cap. Corp.*, 2016 WL 4479370, at *7 (S.D. Fla. Aug. 26, 2016) ("Plaintiffs cannot succeed on their…fraudulent concealment claim[] because any alleged misrepresentations…are clearly contradicted by the express terms of the [agreement]."). Capital One's "silen[ce]" regarding the account closure—expressly provided for by a contract between two sophisticated parties—cannot reasonably be interpreted to suggest concealment under Florida law. *See id*.; *see also* Dkt. No. 81 ¶ 140 (referencing Capital One's "silen[ce]" about the reasons for the account closures). The contractual ability to close an account for any reason therefore forecloses Plaintiffs' theory that Capital One had any "duty" to disclose the basis for termination.

Finally, as discussed above, federal law prohibits the disclosure of certain information regarding a bank's AML activities. *See supra* Section I.C. Plaintiffs' fraudulent concealment

13

theory would turn the framework imposed by the BSA on its head and compel a bank to reveal federally protected information, further underscoring why Plaintiffs' effort to impose a duty fails as a matter of law.

### (ii) *Plaintiffs Fail to Plead the Other Required Elements of a Concealment Claim.*

In addition to the threshold failure to plead any duty to disclose, Plaintiffs' theory of fraud also fails to satisfy the basic elements of a concealment claim, especially when considered under Federal Rule of Civil Procedure 9(b)'s heightened pleading standard, which requires a Plaintiff to plead "the content and manner in which the statements misled [them]" and "what the defendants gained through the alleged fraud." *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1197 (S.D. Fla. 2017) (citing *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008)); *see also Greenberg v. Miami Children's Hospital Research Institute, Inc.*, 264 F. Supp. 2d 1064, 1073 (S.D. Fla. 2003) (quoting *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990)) (fraudulent concealment claims must address the "who, what, when, where, and how" of the alleged fraud).

**No material facts were concealed:** The confidential basis for Capital One's closure decision also cannot constitute "material facts" that were improperly concealed.  Florida law makes clear that there is no "freestanding interest in being informed by others." *Prentice v. R.J. Reynolds Tobacco Co.*, 338 So. 3d 831, 840–41 (Fla. 2022) (citing Restatement (Second) of Torts § 551 (Am. L. Inst. 1977); Restatement (Third) of Torts: Liability for Economic Harm § 13 (Am. L. Inst. 2020).  And the Rules themselves disclosed that Capital One "may close any account in our sole discretion at any time for any or no reason." Rules at 81–12 at 10.  Plaintiffs' apparent desire for an explanation for the closure decision that was not required by the parties' agreement cannot give rise to a claim for fraud.  *See* Dkt. No. 81 ¶ 143, 145–52.

14

**No Knowledge of Disclosure or Intent to Induce Action:** Plaintiffs' inability to ground their disclosure theory in any cognizable legal theory also forecloses any argument that Capital One "knew" or "should have known" that disclosure was required.  For the same reasons described above, a bank cannot be said to have "known" it was required to disclose information that it had no duty to disclose.  Plaintiffs fail to plead that banks typically share this type of information.  Nor could they, given the tension such sharing would create with duties arising under federal banking laws.  *See* 31 U.S.C. § 5318(g)(2); 12 C.F.R. § 21.11(k).  Plaintiffs also fail to allege what specific conduct Capital One intended the "concealment" to induce, or what actions Plaintiffs took or refrained from taking as a result of the "concealment."  This failure to plead with particularity "the content and manner in which [they were] misled" and "what the defendant gained through the alleged fraud," *Koski*, 347 F. Supp. 3d at 1197, requires dismissal of Plaintiffs' concealment claim.

**No Reliance:** In addition, any alleged reliance by Plaintiffs here was unreasonable as a matter of law. Dkt. No. 81 ¶ 151–55.  Plaintiffs' banking relationship with Capital One was subject to the no-reason closure provision within the Rules, which expressly granted Capital One the right to end the banking relationship "for any or no reason and without notice."  Rules, Dkt. No. 81–12. Plaintiffs cannot now claim to have reasonably relied on some type of duty by defendant to notify them of the reason for the account closure that is unsupported by the contract's express language. *See Vital Pharmaceuticals, Inc*, 2016 WL 4479370, at *7 ("Plaintiffs cannot succeed on their…fraudulent concealment claim[] because any alleged misrepresentations…are clearly contradicted by the express terms of the [agreement].").  Plaintiffs' vague allegations of reliance also fall well short of what is required. Dkt. No. 81 ¶ 151–55.  An "assumption" of reliance is not enough – plaintiff must explain what specific actions Plaintiffs would have done differently "but

for the alleged misrepresentation or nondisclosure," which Plaintiff fails to do here. *Garrett-Alfred*, 540 F. Supp. 3d at 1139 (M.D. Fla. 2021).[6]

**No Causation:** Nor do Plaintiffs plead causation. The harms Plaintiffs allege—loss of banking services, inconvenience, and difficulty obtaining new accounts—flow from the closure of the accounts and not from Capital One's purported silence about why it occurred. Dkt. No. 81 ¶ 95–96, 155. Plaintiffs would have experienced the same purported harms regardless of what Capital One disclosed, defeating Plaintiffs' causation arguments.

### B. Plaintiffs' Claim is Barred by the Independent Tort Doctrine.

Finally, Plaintiffs' claim is separately barred by the independent tort doctrine because "[w]here damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort." *Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 494 (Fla. 3d DCA 1994) (citing cases); *see also Scrap King LLC v. Stericycle, Inc.*, 2019 WL 11555235, at *4 (M.D. Fla. March 15, 2019); *Kaye v. Ingenio, Filiale De Loto-Quebec, Inc.*, 2014 WL 2215770, at *4 (S.D. Fla. May 29, 2014) (dismissing fraud claim where "the misrepresentations forming the basis for the fraud also form the basis for the breach of contract."); *Temurian v. Piccolo,* 2019 WL 1763022, at *7–8 (S.D. Fla. April 22, 2019) (barring fraud claim as "inextricably intertwined" with breach of contract). The alleged "concealment" here—Capital One's alleged "two parallel tracks" of privately claiming a pretextual AML rationale for closure in order to conceal a political motive for the account closures—was an exercise of its express contractual termination right and is the same act that gives rise to Plaintiffs' contractual

---

[6]   Plaintiffs also fail to explain how disclosure of Capital One's internal AML rationale would have placed them in a materially different position; the SAC does not allege what would or could have happened differently if the AML rationale was disclosed at the time of closure.

claim. Plaintiffs also allege no harm independent of the account closure itself and seek no damages that are distinct from those arising from Count I, providing another ground for dismissal.

### III.     Count III Fails to State a Claim for Declaratory Relief.

Plaintiffs' third attempt to plead a claim for declaratory relief once again fails for the same fundamental reasons as their prior attempt.[7]

#### A.     The Requested Declarations Concern Only Past Conduct.

Plaintiffs' claim for declaratory judgment fails for the same reason articulated by this Court during the March 20, 2026 hearing: Plaintiffs still "seek a declaration only about Capital One's past conduct." Dkt. No. 53 Tr. at 13:24–14:1. All three of Plaintiffs' requested declarations boil down to a request that the Court determine the basis for Capital One's 2021 decision to close Plaintiffs' accounts. Declaratory judgment is therefore inappropriate. *See Bacardi USA, Inc. v. Young's Mkt. Co.,* 273 F.Supp. 3d 1120, 1130 (S.D. Fla. 2016) ("[A] declaratory judgment should not issue over past conduct alone."); *Michele F. Libman MD PA v. First Health Grp. Corp.*, 2024 WL 4564804, at *2 (S.D. Fla. Aug. 12, 2024) (declarations "concerning the propriety of past conduct" are "not the proper subject of declaratory relief").

Plaintiffs' first and third requested declarations—seeking a declaration that the AML closure reasons were pretext—plainly ask the Court to evaluate the basis for Capital One's 2021 account-closure decision and therefore concern only Capital One's past conduct. *See* SAC, Dkt. No. 81 ¶ 178(a) (requesting a declaration that "Capital One's closure of Plaintiffs' accounts **was not based on** legitimate AML risk, but was instead a pretextual, politically motivated exercise . . ."

---

[7]   Federal courts construe claims for declaratory relief under Florida's declaratory judgment statute as being governed by the Federal Declaratory Judgment Act. *See, e.g.*, *Garden-Aire Vill. S. Condo. Ass'n Inc.*, 774 F. Supp. 2d at 1227; *Palmetto W. Park Condo., Inc. v. Empire Indem. Ins. Co.*, 2021 WL 3931871, at *2–3 (S.D. Fla. Sept. 2, 2021).

(emphasis added)); *id.* ¶ 178(c) (requesting a declaration that "Plaintiffs' accounts **were not closed because of** any genuine suspicious activity, regulatory concern, or AML risk attributable to any Plaintiff." (emphasis added)).  This is exactly the kind of advisory opinion on past conduct that this Court has made clear cannot give rise to a declaratory relief.  *See* Dkt. No. 53 Tr.  at 15:6–10 ("The Plaintiffs, in short, seek a declaratory judgment regarding a past injury, thus rendering any such judgment nothing more than a gratuitous comment without any force or effect . . . .").

Plaintiffs' second request suffers the same flaw: asking for a declaration that the alleged "prospective prohibition on Plaintiffs' ability to open or maintain Capital One accounts, to the extent it is premised on the AML characterization . . . **rests on a pretextual foundation**."  SAC, Dkt. No. 81 ¶ 178(b) (emphasis added).  Although framed in terms of a "prospective prohibition," the declaration does not ask the Court to adjudicate the alleged prohibition itself and concedes that Plaintiffs have not sought reinstatement and do not presently seek to resume a banking relationship with Capital One.  Dkt. No. 81 ¶ 168.  In asking the Court to declare that the prohibition "rests on a pretextual foundation," Plaintiffs' proposed declaration boils down to the same improper request that the Court assess Capital One's five-year-old decision to close their accounts.

### B.        Plaintiffs Fail to Allege a Live, Immediate Controversy.

Plaintiffs' declaratory judgment claim fails for the additional reason articulated by the Court in the March hearing, as it requests that the Court adjudicate "Capital One's 2021 termination of their accounts without showing that that 'injury they [have] suffered will continue or will be repeated in the future.'"  Dkt. No. 53 Tr. at 14:6–11 (quoting *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999)).  In a futile effort to address the Court's prior ruling, the SAC now alleges two purported ongoing injuries: (1) an alleged permanent prohibition on Plaintiffs' ability to open or maintain Capital One accounts, and (2)

alleged reputational harm affecting Plaintiffs' relationships with other financial institutions.  SAC, Dkt. No. 81 ¶¶ 159–177.  But neither alleged injury establishes the type of "real and immediate" future injury necessary to state a claim.  *See Malowney*, 193 F.3d at 1347 (citation omitted).

First, Plaintiffs' allegation that Capital One maintains a "permanent" prohibition on their ability to open or maintain Capital One accounts is insufficient to establish a present or imminent injury.  SAC, Dkt. No. 81 ¶¶ 159–68.  As described above, Plaintiffs do not allege that they have sought to reopen their accounts or applied for a new Capital One account, that Capital One has denied any such request, or that they intend to seek a Capital One account.  Plaintiffs' allegation that such a request would be futile does not save their claims, as Plaintiffs still do not allege any present desire or current need to obtain a Capital One account, nor do they assert any plausible present or imminent future harm from the alleged prohibition.  *See Bacardi USA, Inc.*, 273 F. Supp. 3d at 1127–28 (an action for declaratory judgment "requires a substantial and continuing controversy that is not conjectural, hypothetical, or contingent" (emphasis and citation omitted)).

Second, Plaintiffs' vague allegation that Capital One's AML-related basis for the account closure continues to impair their ability to establish banking relationships with other financial institutions does not save their claims.  SAC, Dkt. No. 81 ¶¶ 174–182.[8]  Plaintiffs do not allege that Capital One ever communicated to another financial institution or to anyone outside Capital One its internal AML analysis or the basis for its closure decision.  Nor do Plaintiffs allege that any third party was even aware of the AML rationale.  To the contrary, Plaintiffs repeatedly allege

---

[8]     Plaintiffs allege that a declaration would provide "a judicial determination that they can present to other financial institutions" to counter the inference allegedly created by Capital One's AML-based closure recommendation.  SAC, Dkt. No. 81 ¶ 182.  But Plaintiffs do not allege any inability to obtain banking services.  Their request for a declaration to use in hypothetical future dealings with other banks fails to transform their retrospective challenge to the 2021 account closures into a live controversy.

that Capital One did not disclose its AML rationale—even to Plaintiffs themselves. *See* SAC, Dkt. No. 81 ¶¶ 84–87, 141–153. Given the absence of any public statements by Capital One concerning the account closure decision (let alone the bank's confidential underlying AML rationale), Plaintiffs cannot plead the reputational injury on which this theory depends.[9] *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 438 (2021) (finding the risk of future injury too speculative to support Article III standing if it is only based on a "risk of dissemination to third parties").

Plaintiffs' theory of harm is also entirely speculative. *Even if* dissemination had occurred (which it did not), Plaintiffs' alleged future injury depends on a series of speculative contingencies—that they apply to another bank, and that the bank learns of Capital One's AML rationale, relies on it, and therefore denies banking services to Plaintiffs. Plaintiffs fail to allege that any of those events have occurred or are imminent. The generalized allegation that banks "routinely inquire" about prior account closures, without more, does not transform this chain of speculative contingencies into the "real and immediate" threat of future injury required for declaratory relief. *Malowney*, 193 F.3d at 1346-47 (quoting *Emory,* 756 F.2d at 1552).

**CONCLUSION**

For the foregoing reasons, Capital One respectfully requests that the Court dismiss the Second Amended Complaint in its entirety with prejudice.

---

[9]    Nor can publicity generated by Plaintiffs' own pleading supply the missing injury. To the extent Capital One's internal AML rationale became public through this litigation, that occurred because Plaintiffs chose to quote or attach Capital One's internal documents to a public pleading—not because Capital One allegedly communicated the rationale to another financial institution, which it did not.

Dated: July 31, 2026

Respectfully submitted,

*/s/  Shane Grannum*
GERALD E. GREENBERG
Florida Bar No. 440094
ggreenberg@gsgpa.com
ADAM M. SCHACHTER
Florida Bar No. 647101
aschachter@gsgpa.com
SHANE GRANNUM
Florida Bar No. 1055050
sgrannum@gsgpa.com
E-service: efilings@gsgpa.com

GELBER SCHACHTER & GREENBERG, P.A.
One Southeast Third Avenue, Suite 2600
Miami, FL 33131
Telephone: (305) 728-0950

HELEN CANTWELL*
hcantwell@debevoise.com
SUSAN REAGAN GITTES*
srgittes@debevoise.com
ERICH O. GROSZ*
egrosz@debevoise.com

DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000

*Admitted *pro hac vice*

*Counsel for Defendant Capital One, N.A.*

21