**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CV-21596-ALTMAN/HERNANDEZ**

THE DONALD J. TRUMP REVOCABLE
TRUST, *et al.*,

Plaintiffs,

v.

CAPITAL ONE, N.A.,

Defendant.

_______________________________________/

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

## PRELIMINARY STATEMENT

Plaintiffs' Opposition ("Opposition" or "Opp.") to Capital One's Motion to Dismiss ("Motion" or "Mot.") demonstrates the fundamental problems with their case. Faced with this Court's articulation of the legal deficiencies in their claims and the numerous, independent grounds for dismissal set forth in Capital One's Motion, Plaintiffs double down on inaccurate factual allegations, misstate relevant case law, and shift their legal theories. But none of Plaintiffs' attempts to avoid dismissal can save their claims.

After initially faulting Capital One for not explaining why Plaintiffs' accounts were closed, Plaintiffs have now received contemporaneous documents and testimony of a corporate representative explaining that Capital One closed Plaintiffs' accounts for anti-money laundering ("AML") reasons after a thorough and careful process. Unable to find actual evidence of political discrimination, the Opposition spins an incomplete and misleading account of the 2021 closure process to claim that Capital One's termination decision was pretextual.

However, Plaintiffs' allegations find no support from the full context of the documents and testimony Plaintiffs attached to, and referenced in, their Second Amended Complaint ("SAC"). As one example, Plaintiffs argue that Capital One's closure was based on "stale" transactions. Opp., Dkt. No. 107 at 1–3, 10, 14. But the Opposition mischaracterizes a series of more recent unusual transactions, of which Capital One (as Plaintiffs do not dispute) first became aware on January 21, 2021. These transactions exhibited a pattern identified in federal banking guidance as potentially suspicious, *see* Mot., Dkt. No. 91 at 9 n.4, and Capital One's experienced AML professionals could not determine any possible legitimate business purpose for them. *See* SAC, Ex. A, Dkt. No. 81–1 at 27:12–19; Ex. B, Dkt. No. 81–2 at 1, 6. As this example illustrates, the full record makes clear that Capital One's account closure decision was based on AML concerns and was reached only after careful review and analysis by AML professionals with decades of law enforcement experience.

But this Court need not decide whether Capital One's closure decision was based on a thoroughly documented AML review or was, as Plaintiffs argue, a pretext for a political decision. Plaintiffs' claims fail for threshold legal reasons even accepting the SAC's allegations as true at the pleading stage. <u>First</u>, Plaintiffs concede that the Rules Governing Deposit Accounts ("Rules") expressly permitted Capital One to close the accounts in its sole discretion, at any time and for any or no reason. Florida law does not permit a duty of good faith and fair dealing claim that

contradicts an express contractual provision as Plaintiffs' theory would here, defeating Plaintiffs' claim as a matter of law. Second, Plaintiffs do not dispute the need to plead a duty to disclose to sustain a fraudulent concealment claim and offer no cognizable basis that such a duty could exist in this circumstance. Finally, Plaintiffs' attempt to revive their declaratory judgment claim by asserting the existence of a continuing "prohibition" on opening accounts with Capital One does not change that the declarations they seek concern the basis for closures more than five years ago, nor does it establish the real and immediate future injury necessary to create a present controversy.

Plaintiffs' third attempt to plead viable claims suffers from the same fundamental flaws as their prior pleadings, and this Court should dismiss Plaintiffs' claims *with prejudice*.

## ARGUMENT

### I. Count I Still Fails to State a Claim for Breach of Contract or the Implied Covenant of Good Faith and Fair Dealing.

#### A. Plaintiffs Have Not Cured the Two Defects in Their Implied Covenant Claim.

Nothing in Plaintiffs' Opposition solves the two fatal problems with Plaintiffs' prior implied covenant claim identified by this Court's prior ruling, requiring dismissal again here.

First, Plaintiffs' implied covenant claim is not based on the failed performance of an express contractual term, which, as the Court previously recognized, forecloses such a claim under Florida law. *See* Tr. of Mar. 20, 2026 Mot. to Dismiss Hr'g ("Tr."), Dkt. No. 53 at 21:3–11; *Silver v. Countrywide Home Loans, Inc.*, 483 F. App'x 568, 570 (11th Cir. 2012). Plaintiffs again identify the Rules' termination provision as the contractual provision Capital One allegedly breached, but Plaintiffs ignore that the Court already rejected that theory, reasoning that "Capital One's exercise of its unambiguous right to terminate its banking relationship with the Plaintiffs cannot be construed as a breach of the expressed provision that allows it to do precisely that." Tr., Dkt. No. 53 at 22:7–10; *see also* Mot., Dkt. No. 91 at 5–6. And while Plaintiffs lean heavily on the Court's observation that termination under a termination clause might constitute a breach in some circumstances, Opp., Dkt. No. 107 at 6; Tr., Dkt. No. 53 at 22:25–23:2, they omit the Court's subsequent comment that neither Plaintiffs nor the Court itself had identified any case reaching that result under a provision "like the one at issue here," which permits termination "for any reason." Tr., Dkt. No. 53 at 23:4–6. Plaintiffs still fail to identify any authority in their Opposition to support their theory, and the Court's prior reasoning remains applicable.

Second, Plaintiffs' alleged implied covenant would still impermissibly vary the express provision of the Rules granting absolute discretion to Capital One to close the accounts for any or no reason, which the Court made clear could not form the basis of a viable claim. *Id.* at 21:12–18, 23:9–16, 25:2–8. Unable to cure this fundamental problem, the Opposition casts Plaintiffs' challenge to Capital One's motive as a challenge to the "process" behind that motive and argues (without explanation) this is somehow different.

But Plaintiffs' purported distinction is merely semantic, as it still boils down to a claim that Capital One should have undertaken a different process with a different result because it acted with an improper motive. As the Court already held, "limiting Capital One's discretion to close customer accounts because of allegations of impure motive" would impermissibly "vary the expressed terms of the contract." *Id.* at 25:2–4. Plaintiffs' theory would render the Rules' express grant of authority to Capital One to close an account "for any or no reason" meaningless. This would lead to the upside-down result where Capital One is penalized for conducting a careful and thorough review and would have had greater contractual discretion if it closed accounts without any investigation—exactly the kind of "rewriting" of the Rules that is not permitted.

**B. *Cox* Does Not Rescue Plaintiffs' Theory Because the Rules Contain No Gap for the Implied Covenant to Fill.**

Unable to dispute the Rules' express grant of absolute discretion to terminate accounts, Plaintiffs instead attempt to manufacture a gap in the discretion conferred by the Rules, but this argument again runs afoul of Florida law and this Court's prior rulings. In particular, Plaintiffs cite *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092 (Fla. 1st DCA 1999), to argue that the Rules do not specify any "methodology" used to terminate accounts, leaving a gap for the implied covenant to fill. But Plaintiffs' reliance on *Cox* fails for multiple reasons.

First, *Cox* found a gap only where the contract left the scope of a party's discretion undefined. *Cox* did not consider a provision like the one at issue here, where the contract expressly grants Capital One sole discretion to terminate an account for any or no reason. Indeed, *Cox* itself noted that there was "no express grant of absolute, unlimited discretion" to act "in any manner or for any reason" the defendant there saw fit. 732 So. 2d at 1098 n.2.

There is no *Cox*-type gap to fill here. The Rules do not merely provide that Capital One "may" close an account while leaving the scope of that authority undefined; they authorize Capital One to close "any account" in its "sole discretion," "at any time," and "for any or no reason." SAC, Dkt. No. 81 at ¶ 31. As this Court reasoned in its prior dismissal ruling, this case follows

*Amica Mut. Ins. Co. v. Morowitz,* which distinguished *Cox* and subsequently explained that "a contract that *expressly* grants absolute and unlimited discretion concerning a party's decision-making power would preclude the applicability of the implied covenant." 613 F. Supp. 2d 1358, 1361 (S.D. Fla. 2009); *see also Sunshine Gasoline Distribs., Inc. v. Biscayne Enters., Inc.*, 139 So. 3d 978, 980 n.1 (Fla. 3d DCA 2014) (noting that "imposing a duty of good faith and fair dealing" where a contract provides a party "sole discretion" would "would frustrate the parties' expectations, not protect them"); Tr., Dkt. No. 53 at 24:1–14 ("Florida courts have routinely held that the implied covenant is not implicated when a parties' discretion is limited to a binary choice, whether to exercise a termination clause or not to exercise it.").

Plaintiffs' effort to avoid this result by claiming that Capital One's termination decision was not truly binary because not all the accounts associated with Plaintiffs were closed also falls short. *See* Opp., Dkt. No. 107 at 9–10; Tr., Dkt. No. 53 at 24:15–25:1. As discussed, the Rules authorize Capital One to close "*any* account" in its sole discretion (emphasis added). The relevant contractual choice therefore operates account by account: close each account or leave it open. That Capital One reached different outcomes and did not require closure of some accounts (none held by Plaintiffs here) does not alter the binary contractual choice as to *Plaintiffs'* accounts. And Plaintiffs' theory also strains credulity: after alleging that Capital One wrongly "debanked" them, Plaintiffs cannot state a claim for breach of the covenant of good faith by claiming Capital One should have closed *all* accounts with any association to Plaintiffs, even if doing so would have departed from Capital One's standard procedures because those accounts did not pose the same AML concerns.

Second, Plaintiffs' reliance on *Cox* also fails because the contractual gap there concerned how the defendant could perform a contractual obligation (*i.e.*, defendant CSXI was obligated to assign loads to the plaintiffs, but the contracts did not specify how those assignments would be made). 732 So. 2d at 1097–98. Here, the termination provision is different: the Rules impose no obligations regarding the process by which accounts will be closed, further distinguishing this case from *Cox*. Nothing in the Rules requires Capital One to conduct an account-closure review without specifying how that review should proceed, as was the case in *Cox*. Rather, Capital One's AML review was an internal process, guided by federal law, to determine whether to exercise a contractual right, not a contractual obligation subject to the implied covenant.

Plaintiffs' contrary theory has no limiting principle. Every exercise of contractual discretion necessarily involves some internal decision-making. If that decision-making is itself subject to the implied covenant, a counterparty could evade virtually any express grant of discretion simply by challenging how the party decided to exercise it. The implied covenant would become a vehicle for judicial supervision of internal business affairs that was never made part of the parties' bargain.

**C. Plaintiffs' Remaining Arguments Also Fail.**

Faced with Capital One's arguments as to why these provisions have nothing to do with the Rules' termination provisions, Plaintiffs' Opposition effectively concedes that their arguments based on other provisions of the Rules also cannot form the basis of an implied covenant claim. Plaintiffs no longer argue that the references to "industry standard banking practices," "applicable law," or the exculpatory provision independently restrict Capital One's termination right. Instead, Plaintiffs now argue only that those provisions preserve otherwise applicable law. Opp., Dkt. No. 107 at 11–12. But this new theory fares no better, as Plaintiffs still cannot identify any law that the account closures violated. *See* Mot., Dkt. No. 91 at 8–9.

Nor does the Opposition's reliance on public policy help Plaintiffs' claims. Contrary to Plaintiffs' argument, *Coira* does not hold that an otherwise permissible termination becomes actionable whenever its alleged motive can be characterized as contrary to public policy. *See* Opp., Dkt. No. 107 at 14 (citing *Coira v. Florida Medical Ass'n*, 429 So. 2d 23, 24 (Fla. 3d DCA 1983)). If that were the case, any plaintiff could plead an implied covenant claim merely by adding a conclusory reference to "public policy," a result that would run afoul of Florida law. Likewise, Fla. Stat. § 655.0323 does not help their claims; as this Court already recognized, that statute postdates the 2021 closures and creates no private right of action. Tr., Dkt. No. 53 at 19:4–16.

Finally, Plaintiffs' outsized focus on their allegations of "pretext" in arguing that Capital One acted in "bad faith" misses the point. At the pleading stage, the relevant question is whether the implied covenant imposed a limitation on Capital One's contractual discretion to terminate. *See* Mot., Dkt. No. 91 at 9–10. As discussed, the plain language of the Rules afforded Capital One full discretion as to whether and how to close the accounts. The Court therefore need not resolve factual disputes regarding Plaintiffs' characterization of the internal communications they cite, as those allegations boil down to the same claims of "impure motive" that the Court already decided were insufficient to state a claim. *See* Tr., Dkt. No. 53 at 25:2–8.

## II. Plaintiffs' Fraudulent Concealment Claim Fails as a Matter of Law.

### A. Plaintiffs Cannot Identify Any Duty to Disclose Owed by Capital One.

Plaintiffs' Opposition does not dispute that the duty to disclose is an essential element of a fraudulent concealment claim under Florida law, but nevertheless fails to identify any duty that Capital One owed to Plaintiffs as ordinary bank account holders. Opp., Dkt. No. 107 at 16. This failure forecloses Plaintiffs' fraudulent concealment claim at the outset.

Unable to offer any legal source of any duty owed to Plaintiffs, the Opposition instead argues that "Capital One's own undertaking gave rise to a duty to disclose," claiming that "Capital One did speak" by "sen[ding] letters terminating the relationship, and those letters conveyed, by their form and by their silence, that the closures were an unremarkable exercise of contractual discretion." *Id*. But Plaintiffs' theory omits (as Plaintiffs cannot dispute) that Capital One did not say anything in the notices or otherwise to Plaintiffs (or to anyone else) about its *reason* for the closure; Capital One only informed Plaintiffs the closure was happening, exactly as it did. *See* SAC, Ex. K, Dkt. No. 81–11 at 1, 16, 19, 22, 23 ("Capital One, N.A. is exercising its right, pursuant to its Rules Governing Deposit Accounts, to terminate the account relationships . . . [t]he Rules Governing Deposit Accounts allow us to close accounts in our sole discretion at any time."). Nothing about this statement is plausibly misleading or incomplete, especially given the clear language of the Rules permitting closure in this manner. *See* SAC, Ex. L, Dkt. No. 81–12 at 10 ("We may close any account in our sole discretion at any time, for any or no reason and without notice to you.").

None of Plaintiffs' cited cases support a fraudulent concealment claim on this basis. The mere fact that a party has communicated with its counterparty does not establish the kind of undertaking required to create a duty to disclose all possibly material information; instead, the counterparty must identify a specific statement triggering a duty to disclose allegedly withheld information. *See Marriott Int'l, Inc. v. Am. Bridge Bahamas, Ltd.*, 193 So. 3d 902, 908 (Fla. 3d DCA 2015) (observing that, absent a preexisting duty to disclose, a claim that a party assumed such a duty by undertaking to disclose information "must be supported by some evidence of a statement that would trigger the further duty to disclose all known material facts"); *Masvidal v. U.S. Dep't of Just.*, 2010 WL 11606119, at *4 (S.D. Fla. Mar. 29, 2010) (rejecting the undertaking theory absent facts showing an undertaking to disclose in sophisticated, arm's-length transactions). Plaintiffs fail to identify any statement plausibly triggering any further duty to disclose here.

Plaintiffs' own authorities highlight the weakness of Plaintiffs' arguments, as each case involved a defendant who undertook to provide material information while allegedly withholding additional information regarding the same subject, rendering the disclosure incomplete or misleading. *Cont'l Gen. Ins. Co. v. Gardina*, 773 F. Supp. 3d 1294, 1303 (M.D. Fla. 2025) (finding a duty to disclose where the defendant undertook to make ongoing representations regarding her medical condition and eligibility for benefits while omitting contrary information); *Ramel v. Chasebrook Constr. Co.,* 135 So. 2d 876, 882 (Fla. 2d DCA 1961) (finding a duty to disclose where sellers undertook to represent that a house was well-constructed while concealing known defects that undermined those representations); *ZC Ins. Co. v. Brooks*, 847 So. 2d 547, 551 (Fla. 4th DCA 2003) (finding a duty to disclose where the insurer undertook to describe the scope of coverage for the insured while withholding information about limits of coverage). As Plaintiffs' own allegations concede, no incomplete or misleading reason was provided to Plaintiffs for the account closures here. SAC, Dkt. No. 81 at ¶¶ 6, 79, 86 ("None of the letters stated any reason for the account closures."). Nor may Capital One's internal communications regarding the basis for closure give rise to a fraudulent concealment claim. Plaintiffs do not cite to any Florida authority suggesting that confidential internal communications within Capital One—which Plaintiffs did not learn of until discovery in this matter—could plausibly have misled Plaintiffs.

**B. The Independent Tort Doctrine Bars Plaintiffs' Fraud Claim.**

Plaintiffs' effort to avoid dismissal of their fraudulent concealment claim under the independent tort doctrine by claiming that their tort theory is independent of their contract claim fails because both claims are based on the same underlying conduct. *See Island Travel & Tours, Ltd., Co. v. MYR Indep., Inc*., 300 So.3d 1236, 1240 (Fla. 3d DCA 2020) (finding the independent tort doctrine to apply when the party's contract and tort claims were "ultimately based on the same underlying conduct"); *Peebles v. Puig*, 223 So. 3d 1065, 1068 (Fla. 3d DCA 2017) (holding that the damages stemming from the misrepresentation must be "independent, separate and distinct from the damages sustained from the contract's breach"). This remains true even after *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399 (Fla. 2013). *See Spears v. SHK Consulting and Dev., Inc.,* 338 F. Supp. 3d 1272, 1279 (M.D. Fla. 2018) (noting that the *Tiara* court "did not upset [the] common-law principle[]" in the Eleventh Circuit that "a tort claim must be independent of any breach-of-contract claim"). As discussed, Plaintiffs' breach of contract claim is not limited solely to the account closure but also relates to the antecedent internal process

and supposedly pretextual reasoning that was hidden from Plaintiffs—the same conduct underlying Plaintiffs' fraudulent concealment claim. Because Plaintiffs cannot separate the conduct and damages between their two claims, the tort claim must be dismissed.

## III. Plaintiffs' Declaratory Judgment Claim Fails as a Matter of Law.

### A. The Alleged Continuing Prohibition on Opening Capital One Accounts Does Not Transform Plaintiffs' Requested Declaration into Prospective Relief.

Plaintiffs' Opposition does not dispute that (i) Plaintiffs have not sought to reopen any account with Capital One, (ii) they identify no continuing injury from the 2021 account closures, or (iii) there is no present dispute between the parties other than the years-old closure decisions. These concessions alone are fatal to Plaintiffs' declaratory judgment claim.

Instead, Plaintiffs rely entirely on the contention that there is a current "prohibition" on Plaintiffs re-opening accounts with Capital One and argue that "[a] bar operating today establishes 'a substantial likelihood' of future injury." Opp., Dkt. No. 107 at 19. But this conclusory argument falls far short of pleading the existence of a present controversy required to state a claim. Plaintiffs do not offer any explanation of what that future injury might be or when it might occur and do not ask the Court to lift, invalidate, or otherwise adjudicate the alleged bar.

Plaintiffs ask only for a declaration that the AML basis "rests on a pretextual foundation." SAC, Dkt. No. 81 at ¶ 178(b). But this request for a declaration regarding alleged "pretext" for account closures that occurred years ago boils down to the same request that this Court adjudicate the factual basis for the 2021 closures, which cannot state a viable claim for prospective declaratory relief. Contrary to Plaintiffs' claims, *Bowen v. First Fam. Fin. Servs., Inc.*, 233 F.3d 1331 (11th Cir. 2000), does not support Plaintiffs' argument. There, despite an operative arbitration agreement with prospective effect, the Eleventh Circuit found no justiciable controversy because the defendant neither invoked nor threatened to invoke the provision, leaving "at most a 'perhaps' or 'maybe' chance" of future injury. *Id.* at 1340. Here, Plaintiffs likewise plead at most a "maybe chance" of future injury that is insufficient on its face.

Plaintiffs also mischaracterize the Court's prior guidance in asserting that the alleged continuing prohibition "is what the Court directed Plaintiffs to plead." Opp., Dkt. No. 107 at 20 (citing Tr., Dkt. No. 53 at 14:24–15:5). The Court did not suggest that alleging a continuing prohibition was sufficient. Rather, the Court explicitly instructed that Plaintiffs "**also** must explain whether they've sought the reinstatement of their accounts they . . . desire, whether Capital One has denied those requests and how Capital One's failure to reinstate their accounts has or would

cause them ongoing harm." Tr., Dkt. No. 53 at 15:1–5 (emphasis added). And Plaintiffs' assertion that a formal demand to reopen the accounts would have been futile does not cure its pleading failure. Opp., Dkt. No. 107 at 20; SAC, Dkt. No. 81 at ¶¶ 165–68. Plaintiffs cite no authority recognizing futility as a basis for avoiding the live controversy requirement, and Capital One is not aware of any such case law. And even if futility could excuse the failure to apply, it cannot substitute for an allegation that Plaintiffs would actually re-apply but for the alleged prohibition. Rather, Plaintiffs' "futility" argument is just a lawyerly attempt to manufacture a live controversy about years-old account closures where none exists.

**B. Plaintiffs Have Not Cured the Speculative Nature of the Alleged Injury.**

Plaintiffs' attempt to recast their injury as the AML "characterization itself, not its publication," Opp., Dkt. No. 107 at 20, also misses the point. Regardless of how Plaintiffs frame the alleged injury, generalized allegations about what financial institutions "routinely" consider are not sufficient to allege that these Plaintiffs face a "real and immediate" controversy presenting a "definite, rather than speculative threat of future injury." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347–48 (11th Cir. 1999). Plaintiffs do not identify a single instance in which any Plaintiff had difficulty obtaining or maintaining another banking relationship for any reason, let alone because Capital One confidentially closed their accounts for AML reasons. The absence of any such injury in the more than five years since the closures forecloses any conclusory claim of future injury now.

Finally, to the extent Plaintiffs contend that Capital One's continued defense of its AML rationale itself creates a present controversy, that theory is untenable because it would effectively eliminate the actual-controversy requirement altogether.

**IV. Dismissal with Prejudice is Appropriate.**

Finally, Plaintiffs' request for a third opportunity to amend should be denied.[1] Plaintiffs have received substantial discovery regarding the closure decisions; their pleading failures stem from the fundamental problems with their legal theory. *See Franklin v. Curry*, 738 F.3d 1246, 1252 n.6 (11th Cir. 2013) (holding that a plaintiff's admitted lack of knowledge concerning facts necessary to plead her claims "only reinforce[d]" dismissal and did not relax the applicable

---

[1] Plaintiffs' request, embedded in the Opposition rather than presented by motion with a proposed amended pleading, is also procedurally improper. *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018).

pleading standard). The pleading standard applicable at the motion-to-dismiss stage necessarily accounts for the fact that plaintiffs ordinarily have not yet had the benefit of discovery. Here, Plaintiffs have had considerably more: the benefit of this Court's specific guidance regarding the deficiencies in the First Amended Complaint, followed by 90 days of discovery during which they received more than 7,500 pages of documents and a Rule 30(b)(6) deposition of Capital One. Yet Plaintiffs still cannot allege the facts necessary to state a viable claim.

The problem, therefore, is not a lack of factual detail that another amendment could supply or uncertainty about what Plaintiffs need to allege. It is that Plaintiffs' theories fail as a matter of law, and the facts do not support their desired narrative. Plaintiffs do not identify what additional discovery they need, what facts it would reveal, or what allegations they could add that would make their fourth attempt to plead viable claims any more successful than the first three. The Court should therefore dismiss the SAC with prejudice. *See Huggins v. Sch. Dist. of Manatee Cnty.*, 151 F.4th 1268, 1286 (11th Cir. 2025) ("a district court need not grant leave '(1) where there has been . . . repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile.'" (internal citation omitted)).

## **CONCLUSION**

For the reasons stated above and in Capital One's Motion, the Second Amended Complaint fails and should be dismissed with prejudice.

Dated: August 28, 2026

Respectfully submitted,

*/s/ Shane Grannum*
GERALD E. GREENBERG
Florida Bar No. 440094
ggreenberg@gsgpa.com
ADAM M. SCHACHTER
Florida Bar No. 647101
aschachter@gsgpa.com
SHANE GRANNUM
Florida Bar No. 1055050
sgrannum@gsgpa.com
GELBER SCHACHTER & GREENBERG, P.A.
One Southeast Third Avenue, Suite 2600
Miami, FL 33131
Telephone: (305) 728-0950
E-service: efilings@gsgpa.com

HELEN V. CANTWELL*
hcantwell@debevoise.com
SUSAN REAGAN GITTES*
srgittes@debevoise.com
ERICH O. GROSZ*
eogrosz@debevoise.com
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000

*Admitted *pro hac vice*

*Counsel for Defendant Capital One, N.A.*